UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION

MDL No. 2744

Case Number 16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

_____/

DEDRA MANEOTIS,

                    Plaintiff,                         Case Number 17-10351

v.

FCA US, LLC,

                    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Dedra Maneotis was injured when her 2014 Jeep Grand Cherokee rolled over her

leg after she exited the vehicle, thinking she had successfully put the vehicle in "Park." She sued

the car manufacturer, Fiat Chrysler Automobiles US, LLC (FCA), alleging that various product

defects led to her injuries. FCA filed a motion to dismiss the complaint, which raises two issues:

whether Colorado's two-year statute of limitations for product liability actions governs over the

more general three-year statute that applies to personal injury actions involving operation of a

motor vehicle; and, if the two-year statute applies, whether equitable tolling or fraudulent

concealment jurisprudence renders the complaint timely filed. Because the plaintiff brought this

action against a product manufacturer to recover for personal injuries caused by a product defect,

the two-year statute of limitations governs, despite other statutory provisions that also could apply.

But the plaintiff has pleaded facts in her complaint that support a plausible claim for equitable

tolling and fraudulent concealment; therefore, the case cannot be dismissed as time-barred at the pleading stage. The defendant's motion to dismiss will be denied.

I.

Maneotis's initial complaint, filed in the District of Colorado, was transferred to this Court by the Joint Panel on Multidistrict Litigation and consolidated with the MDL proceedings. The plaintiffs in this consolidated action previously filed a consolidated master complaint for personal injury actions, which included the claims brought by Maneotis, a citizen of Colorado. However, in order to sharpen the pleadings for the purpose of the present motion, Maneotis filed her own individual first amended complaint, which contains only her claims. The facts discussed below are drawn from that pleading, and are the focus of the defendant's motion to dismiss.

"On December 20, 2013, Dedra Maneotis pulled up a hill into her driveway and put her 2014 Grand Cherokee in Park." Am. Compl. ¶ 55 (Pg ID 5383). "As she opened the door and stepped one foot out, the car started to roll backward." *Id.* ¶ 56. "With her left leg out, she tried to hop along with her left foot while holding on to the door and the steering wheel." *Id.* ¶ 57. However, as she tried to keep up with the car, "the car door clipped a half-height decorative wall and bent backward, causing Dedra to lose her grip on the door handle," and "[s]he struggled to stay upright as the car gained speed down the hill." *Id.* ¶ 58. Maneotis soon "grew tired and had to let go of her hold on the vehicle," and, as a result, "[s]he fell, and her leg got wrapped up in the front driver-side wheel." *Id.* ¶ 59. The Jeep then rolled up onto the half-height decorative wall and over [her] leg, . . . rolled over, and then spun out on [her] leg, causing [her serious] injuries." *Ibid.*

Maneotis reported the accident to the police immediately. "Officer Ryan M. Fritz responded and reported that 'due to the electronic shifting system in this vehicle . . . [it] was not in "Park" like [Maneotis] thought it was.'" *Ibid.* Maneotis was hospitalized for her injuries and undergoes continuing treatment and therapy.

The complaint highlights that Ms. Maneotis was in an unusual position compared with the typical plaintiffs in this multidistrict litigation, because her family owns a Dodge Jeep Ram dealership in Craig, Colorado, known as Victory Motors. The day after the accident, her Jeep was brought to the dealership's service department, and, following the defendant's protocol, the service manager and a mechanic on hand called Chrysler's Service Technical Assistance Resource ("STAR") team and reported the rollaway incident. Am. Compl. ¶ 18. The STAR team told the service manager that they "had not heard of this issue." *Ibid.* The Victory Motors service team and Chrysler's STAR team then ran extensive diagnostics on the Jeep:

> The STAR team gave the service manager and mechanic specific protocols and procedures to test the various systems in Dedra's Jeep Grand Cherokee. None of the protocols and procedures identified an issue or defect and everything checked out to STAR's satisfaction. STAR informed the service manager and mechanic that the rollaway was the result of driver error, and did not mention anything about their knowledge of rollaways or [other] consumer complaints.

*Id.* ¶ 21. In May or June 2014, Tony Maneotis, the plaintiffs' son and co-owner of Victory Motors, "attended an annual fleet meeting where FCA dealers met with FCA's sales representatives, fleet representatives, and service representatives to learn about the new vehicles in the upcoming model year." *Id.* ¶ 22. "Tony told FCA's employees about his mother's rollaway and asked if they knew about any issues with Dedra's Jeep Grand Cherokee." But FCA's representatives professed ignorance of any rollaway incidents or shifter defect, and they asked Maneotis's son if the STAR team had been consulted about testing the Jeep. In May or June 2015, Tony attended another fleet

meeting where he "learned that the model year 2016 Jeep Grand Cherokees would come equipped with a different shifter than the ZF Shifter." *Id.* ¶ 23. He again "raised the issue of his mother's rollaway directly with FCA's employees," and, "FCA's employees said that they were not aware of a safety issue or defect but that the shifter change was being made to improve safety." *Ibid.* Maneotis alleges that FCA did not inform its dealers that there was a safety defect with the monostable gearshift design until a year later at the 2016 fleet meeting. *Id.* ¶ 24.

The amended complaint alleges that "[t]he ZF Shifter design is dangerously defective because there is not any tactile or position feedback to the operator as to whether the car has actually been placed into the safe-to-exit 'park' gear, nor a safety override that automatically puts the car in 'park' or applies the parking brake if the driver gets out of the car." Am. Compl. ¶ 2. It also alleges that "[t]he defect is programmed into the defective ZF Shifter's software," and that because "the ordinary user has no ability to access the ZF Shifter's source code, no ordinary user could possibly identify the presence of a defect. Nor was there any reason to suspect that the software was defective, especially when such concerns were rejected by ZF's business partner, FCA." *Id.* ¶ 68. The plaintiff further alleges that Chrysler was aware of the defect before December 2013. Am. Compl. ¶ 43.

In her amended complaint, Maneotis pleaded claims for negligence (Count I), negligence *per se* (Count II), and strict product liability (Count III), under various Colorado product liability statutes and common law. The defendant filed its motion to dismiss Maneotis's amended complaint on January 2, 2018, arguing that the plaintiff's claims are governed by the two-year limitations period under section 13-80-106 of the Colorado Code, and not the three-year period for claims "arising from use or operation of a motor vehicle" under section 13-80-101. FCA contends

-4-

that Maneotis's claim accrued on the date of the accident because she "formed a belief" on that date that the rollaway accident was caused by a failure of the shifter in her car, as demonstrated by the statement attributed to her from the contemporaneous police report that she quoted in her amended complaint. And FCA insists that equitable tolling cannot apply because the facts alleged in the amended complaint do not plausibly establish that the defendant had any "knowledge" of the purported defect before the accident, or that it had any duty to disclose whatever it did know about the shifter's design.

Maneotis argues that the three-year statute of limitations applies. But even if the two-year statute governs, she contends that her claim did not accrue more than two years before she filed her complaint because she could not have discovered that FCA's wrongful conduct was the cause of her injuries within that time, and she believes that her filing deadline was equitably tolled because FCA fraudulently concealed the defect in the Jeep's transmission.

## II.

FCA brought its motion under Federal Rule of Civil Procedure 12(b)(6). Under that rule, the Court, looking only to the complaint, its attachments, matters of public record, and documents necessarily incorporated by reference that are integral to the claims, and accepting the pleaded facts as true, must determine if the plaintiff has stated a viable claim entitling her to relief. *See Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 571 (E.D. Mich. 2018) (citing cases). To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]'

entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

In its motion, FCA does not challenge the sufficiency of the pleaded cause of action. Instead, it contends that it is entitled to dismissal based on its statute of limitations affirmative defense. A plaintiff is not obliged to plead around an affirmative defense to state a claim. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed. R. Civ. P. 8(a), (c)). Therefore, a motion under Rule 12 "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Ibid.* However, "sometimes the allegations in the complaint affirmatively show that the claim is time-barred," and "[w]hen that is the case . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Ibid.* "Whether a statute of limitations bars a particular claim is a question of fact, but the issue may be decided as a matter of law if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date," so that the court can decide when the claim accrued. *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1169 (D. Colo. 2016) (quotations omitted).

## A.

Colorado has two statutory provisions that arguably could apply to cases involving injuries caused by the operation of motor vehicles. One statute establishes a three-year period within which to file a lawsuit for "[a]ll tort actions for bodily injury or property damage arising out of the use or operation of a motor vehicle." Colo. Rev. Stat. 13-80-101(n)(I). However, Colorado imposes by statute a universal two-year limitations period that governs all actions seeking recovery for personal injuries resulting from a defective product, "[n]otwithstanding any other statutory provisions to the contrary." Colo. Rev. Stat. § 13-80-106(1).

The plaintiff contends that because a motor vehicle was involved, the three-year statute ought to apply. There is not much authority to be found that reconciles the two competing statutes in like circumstances, but that, perhaps, is because the answer is too obvious to warrant an extended discussion. *See Sepulveda v. Ford Motor Co.*, No. 15-00572, 2015 WL 3947113, at *3 (D. Colo. June 26, 2015) (applying the two-year limitations period, without any mention of section 13-80-101(n), and dismissing as untimely plaintiff's claims for crash injuries allegedly caused by a defective airbag). The main thrust of Maneotis's amended complaint is that she was injured by a defective product manufactured by FCA. Section 13-80-106(1) "establish[es] a two-year statute of limitations for all tort, strict liability and product liability actions, regardless of the substantive theory on which the product liability action is based." *Schmidt v. DJO, LLC*, No. 09-02683, 2010 WL 3239249, at *4 (D. Colo. Aug. 12, 2010).

But where the three-year statute also (arguably) could apply, how should the two statutes be reconciled? The task of statutory interpretation begins "with the plain meaning of the statutory language." *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (citing *Walker v. Bain*, 257 F.3d 660, 666 (6th Cir. 2001)). "[I]f [the] language [of the statute] is clear and unambiguous, the Court will usually proceed no further." *United States v. Bailey*, 228 F.3d 637, 638 (6th Cir. 2000) (citing *Barker v. Chesapeake & Ohio R.R.*, 959 F.2d 1361, 1366 (6th Cir. 1992)); *see also Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 428 (6th Cir. 2017) (noting that any exercise in statutory construction "must begin with the plain language of the statute because the 'language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.'" (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)). Where words used in a statute are not explicitly defined, the Court assumes, absent any

indications to the contrary, that those terms are used according to their ordinary meaning. *Mohamad v. Palestinian Authority*, 566 U.S. 449, 454 (2012) ("Because the [Terror Victim Protection Act] does not define the term 'individual,' we look first to the word's ordinary meaning."); *FCC v. AT & T Inc.*, 562 U.S. 397, 397 (2011) ("When a statute does not define a term, the Court typically 'give[s] the phrase its ordinary meaning.'" (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010))).

The plain terms of the competing statutes in this case establish that the plaintiff's claims are governed by the two-year limitations period for product liability actions under section 13-80-106(1), and nothing in their plain language suggests otherwise. Several factors point ineluctably to this conclusion.

*First*, it is undisputed that the claims pleaded in the complaint comprise facts and causes of action that fit squarely within the ambit of an action "brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product." Colo. Rev. Stat. § 13-80-106(1). Therefore, the action is within those expressly governed by the two-year limitations period.

*Second*, the three-year statute must take a back seat, as the same provision expressly states that the two-year period governs any such action "[n]otwithstanding any other statutory provisions to the contrary." *Ibid.* The plaintiff's argument --- that section 13-80-101(n)(I) ought to apply because it specifically mentions personal injury tort actions that "aris[e] out of the use or operation

of a motor vehicle" --- collides directly with section 13-80-106(1)'s "notwithstanding" language. The parties' semantic debates over the nuances of the exclusionary clause in section 13-80-101(n) and the meaning of "notwithstanding" do not alter this conclusion. Both statutes use straightforward terms that are unambiguous; the debate thus begins and ends with those terms. Merriam Webster's dictionary defines "notwithstanding" as a synonym for "despite," meaning "in spite of." *See* https://www.merriam-webster.com/dictionary/notwithstanding. Despite any apparent language suggesting otherwise in any other statute, the Colorado legislature made its will plain when it enacted section 13-80-106(1), which commands that "all actions" comprising claims for personal injuries due to a defective product must be brought within two years. "All actions" means *all* actions, without regard to any other enactment that may suggest otherwise. *Whaley v. Henry Ford Health Sys.*, 172 F. Supp. 3d 994, 1000-01 (E.D. Mich. 2016) ("There is no more comprehensive term than 'all.'" (citing *Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 716 (8th Cir. 2003)); *County of Oakland v. Federal Housing Finance Agency*, 716 F.3d 935, 940 (6th Cir.2013) (observing that "a straightforward reading of the statute leads to the unremarkable conclusion that when Congress said 'all taxation,' it meant all taxation")); *see also In re Hydro Action, Inc.*, 266 B.R. 638, 645 (Bankr. E.D. Tex. 2001) ("Notwithstanding the proclivities of a recent Chief Executive to the contrary, the meanings of these three comprehensive words are not subject to serious dispute. 'All' means all. 'Every' means every. 'Any' means any."). Reading section 13-80-101(n)(I)'s three-year limitation period as trumping the two-year statute that applies to product liability actions plainly would be "contrary" to the terms of section 13-80-106(1). The plaintiff's argument therefore is foreclosed by the broad, preclusive terms of the product liability limitations statute.

*Finally*, the plaintiff's argument that a three-year limitations period should apply is contrary to the plain language of the statute on which she relies, because that section applies specifically to "tort actions for bodily injury or property damage arising out of the use or operation of a motor vehicle." Colo. Rev. Stat. § 13-80-101(n)(I). Maneotis contends that her claims are governed by Colorado's general tort liability statute, Colo. Rev. Stat. 13-80-101(n), which identifies "civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, [which must] be commenced within three years after the cause of action accrues, and not thereafter"; that catalog includes "[a]ll tort actions for bodily injury or property damage arising out of the use or operation of a motor vehicle including [all actions under the former Colorado Auto Accident Reparations Act ('CAARA' or 'No-Fault Act'), since repealed]." Colo. Rev. Stat. § 13-80-101(n)(I). The same subsection (n) also states that "[t]he provisions of this paragraph (n) do not apply to any action for strict liability, absolute liability, or failure to instruct or warn governed by the provisions of section 13-80-102(1)(b) or section 13-80-106." *Id.* § 13-80-101(n)(II). If this case were an action brought against Maneotis for injuries or damage to property resulting from her "use" or "operation" of her Jeep, then the matter might be open to some debate, but it is not. None of the allegations of the amended complaint suggest that any wrongful conduct by the defendant in negligently designing or failing to warn about the dangers of its gear shift design involved any "use" or "operation" of the Jeep by the defendant or any of its employees or agents. Thus, this case is not, in the first instance, within the category of actions covered by section 13-80-101(n)(I). Regardless of the scope of any exceptional clause to that statute, its plain terms do not comprise any claims arising from defective design or manufacture of a motor vehicle that do not involve any allegedly tortious "use" or "operation."

## B.

Section 13-80-106(1) states that a person bringing a products liability action must file her complaint "within two years after the claim for relief arises." The defendant contends that Maneotis's claim accrued on the day of the accident. But accrual of a claim under this statute "is subject to the discovery rule, meaning that the cause of action accrues on the date both the injury and its cause are known or should have been known by the exercise of 'reasonable diligence.'" *Schmidt*, No. 09-02683, 2010 WL 3239249, at *4 (quoting Colo. Rev. Stat. § 13-80-108(1)); *see also Murry v. GuideOne Specialty Mutual Insurance Co.*, 194 P.3d 489, 491 (Colo. App. 2008) (stating that "[a] cause of action accrues on the date when 'the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence'").

"The point of accrual is usually a question of fact, but if the undisputed facts clearly show when a plaintiff discovered or should have discovered the damage or conduct, the issue may be decided as a matter of law." *Murry*, 194 P.3d at 491. In her amended complaint, the plaintiff has stated facts that raise a question on when she had enough information to have discovered that she had a claim for injuries against FCA. Most prominent in this record is a substantial question of fact — the most basic unresolved question of fact in this entire litigation — about whether the monostable gear shift mechanism used by the defendant has one or more design or manufacturing defects, and, if so, what precisely is the nature, cause, and effect of any defect or defects. Whether a reasonable person could have been expected to discover any such defect at a particular time through use of the vehicle depends inherently on what the defect is, and how it is incorporated into or expressed through operation of the gear shift.

The defendant contends that the "only defects" alleged in the amended complaint are that the shifter (1) gives insufficient tactile feedback, and (2) lacks an "auto park" feature. But that overlooks other allegations, including in paragraph 64, where the plaintiff also alleges that "[a]s a result of the defective ZF Shifter installed in Dedra's Grand Cherokee, *and its failure to keep the vehicle in park*, Dedra will require a lifetime of physical and mental assistance and medical treatment." Am. Compl. ¶ 64 (Pg ID 5384) (emphasis added). If the gear shift only is defective in terms of design, features, and behavior immediately apparent to an ordinary user, such as its "monostable" movement and lack of tactile feedback, then perhaps a reasonable driver would be expected to notice those faults in its design right away, or at the least after a moderate period of ordinary use of her car. If, however, the gear shift design has more subtle problems, such as the Court previously has found that the plaintiffs alleged in the economic loss complaint, and, as alleged here, where it "fails to keep the vehicle in park," even though the driver properly completed a shift to that gear, then a reasonable person probably could not be expected to know about that sort of defect until, quite by surprise, it resulted in a possibly disastrous unexpected movement of her car. Even then, the driver who had a rollaway incident reasonably may have no more than a suspicion that a lurking defect caused her car to fail to stay in the selected gear, at least, without conducting a thorough technical investigation of the gear shift's inner workings — an inquiry that would not plausibly be within the capabilities of a reasonable ordinary driver.

As the Colorado appellate courts have explained, "the statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another." *Salazar v. American Sterilizer Co.*, 5 P.3d 357, 363, (Colo. App. 2000). "However, suspicion of

-12-

a possible connection does not necessarily put a reasonable person on notice of the nature, extent, and cause of an injury." *Ibid.* "The focus is on plaintiff's knowledge of facts rather than the discovery of applicable legal theories." *Ibid.*

Maneotis's amended complaint plausibly could be read to indicate that she deduced, at the time of her accident, that her car had either of those sorts of defects. Her comment to a police officer on the scene that "due to the electronic shifting system in this vehicle . . . [it] was not in 'Park' like [Maneotis] thought it was," Am. Compl. ¶ 60, could be read as indicating that Maneotis believed either (1) that, although she properly used the gear shift to put the car in "park," it was, unexpectedly, no longer in "park" when she got out; or (2) that, although she thought she had put the car in "park," due to the operation of the gear shift, she actually had not, and, hence, due to "user error," as the defendant contends, the car rolled away unexpectedly when she got out.

If the only true defect in the gear shift is lack of tactile feedback contributing to "user error," then maybe Maneotis knew all that a reasonable person needed to know on the date of the accident to conclude that she had a cause of action against the defendant for injuries due to its confusing design. However, even with such a readily apparent defect, questions of fact remain on the record now before the Court. The defendant conceded at oral argument that the most that can be inferred from the allegations of the complaint is that Maneotis operated the car "at least once," on the date of the accident. The defendant's attorney also represented when asked that Maneotis did not own the car, and that it is unknown how many times she drove it before the accident. Thus, there is at least a lingering question about whether, having driven the car only once, a reasonable person in Maneotis's position, particularly after she suffered traumatic injuries due to the accident,

could be expected to retain a sufficient impression of how the gear shift operated to comprehend even an obvious defect in its superficial function or features.

Moreover, if the gear shift in fact has a defect that caused it to "fail to keep the car in park" even though it properly was put in "Park" by the driver, then Maneotis could not reasonably have been expected to divine what inner workings of the mechanism would lead to that action, or even that such action was possible, since the amended complaint here alleges that the defective performance was obfuscated within a software program embedded in the gear shift. The fact that Maneotis may have suspected that there was some connection between the shifter and the roll away accident is not enough, standing alone, for the Court to conclude as a matter of law that the plaintiff must have known, as soon as the accident occurred, all she needed to know to pursue litigation. *Salazar*, 5 P.3d at 363. Here there is room for debate about what facts Maneotis "knew," and what conclusions she reached or should have reached after the accident, particularly since a reasonable person might have abandoned any lingering suspicion about a lurking defect, after the defendant's STAR team, following thorough diagnostic testing of the car at the dealership, proclaimed that there was no problem, that the team had no knowledge of other similar incidents, and that the sole cause of the accident was "user error."

At this stage of the case, based on nothing more than the facts pleaded, without a developed record on all the salient points, this question at least remains: Would a reasonable driver in Maneotis's position have deduced on the day of the accident that the rollaway was due to poor design of the shifter, or would she have assumed that it was due to poor use of that design by her? That is a question of fact that is not amenable to disposition as a matter of law, particularly since it involves the application of a rule of reason, where the facts could support an outcome either way.

Therefore, the Court cannot conclude from the amended complaint that Maneotis's claim accrued more than two years before she filed her lawsuit.

<p style="text-align:center">C.</p>

The plaintiff also alleges that FCA concealed the defect in the transmission and therefore the statute of limitations ought to be equitably tolled. "[T]he related doctrines of equitable estoppel and fraudulent concealment may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim." *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 164 (2013). Under Colorado law, the statute of limitations "may be tolled if the plaintiffs can prove that the defendant fraudulently concealed material elements giving rise to their claims." *Patterson v. BP America Production Co.*, 2015 COA 28, ¶ 38, 360 P.3d 211, 220 (Colo. Ct. App. 2015). "To establish fraudulent concealment, the plaintiffs must demonstrate that they were ignorant of the defendant's concealment, that they relied on the concealment to their detriment, and that they were unable, by reasonable diligence, to discover facts necessary to determine the existence of a claim for relief." *Ibid.* "[B]ecause tolling is an equitable remedy, its application involves an examination of the facts and circumstances of individual cases to determine when equity requires such a remedy." *Morrison v. Goff*, 91 P.3d 1050, 1057 (Colo. 2004).

It is apparent from the pleadings that there are several live questions of fact as to whether equitable tolling should be applied to foreclose the defendant's reliance on its limitations defense. Based on the facts asserted in the amended complaint, there is at least a colorable basis for the application of equitable tolling premised on fraudulent concealment of the defect by the defendant, and the defense therefore is not amenable to disposition by a judgment on the pleadings, without

the benefit of discovery and a full consideration of the defense based on a complete factual record. As the Court held in a prior opinion in this case, the allegations of the complaint here, which are materially indistinguishable from those that the Court reviewed in the economic loss complaint, amply make out the pertinent elements of a freestanding fraudulent concealment claim, which are materially congruent with those needed to sustain a claim for equitable tolling based on fraudulent concealment. *See In re FCA US LLC Monostable Electronic Gearshift Litigation*, 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017) (noting that "[t]he plaintiffs here allege that the defendant failed to disclose to them anything about the risks posed by the dangerous and unreliable shifter design; that it knew about the problems with that design as a result of its own testing and design analysis, and customer complaints received from early in the market life of the product; that it should have disclosed the defect at or before the respective dates on which they bought their cars; and that, instead, the defendant concealed its knowledge of the defect until it finally declared a recall of the vehicles on April 22, 2016 and sent a letter to affected owners and lessees in June 2016"). On similar facts, federal courts applying Colorado law readily have found questions of fact about whether tolling should apply to claims of concealed defects. *See Schmidt*, 2010 WL 3239249.

Moreover, the plaintiff has alleged sufficient facts to suggest that she could prevail on her claim for equitable tolling of the limitations period, based on repeated, allegedly untrue statements by the defendant's representatives, including its STAR team, that (1) there was no defect in the Jeep or its gear shift; and (2) that Chrysler and its representatives had no knowledge of rollaway incidents or safety problems with the shifter design. Even if the plaintiff had some suspicion that a gear shift defect could have been the cause of the accident, she still could prevail if a fact finder decides that she reasonably relied on the false representations by the defendant and accepted, at

her peril, its proffered explanation of "user error," which caused her to forego further attempts to secure her rights by litigation, despite her extraordinarily diligent attempts — particularly compared with those that an average consumer could indulge — to investigate the defect. *Guy v. Mercantile Bank Mortgage Co.*, 711 F. App'x 250, 254 (6th Cir. 2017) (noting that the Fifth Circuit has held that "equitable tolling was appropriate where an employer cited the need for a workforce reduction when he fired an older employee, which was plausible in light of an industry-wide recession and which caused the employee not to bring an age-discrimination suit within the statute of limitations, when in fact the employer had replaced the employee with a younger person at a lower salary" (citing *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876 (5th Cir. 1991)).

On congruent facts, Colorado courts have applied equitable tolling to foreclose a limitations defense, despite admissions that a plaintiff may have had some information that wrongful conduct by the defendant was a cause of her harm, where the defendant's tortious silence or active misrepresentation on the matter caused the plaintiff to relax her diligence and abandon or not pursue any further inquiry about her rights. *See Patterson*, 360 P.3d at 221.

The plaintiff here did as much as she reasonably could have been expected to do under the circumstances to investigate whether a suspected design defect caused her accident — much more in fact than an average consumer reasonably could have, given her unique position. And the purportedly defective behavior concealed in software code incorporated into the shifter's hidden inner workings certainly was not the sort of evidence that was so superficially apparent that the plaintiff must be, as a matter of law, faulted for lack of diligence for failing to discover it. That is particularly true when the defendant allegedly stifled further inquiry by its STAR team's denials of a defect or even of knowledge of other roll-away incidents.

<center>III.</center>

The amended complaint does not affirmatively show that the plaintiff's claim is time barred. The defendant is not entitled to a dismissal of the claim based on its affirmative defense at this stage of the case.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #193] is **DENIED**.

<div style="text-align: right;">
s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge
</div>

Date: September 12, 2018

<div style="border: 1px solid black; padding: 10px;">

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 12, 2018.

s/Susan K. Pinkowski<br>
SUSAN K. PINKOWSKI

</div>