UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION

MDL No. 2744

Case Number 16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SECOND MOTION TO DISMISS ALLEGING FAILURE TO STATE A CLAIM

Defendant FCA US LLC has filed a fourth motion to dismiss under Federal Rule of Civil Procedure 12(b). This one is aimed at the second amended consolidated master class action complaint (SACMC) in this multidistrict litigation proceeding, and it is based on Rule 12(b)(6). The parties agreed to submit this motion on the papers a waive oral argument. The parties are familiar with the facts and proceedings to date in this multidistrict litigation matter involving certain alleged defects in the transmissions of approximately 850,000 vehicles manufactured by FCA. They are summarized in the Court's earlier opinion adjudicating FCA's last motion to dismiss the first amended consolidated master class action complaint (FACMC). *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 982-90 (E.D. Mich. 2017).

### I. Additional Procedural Background

On November 15, 2017, the Court issued its opinion rejecting the defendant's principal challenges to the FACMC and dismissing several claims based on other minor defects. On December 8, 2017, the plaintiffs filed their SACMC omitting the claims and plaintiffs that had been dismissed and consolidating parties and claims from individual actions that had been transferred into the MDL after the FACMC was filed and while the defendant's previous motion was pending.

The SACMC contains 120 counts brought on behalf of 43 plaintiffs from 26 states:

- Arizona (Guy, Perkins, Yacoub)
- California (Goldsmith, Nathan)
- Colorado (Felker)
- Florida (Andollo)
- Georgia (Willis)
- Illinois (McDonald, Wells)
- Iowa (Havnen)
- Louisiana (Stewart)
- Maryland (Schultz)
- Massachusetts (Hartt, Youngstrom, Machtley)
- Michigan (Scott)
- Minnesota (Berken)
- Missouri (Brooks)
- Nevada (Bernal)
- New Jersey (Colrick)
- New York (Lynd, Mack)
- North Carolina (Gunnells)
- Ohio (Danielle and Joby Hackett)
- Oklahoma (Clark)
- Oregon (Fisher)
- Pennsylvania (Weber, Vosburgh, Metzger)
- Texas (Hyatt, Phelps, Craig, Foreman, Dial, Gillispie, Waggoner)
- Utah (Marble)
- Washington (Stedman, Webster)
- Wisconsin (Hughes)
- Wyoming (Magnuson)

After the SACMC was filed, Pennsylvania plaintiff Timothy Weber was dismissed from the case based on his notice of voluntary dismissal. Weber's dismissal does not affect the resolution of this motion since FCA does not challenge any counts raised by the Pennsylvania plaintiffs, and Weber was not the only plaintiff from that state.

Oklahoma plaintiff Carol Clark also filed a notice of voluntary dismissal of her claims. In addition, at the status conference on November 21, 2108, Lead Counsel for the plaintiffs moved to dismiss the case of Justine Andollo from Florida. Clark was the only economic loss plaintiff from Oklahoma, and Andollo was the only economic loss plaintiff from Florida; the class claims from those states vanished with the dismissal of those underlying cases. However, the defendant

did not challenge any of the counts asserting claims under Oklahoma law. Nevertheless, it appears that all of the claims under Oklahoma law must be dismissed due to the withdrawal of the only named plaintiff from that state. Those counts are: LXXXIII (consumer fraud), LXXXIV (fraudulent concealment), LXXXV (express warranty), LXXXVI (implied warranty), and LXXXVII (unjust enrichment). The following Florida counts likewise will be dismissed: XVIII (Florida Fair Trade Practices Act), XIX (fraudulent concealment), XX (express warranty), and XXI (unjust enrichment).

As the case now stands with the dismissals of those counts, the SACMC consists of live class claims by 41 plaintiffs from 24 states, pleaded in 111 counts.

## II.

FCA's present motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). The governing standards under Rule 12(b)(6) are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiff, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Unsupported conclusions will not suffice. Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

### III.

In its second motion under Rule 12(b)(6), FCA asks the Court to dismiss in their entirety Counts III, XIII, XIV, XIX, XXII, XXIII, XXX, XXXII, XXXVI, XXXVIII, XLV, XLIX, LI, LXI, LXIV, LXXIII, LXXIV, LXXVI, LXXXI, CI, CIII, CX and CXVI of the SACMC. The defendant also asks the Court to dismiss in part Count I (the Magnuson-Moss Warranty Act claim) to the extent that it is premised on the above challenged state law claims, and Count XXVIII (for consumer fraud under Illinois state law). The challenges to each of those counts are addressed below in turn.

### A. Economic Loss Doctrine (Various States)

The defendant argues that the economic loss doctrine of the respective states bars the claims for common law fraudulent concealment raised in Counts XIV (Colorado), XXXVIII (Maryland), XLV (Michigan), LI (Minnesota), LXIV (New Jersey), LXXIV (North Carolina), and

CIII (Utah), as well as the statutory fraud claim in Count LXXIII (North Carolina). The plaintiffs offer several state-specific arguments in opposition.

## 1. Colorado (Count XIV)

The defendant is correct as a general matter that Colorado's economic loss rule bars claims sounding in tort for losses arising exclusively from the failure of a contractual obligation. *See Spring Creek Exploration & Production Co., LLC v. Hess Bakken Investment, II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018) (quoting *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)). Nonetheless, "'[t]o survive a motion to dismiss based on the economic loss rule, [a plaintiff] merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract.'" *Ibid.* (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)). "The question is not . . . whether the tort claims relate to a contract . . . but rather whether they stem from a tort duty independent of the contract." *Van Rees*, 373 P.3d at 605 (holding that claims based on pre-contractual misrepresentations made to induce the plaintiff to enter a contract were not barred by the economic loss rule).

In this case, the plaintiffs allege that the defendant induced them to pay more than they otherwise would have to acquire the class vehicles by concealing known dangerous defects in the cars gear shift designs. Those allegations of pre-purchase concealments are sufficient under the controlling case law to state a claim for fraudulent concealment premised on a breach of a duty that arises separately from any bill of sale or warranty. *Ibid.* ("In this case, Van Rees's tort claims allege that Unleaded induced him to enter into a contractual agreement with false promises of its capabilities to perform web-related services. These pre-contractual misrepresentations are distinct from the contract itself, and may form the basis of an independent tort claim.").

The Colorado economic loss rule does not bar the claim in Count XIV.

## 2. Maryland (Count XXXVIII)

Similarly, Maryland courts generally recognize the limitation on recoveries in tort for damages arising from breach of a contractual obligation. *Landaverde v. Navarro*, No. 1719, 2018 WL 2727907, at *15 n.6 (Md. Ct. Spec. App. June 6, 2018) ("'The economic loss doctrine, which developed in product liability cases, prohibits a plaintiff from recovering tort damages for what in fact is a breach of contract.'" (quoting *Cash & Carry America, Inc. v. Roof Solutions, Inc.*, 117 A.3d 52, 60 (Md. Ct. App. 2015))). But they have recognized an exception where the plaintiff alleges the concealment or failure to warn of a defect giving rise to a "serious risk of bodily harm." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 275 (Md. 2007) ("This court is aware of no reason, nor has one been presented to it, that, so long as sufficient allegations of a serious risk of bodily harm or death has been made, under the [economic loss] analysis, why the petitioners should be barred from asserting a claim for economic loss resulting from fraudulent concealment.").

The allegations of unexpected vehicle excursions due to the defective gear shift in the defendant's cars adequately suggest that concealment of the defect put the plaintiffs at risk of serious bodily harm, particularly where, as the Court already has found, numerous plaintiffs alleged that they personally experienced potentially dangerous unintended movements by their cars. Count XXXVIII will not be dismissed on the present motion.

## 3. Michigan (Count XLV)

Michigan's construction of the economic loss doctrine does not bar claims for fraudulent concealment premised on "fraud in the inducement" or deceit intended to entice a party to engage in a transaction. *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 963-64 (E.D. Mich. 2017) ("Michigan courts have recognized an exception to the economic loss doctrine for the

intentional tort of fraud in the inducement. 'Fraud in the inducement . . . addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort.'" (quoting *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 371, 532 N.W.2d 541, 544 (1995)); *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 732 (E.D. Mich. 2014) (same). For the same reasons relied upon by the Court in those cases, the request to dismiss Count XLV will be denied.

### 4. Minnesota (Count LI)

The defendant is correct that the Minnesota courts have applied the economic loss doctrine to bar claims of fraudulent concealment premised solely upon the concealment of a known product defect at the point of sale. *Northern States Power Co. v. General Electric Co.*, No. 16-1687, 2017 WL 3013230, at *5 (Minn. Ct. App. July 17, 2017) ("To the extent that any of appellants' claims was based on an alleged failure to disclose a product defect present and known at the time of sale, the district court correctly determined that such a claim is barred by the economic-loss doctrine."). However, the decisions on point also recognize that claims premised on the failure to disclose knowledge of a defect acquired after the sale may give rise to a viable concealment claim independent of the contract. *Ibid.* ("The sales contract does not provide for [technical information letters] or require GE to provide updated technical information, and thus any duty to provide that information is not found in the contract. . . . Because the undisputed facts demonstrate that the sales contract does not encompass any bargained-for obligation or allocation of liability related to the post-sale advice and lack of advice at issue in this action, we conclude that alleged tortious conduct is independent of the sales contract.") (reversing dismissal of fraudulent concealment claims as barred by the economic loss doctrine).

The record in this case is far from developed yet, and there remains considerable room for debate over what the defendant concealed, and when, and whether and at what point it had an obligation to disclose what it knew. The Court will dismiss the parts of Count LI premised explicitly on failure to disclose a known defect at the point of sale, but the claims may proceed otherwise pending the development of a fuller record on what was concealed and when, and to what extent any concealment not involving the sale may have harmed the plaintiffs.

### 5. New Jersey (Count LXIV)

The New Jersey courts also have recognized the application of the economic loss doctrine to bar claims for purely economic losses premised on allegedly undisclosed product defects; recovery for such claims must be pursued exclusively through any applicable warranty remedies under the U.C.C. or other applicable law, and not via actions sounding in tort. *Green v. GMC*, 51 UCC Rep. Serv. 2d 998, 2003 WL 21730592, at *3 (N.J. Super. Ct. App. Div. July 10, 2003) ("[W]e agree with the trial court that plaintiffs have failed to set forth a cause of action sounding in tort because their purported losses are wholly economic in nature.") (citing *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 561, 489 A.2d 660, 663 (1985) ("[A] commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence."). However, the decisions on point expressly recognize an exception to the economic loss bar for claims of fraud and misrepresentation. *Coastal Group, Inc. v. Dryvit Systems*, Inc., 643 A.2d 649, 652 (N.J. App. Div. 1994) ("Although the trial court correctly relied upon *Spring Motors* in dismissing plaintiff's negligence claim . . . the court erred in precluding plaintiff from pursuing its claim for fraud and misrepresentation. *Spring Motors* only precludes claims brought under tort principles which are

inconsistent with the remedies authorized under the UCC[;] however, the UCC expressly preserves a buyer's right to maintain an action for fraud and misrepresentation.").

The Court will deny the request to dismiss Count LXIV.

### 6. North Carolina (Counts LXXIII, LXXIV)

North Carolina's iteration of the economic loss rule bars a negligence action by the purchaser of a defective product where "the only damage sustained is damage to the product itself, deemed 'economic loss.'" *Jones v. Caterpillar, Inc.*, No. 16-00331, 2017 WL 4865537, at *3 (E.D.N.C. July 11, 2017) (citing *Wilson v. Dryvit Systems, Inc.*, 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002) ("North Carolina has adopted the economic loss rule, which prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected."); and *Malone v. Tamko Roofing Products Inc.*, No. 13-00089, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013) ("As plaintiff has only alleged damage to the roof itself, he is limited to a claim sounding in warranty, and the court will dismiss the remaining claims under Rule 12(b)(6) as the economic loss rule bars their assertion herein.) (dismissing fraudulent concealment claim but allowing warranty claim to proceed)). That rule, however, limits only negligence actions. *Cargill, Inc. v. WDS, Inc.*, No. 16-00848, 2018 WL 1525352, at *5 (W.D.N.C. Mar. 28, 2018) (citing *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 258 (N.C. Ct. App. 2016) ("[*North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978)] and its progeny — despite the use of the broad term 'tort' in *Ports Authority*'s discussion of the economic loss rule — have been limited in their application to merely barring negligence claims.")). It does not bar claims sounding in fraud. *Bradley Woodcraft*, 795

S.E.2d at 259 ("[W]hile claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred.").

Because the decisions on point hold contrary to the defendant's position, the Court will deny the requests to dismiss Counts LXXIII and LXXIV.

### 7. Utah (CIII)

The Utah courts generally recognize the economic loss doctrine as barring recovery in tort for any breach of a purely contractual duty, *Anapoell v. American Express Business Finance Corp.*, No. 07-198, 2007 WL 4270548, at *6 (D. Utah Nov. 30, 2007) (citing *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 38, 70 P.3d 1, 10 (Utah 2003)), but the decisions on point also squarely have held that, "[a] claim for fraud in the inducement cannot be barred by the economic loss doctrine[,] because . . . the doctrine only applies to bar tort claims that fall within the 'bargained-for duties and liabilities' of a contract." *Associated Diving & Marine Contractors, L.C. v. Granite Construction Co.*, No. 01-330 DB, 2003 WL 25424908, at *7 (D. Utah July 11, 2003); *see also Sunridge Development Corp. v. RB & G Engineering, Inc.*, 2010 UT 6, 230 P.3d 1000, 1007 n.8 (Utah 2010) ("In [*Yazd v. Woodside Homes Corp.*, 2006 UT 47, 143 P.3d 283 (Utah 2006)], a fraudulent concealment case, we held that a developer-builder had an independent duty outside of any contract with the purchaser to disclose known and material defects.").

The Court will deny the request to dismiss Count CIII.

### B. Pre-Suit Notice (Wyoming)

The defendant argues that Wyoming plaintiff Magnuson's failure to provide the requisite pre-suit notice requires dismissal of the statutory fraud claim in Count CXVI. The plaintiffs point out, however, that paragraph 1775 of the SACMC alleges that Magnuson provided the required statutory notice in compliance with the applicable statute.

The Court addressed the same challenge by the defendant to the sufficiency of pre-suit notice provided by certain California plaintiffs and held that it was required at this initial stage of the proceedings to accept as true the allegations that adequate notice was served. *FCA Gearshift Litig.*, 280 F. Supp. 3d at 1004 ("The defendant contends that the demand letter which was sent was inadequate because it did not describe the claims in sufficient detail. But the Court is obligated at this stage of the pleadings to accept the summary allegation that notice sufficient to satisfy the statute was sent." (citing Fed R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.")). The defendant contends that the allegations of the SACMC are insufficient because the pleadings state only that "certain plaintiffs" mailed the required pre-suit notice letter. But no class has yet been certified in this case, and Ann Magnuson presently is the only named plaintiff from Wyoming. Under the circumstances it is a fair inference from the pleadings, by simple process of elimination, that it was Magnuson who sent the purported notice.

The Court will deny the request to dismiss Count CXVI.

## C. Privity (Various States)

FCA argues that the common law fraudulent concealment claims in Counts III (Arizona) and LXXIV (North Carolina) are barred because the law of those states requires privity between a plaintiff buyer and defendant seller, and the plaintiffs allege that they bought their cars from third-party dealers, not directly from FCA US, LLC. FCA similarly contends that the implied warranty claims in Counts XXX (Illinois), LXI (Nevada), LXXVI (North Carolina), LXXXI (Ohio), and CX (Washington) all fail for lack of privity, for the same reason that the plaintiffs bought their cars from third-party dealers.

### 1. Arizona (Count III)

Under Arizona Law, "[g]enerally, 'there is no need to show privity when recovery for a product-caused injury is sought on the ground that the defendant manufacturer or seller was guilty of fraud and deceit, as fraud is a recognized exception to the requirement of privity.'" *J-Hanna v. Tucson Dodge Inc.*, No. 10-504, 2011 WL 4625759, at *2 (D. Ariz. Oct. 5, 2011) (quoting Am. L. Prod. Liab. 3d § 25:5 (2011)) (denying motion to dismiss statutory and common law consumer fraud claims where the plaintiffs alleged that "Enterprise Rent-A-Car and Chrysler Group LLC did not disclose history on the vehicle creating a false idea that it was worth more money when it [was] devalued due to theft[,] frame damage[,] and abuse as a rental vehicle.").

The Court previously has held that the plaintiffs have alleged that FCA misrepresented or failed to disclose the existence of the gear shift defect here by ignoring hundreds of rollaway incidents and failing to disclose to them at the point of sale a known propensity of the class vehicles to cause surprise unintended gear changes. Because fraud has been alleged adequately, and because there is no requirement that privity be established in order to proceed on a common law consumer fraud claim under Arizona law, the Court will deny the request to dismiss Count III.

### 2. North Carolina (Count LXXIV, LXXVI)

FCA argues that privity is required to assert both a fraudulent concealment claim and an implied warranty claim under North Carolina law. It is half right.

"To assert a claim for fraudulent concealment, there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose." *Friedland v. Gales*, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998). The parties have not cited, and the Court has not located, any North Carolina authority holding that any form of privity is an element of a *prima facie* case for common law fraudulent concealment.

The sole authority FCA cites in support of its argument is *Board of Education of Perquimans County v. Deitrick*, 18 S.E.2d 704, 704 (N.C. 1942), in which the North Carolina Supreme Court held that because there was "no privity between plaintiff and Major & Loomis Company," any "fraudulent concealment of the condition of the lumber sold by Major & Loomis Company to the defendant Thompson constitute[d] a wrong committed by it against Thompson"; the court concluded that the plaintiff had no claim against a seller for any misrepresentation made in a sale to which it was not a party. Only a handful of later cases from North Carolina courts cite that decision, and none have held plainly that privity of contract is an absolute requisite for a claim of common law fraudulent concealment. As one later court observed, the ruling in *Deitrick* "was affirmed on the ground that there was no privity between plaintiff and the dealer, *and that the dealer did not participate in the fraud alleged to have been committed by the defendant*, and was in no sense a joint tort feasor." *Davis v. Radford*, 63 S.E.2d 822, 827 (N.C. 1951). In this case, by contrast the plaintiffs have alleged specific concealments and misrepresentations that they attribute directly to FCA. Those pleadings suffice to state that the defendant "knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose." *Friedland*, 509 S.E.2d at 797.

On the other hand, "North Carolina common law generally requires privity of contract in order to assert an implied warranty claim." *McCauley v. Hospira, Inc.*, 75 UCC Rep. Serv. 2d 224, 2011 WL 3439145, at *4 (M.D.N.C. Aug. 5, 2011). Although that rule is subject to exceptions for personal injury (product liability) claims, *ibid.* (citing North Carolina Products Liability Act, N.C. Gen. Stat. §§ 99B-1(3), 99B-2(b)), no such claims are asserted in the economic loss cohort of cases in this action. The Court previously granted in part the defendant's motion to dismiss U.C.C. implied warranty claims under California law, which imposes a similar requirement for

such claims. *FCA Gearshift Litig.*, 280 F. Supp. 3d at 1016 ("The U.C.C. claim (Count IX) [] is subject to dismissal, because none of the California plaintiffs allege that they bought their cars directly from the defendant."). The same result is called for here.

The Court will deny the request to dismiss Count LXXIV and grant the request to dismiss Count LXXVI.

### 3. Illinois (XXX)

"Illinois law requires privity for an implied warranty claim," but "[p]rivity inquiries into the relationship between a purchaser, a seller, and a manufacturer are fact-intensive." *Flynn v. FCA US, LLC*, No. 15-0855, 2018 WL 3303267, at *5 (S.D. Ill. July 5, 2018) (denying motion for summary judgment on implied warranty claim) (citing *Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1986); *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1996)). In *Szajna*, the Illinois Supreme Court noted that "[t]he appellate court in this case held that while the parties were in privity for purposes of the provisions of the express written limited warranty which General Motors had extended, they were not in privity for the purposes of implied warranty." *Szajna*, 503 N.E.2d at 770. It therefore reversed the dismissal of the implied warranty claim, after concluding that the warranty language in question did not "disclaim" any implied warranties but only limited the duration of them to the term of the express written warranty. *Ibid.*

In this case, as in *Szajna*, FCA's written warranty states that "implied warranties are limited, to the extent allowed by law, to the time periods covered by the express written warranties contained in this booklet." Def.'s First Mot to Dismiss, Ex. B, 2014 Chrysler All Vehicles Basic Limited Warranty at 4 ("Your Legal Rights") (PgID.3284). Under the circumstances, the question whether the provisions of that limited warranty put the parties in privity sufficiently for the implied

warranty claims to proceed is a question of fact not amenable to disposition on the pleadings. *Flynn*, 2018 WL 3303267 at *5.

The request to dismiss Count XXX will be denied.

### 4. Nevada (Count LXI)

Contrary to the plaintiffs' argument, the Nevada decisions on point require vertical privity for a viable claim of breach of implied warranty. *Regent at Town Center Homeowners' Association v. Oxbow Construction, LLC*, 419 P.3d 702, 2018 WL 2431690, at *4 (Nev. 2018) ("'Where the parties to the law suit are not the immediate buyer and seller the weight of authority is that such lack of contractual privity will bar recovery on an implied warranty theory.'" (quoting *Long v. Flanigan Warehouse Co.*, 79 Nev. 241, 246, 382 P.2d 399, 402 (1963))); *see also Finnerty v. Howmedica Osteonics Corp.*, No. 14-114, 2016 WL 4744130, at *7 (D. Nev. Sept. 12, 2016) ("In Nevada, there are two types of implied warranties: (1) warranty of fitness for a particular purpose; and (2) warranty of merchantability. For either claim of implied warranty, Nevada case law requires contractual privity between the buyer and seller.") (citing *Long*).

Because the plaintiffs have not pleaded that the Nevada plaintiff purchased the vehicle directly from FCA, he cannot sustain his implied warranty claim. Therefore, the Court will dismiss Count LXI.

### 5. Ohio (Count LXXXI)

Ohio law requires privity for claims for breach of implied warranty based on contract, but not for such claims sounding in tort. *Mooradian v. FCA US, LLC*, No. 17-1132, 2017 WL 4869060, at *6 (N.D. Ohio Oct. 27, 2017) (citing *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007); *In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801, 865 (S.D. Ohio 2012)). To state a claim for breach of implied warranty in tort, the plaintiffs "must allege

that (1) a defect existed in a defendant's product that made it unfit for its ordinary, intended use; (2) the defect existed at the time the product left the defendant's possession; and (3) the defect was the proximate cause of the plaintiff's injuries." *In re Porsche*, 880 F. Supp. 2d at 867 (citing *White v. DePuy, Inc.,* 718 N.E.2d 450, 456 (Ohio Ct. App. 1998)). Privity is not a necessary prerequisite, and the Ohio plaintiffs have pleaded these elements to state a tort-based claim.

Although privity is required for a contract-based implied warranty claim, federal courts applying Ohio law readily have found the privity requirement to be satisfied where the manufacturer issued a written warranty covering the vehicle in question and the claims are based on warranty-covered defects. *Roxy Home Improvement, LLC v. Mercedes-Benz USA*, LLC, No. 17-01817, 2018 WL 1705800, at *5 (N.D. Ohio Apr. 9, 2018) ("For purposes of this [Rule] 12(c) motion and accepting well-pleaded factual allegations as true, the court finds that plaintiffs were in privity of contract with [Mercedes-Benz USA] with respect to the standard 4-year/50,000-mile limited warranties on the 2015 and 2016 vans."). The Ohio plaintiffs have alleged the existence of a corresponding written warranty issued by FCA.

Therefore, the Court will deny the request to dismiss Count LXXXI.

### 6. Washington (Count CX)

"Under Washington State law, 'lack of privity . . . [is] a defense to claims of breach of warranty.'" *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. 17-541, 2017 WL 3313963, at *6 (W.D. Wash. Aug. 3, 2017) (quoting *Tex Enterprises, Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 627-28 (Wash. 2003)). The plaintiffs contend that Washington law recognizes the third-party beneficiary exception to the requirement of vertical privity. However, "[t]ypically, there is no implied warranty when a purchaser buys a product from an intermediate distributor." *Ibid.* "Consequently, to bring implied warranty claims, plaintiffs must establish contractual privity."

*Lohr v. Nissan N. America, Inc.*, No. 16-1023, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17, 2017).

Washington law requires privity for viable claims of breach of an implied warranty of merchantability against a car maker, and the plaintiffs concede that they are not in vertical privity with FCA US, LLC. *Ibid.* ("Because Plaintiffs did not purchase or lease their vehicles directly from Nissan, they are 'vertical non-privity plaintiffs.'"). Therefore, the Court will grant the request to dismiss Count CX.

### D. Limitation of Remedy (Georgia, Minnesota)

The defendant argues that the statutory fraud claims in Counts XXII (Georgia), XXIII (Georgia), and XLIX (Minnesota) are barred because under those laws plaintiffs only are allowed to seek injunctive relief, and the claims here are for economic losses only.

### 1. Georgia (Counts XXII, XXIII)

Under Georgia's Uniform Deceptive Trade Practices Act (GUDPTA), "'[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.'" *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018) (quoting Ga. Code § 10-1-373(a)). "An injunction under this provision requires the allegation (and presentation of evidence showing) of a likelihood of future harm by a deceptive trade practice." *Id.* at 1293.

The plaintiffs contend that they have pleaded viable claims under Georgia law because, in addition to their prayers for economic damages, they also demand injunctive relief in the form of "immediate installation of an effective safety override system that does not diminish the functionality of the Class Vehicles or replacement of the Defective Shifter altogether; provision of

a temporary replacement vehicle while repair of the defect is pending, [as well as a] buyback of the Class Vehicles."

The plaintiffs here adequately have alleged ongoing future harm based on their assertions that the class vehicles contain a serious safety defect rendering them unsafe to drive, which has not been remedied by the defendant's repeated failed attempts at repairs. *C.f. Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1294, 2018 WL 1474619 (N.D. Ga. 2018) ("[The plaintiffs allege] that they must periodically take their vehicles for service regarding the defect and that Mercedes (1) denies the existence of the defect and (2) charges Plaintiffs for non-permanent solutions."). As the *Amin* court explained, the existence of an alleged defect, coupled with failed attempts at repairs, or "band aid" fixes only, along with representations made after each repair that the vehicles are free from the defect, is sufficient to establish likely future harm resulting from similar unsatisfactory efforts by the defendant to skirt liability for the problem without an effective fix:

> As opposed to Mercedes' allegedly deceptive advertising, Plaintiffs have plausibly alleged that they are "likely to be damaged by [this] deceptive trade practice." O.C.G.A. § 10-1-373(a). This is because Plaintiffs have alleged that when they brought their vehicles to Mercedes for service related to the defect, Mercedes represented that the Class Vehicles were defect-free and possessed a certain quality with respect to the HVAC Systems — namely, the quality of being free from the specific defect alleged. Unlike Plaintiffs' other allegations, these concern both ongoing and future harm of the type contemplated by O.C.G.A. § 10-1-373.

*Amin*, 301 F. Supp. 3d at 1295.

Because the plaintiffs' allegations track those described in *Amin*, they have stated viable claims under the GUDPTA. The Court will deny the request to dismiss Counts XXII and XXIII.

### 2. Minnesota (Count XLIX)

Count XLIX was pleaded under Minnesota's Consumer Fraud Act (MCFA). "Neither the MCFA nor the [Minnesota Uniform Trade Act (MUTA)] provides a private cause of action."

*Hudock v. LG Electronics USA, Inc.*, No. 16-1220, 2017 WL 1157098, at *5 (D. Minn. Mar. 27, 2017) (citing *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1076 (D. Minn. 2010)). But Minnesota's Private Attorney General Statute (Private AG Statute) allows "'any person injured by a violation' of the laws entrusted to the Minnesota Attorney General to investigate and enforce — including the MCFA and MUTA — [to] file a lawsuit and recover damages as well as costs and attorney fees." *Ibid.* (citing *Levaquin*; Minn. Stat. § 8.31(3a)).

There is at least one limitation, however: the plaintiffs must "demonstrate that their cause of action benefits the public.'" *Ibid.* (quoting *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)). "'To determine whether a lawsuit is brought for the public benefit[,] the Court must examine not only the form of the alleged misrepresentation, but also the relief sought by the plaintiff.'" *Ibid.* (quoting *Zutz v. Case Corp.*, No. 02-1776, 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003)). The Minnesota courts generally have rejected public benefit contentions where "'plaintiffs are suing for injuries resulting from mass produced and mass marketed products.'" *Ibid.* (quoting *In re Levaquin Prod. Liab. Litig.*, 752 F. Supp. 2d at 1077).

Nonetheless, "the fact that a plaintiff requests no injunctive relief 'does not preclude either party from satisfying the public benefit requirement.'" *In re Levaquin Prod. Liab. Litig.*, 752 F. Supp. 2d at 1077 (quoting *ADT Security Services, Inc. v. Swenson*, 687 F. Supp. 2d 884, 892 (D. Minn. 2009)). In *Collins v. Minnesota School of Business, Inc.*, 655 N.W.2d 320 (Minn. 2003), the Minnesota Supreme Court held that a plaintiff's suit may benefit the public interest where it seeks relief for misrepresentations made not just to the individual plaintiff but also generally to "the public at large." *Id.* at 330 ("MSB presented its program to the public at large. We hold that respondents' successful prosecution of their claims benefited the public and therefore respondents are entitled to reasonable attorney fees."). "[A]fter *Collins*, it seems reasonable to infer that the

Minnesota Supreme Court is as much if not more concerned with the **degree** to which defendants' alleged misrepresentations affect the public." *In re Levaquin Prod. Liab. Litig.*, 752 F. Supp. at 1078 (footnote omitted; emphasis in original).

Contrary to the defendant's position, Minnesota does not limit a plaintiff suing under the state's Private AG Act to injunctive relief only. A request for injunctive relief is neither a necessary nor a sufficient condition for finding that the suit will confer a public benefit. Instead, the focus of the Minnesota courts has been on the degree to which the public at large was impacted by the defendant's conduct, and on whether the relief sought will redress harm inflicted on consumers other than the named plaintiffs.

The Court addressed a similar challenge to the claims of New York plaintiffs in its prior opinion and held that a similar "public interest" premise for those claims was satisfied by the facts pleaded here. *FCA Gearshift Litig.*, 280 F. Supp. 3d at 1007 ("The plaintiffs have stated sufficient facts to establish that the alleged defect meets the public interest requirement under the New York consumer protection statute. They allege in the FACMC that (1) the defective gear shifter design was installed in more than 800,000 vehicles sold by the defendant; (2) the defect has not effectively been remedied in at least 13,000 of those vehicles; and (3) the defect has produced at least 686 reports of rollaway incidents, resulting in 286 crashes, and 68 of those incidents produced injuries. Those allegations certainly are sufficient to meet New York's threshold requirement of consumer-oriented conduct by a showing that the acts or practices have a broader impact on consumers at large in that they are directed to consumers or potentially affect similarly situated consumers." (quotations marks omitted)). Similarly, the Minnesota plaintiffs here easily satisfy the requirement of showing that their lawsuit to redress the defendant's conduct in selling and refusing to repair

more than 800,000 class vehicles with a dangerously defective gear shift implicates a "public benefit."

The Court will deny the request to dismiss Count XLIX.

### E. State Law Prohibition of Class Actions (Georgia, Iowa)

FCA argues that the statutory fraud claims in Counts XXII (Georgia), XXIII (Georgia), and XXXII (Iowa) are barred because those statutes prohibit class actions. Georgia's Fair Business Practices Act generally forbids class suits by consumers to recover damages under that law. Ga. Code § 10-1-399(a) ("Any person who suffers injury or damages as a result of a violation of Chapter 5B of this title, as a result of consumer acts or practices in violation of this part, as a result of office supply transactions in violation of this part or whose business or property has been injured or damaged as a result of such violations may bring an action individually, but not in a representative capacity."). Iowa imposes a gate-keeping requirement on the certification of consumer class actions and requires a certification by the state's attorney general that the case is not frivolous:

> A class action lawsuit alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general. The attorney general shall approve the filing of a class action lawsuit alleging a violation of this chapter unless the attorney general determines that the lawsuit is frivolous. This section shall not affect the requirements of any other law or of the Iowa rules of civil procedure relating to class action lawsuits.

Iowa Code § 714H.7.

FCA's argument echoes a similar one addressed by a divided Supreme Court in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). In that case, the Court held "that a federal diversity action could proceed under Rule 23 despite a state law prohibiting class treatment of suits seeking damages of the kind asserted in the *Shady Grove* complaint." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1809 (2018). However, the fractured

Court was not able to generate a bright line rule in *Shady Grove*. Instead, the opinions demonstrated the tension that can result from rules of procedure that impact substantive law. It is well established that the Rules Enabling Act, 28 U.S.C. § 2072, dictates that "Rule 23 cannot be interpreted to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, ---, 131 S. Ct. 2541, 2546 (2011) (quoting 28 U.S.C. § 2072(b)).

Justice Scalia's opinion in *Shady Grove* on the pivotal issue in the case was that a clear rule of federal procedure always governs in diversity cases, and therefore Federal Rule 23 will always supersede contrary state law. *Shady Grove*, 559 U.S. at 416. That statement of the law received four votes. Justice Ginsberg, writing for four justices, took the opposite view. Justice Stevens, writing for himself, "agree[d] with Justice Ginsburg that there are some instances where state procedural rules function as part of the state's definition of substantive rights and remedies and thus must be applied in federal court." *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016) (citing *Shady Grove*). But he believed that the application of Rule 23 did not contravene the Rules Enabling Act and therefore governed the proceedings in that case. *Id.* at 436.

Because Justice Stevens's opinion applied the narrowest grounds, it is considered controlling. The Sixth Circuit has applied that general principle with the understanding that "[i]f a Rule governs only the manner and the means by which the litigants' rights are enforced, it is valid; [but] if it alters the rules of decision by which the court will adjudicate those rights, it is not." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 794 (6th Cir. 2016) (quotations and citations omitted).

The handful of federal courts that have confronted the issue have held that Georgia's statutory class action prohibition for consumer suits falls on the "procedural" side of the line drawn

by Justice Stevens and therefore does not run afoul of the Rules Enabling Act. *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d at 1292 ("Federal Rule 23 does not 'abridge, enlarge or modify any substantive right' of the parties under the GFBPA."); *Andren v. Alere, Inc.*, No. 16-1255, 2017 WL 6509550, at *22 (S.D. Cal. Dec. 20, 2017) ("[A] representative action for monetary relief is not barred under Georgia or Colorado law.") (collecting cases).

FCA's position that the Iowa statute on point prohibits the plaintiffs from proceeding on a class basis in this case is even weaker, since that statute does not prohibit class actions at all, but merely requires a certification by the state's attorney general that the claims are not frivolous. That is quintessentially within the realm of provisions set forth merely to regulate "the manner and the means by which the litigants' rights are enforced." *Stein*, 821 F.3d at 794. And in any event, any gatekeeping function was discharged in this case via the availability of Rule 12(b)(6) challenges to the sufficiency of the pleadings passed on by this Court — a remedy of which the defendant here repeatedly has availed itself. The Court has not found any authority on point from any jurisdiction holding that Iowa Code § 714H.7 should be applied to bar a consumer class action in federal court, and FCA cites none.

Therefore, the Court will deny the request to dismiss Counts XXII, XXIII, and XXXII.

### F. Statutory Repeal (Illinois)

FCA argues that the statutory fraud claim in Count XXVIII (Illinois) is defective as a matter of law because the statute cited is a criminal law that has been repealed, and even when it was in force it did not create any private right of action for recovery of civil damages. The plaintiffs respond that Count XXVIII is not brought under any criminal statute, that the civil provision on which they actually rely, 815 Ill. Comp. Stat. § 505/10a(a)), explicitly provides a cause of action

for consumer fraud, and that, for the purposes of the civil statutory fraud claim, "[a]ny references in the SACMC to [the criminal statute, 720 Ill. Comp. Stat. § 295/1A] can be ignored."

The Court will dismiss Count XXVIII to the extent that it appears to raise any claims under 720 Ill. Comp. Stat. § 295/1A, and will strike from the caption of that count the citation of that statute, since the plaintiffs concede that they do not intend to pursue any claims under it.

### G. Unjust Enrichment (Texas)

The defendant argues that the unjust enrichment claim in Count CI (Texas) is defective as a matter of law because unjust enrichment is not a recognized cause of action in Texas. However, that does not appear to be an accurate statement of Texas law. *See Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. Ct. App. 2007) ("Unjust enrichment is an independent cause of action."); *see also Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007).

Texas treats the unjust enrichment claim the same as many other jurisdictions. "'Unjust enrichment demands restitution when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another.'" *Bryant v. CIT Group/Consumer Finance, Inc.*, 303 F. Supp. 3d 515 (S.D. Tex. 2018) (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992)). "'Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory' like unjust enrichment." *Ibid.* (quoting *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). However, "'[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Ibid.* (quoting *Heldenfels Bros.*, 832 S.W.2d at 41).

The Texas Supreme Court and lower appellate courts readily have recognized unjust enrichment as a cause of action, particularly where, as here, a plaintiff alleges that the defendant

"obtained a benefit from another by fraud." *Heldenfels Bros.*, 832 S.W.2d at 41. The defendant has not cited any Texas authority endorsing its position that the cause of action is limited solely to peculiar circumstances or cases involving oil and gas interests.

Therefore, the Court will deny the request to dismiss Count CI.

## H. Diminished Usefulness (Louisiana)

The defendant argues that the implied warranty claim in Count XXXVI (Louisiana) is defective because Louisiana plaintiff Stewart does not allege that his vehicle is totally useless or has diminished usefulness, and he does not assert that he stopped driving the car. Stewart responds that he adequately has alleged "diminished usefulness" of his vehicle because he asserts that (1) "he no longer feels safe driving the vehicle" (SACMC ¶ 54), which he contends "illustrates his belief that his car's ability to provide safe, reliable transportation has diminished"; and (2) "the recall diminishes functionality in the car, i.e., towing ability, and exposes Class Vehicles to mechanical failures," *id.* ¶¶ 211-12. Stewart contends that these statements are sufficient plausibly to allege that the car is less useful than it was before, e.g., for towing, or not useful for its intended purpose of providing safe transportation. Stewart also contends that he is not required to allege that he stopped driving the car, and, in any event, he has raised claims under both Louisiana Civil Code Article 2524 and the Louisiana Product Liability Act (Article 2520), and those parallel claims do preempt or preclude each other.

"In a suit for redhibition, the plaintiff must prove: 1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the thing contained a nonapparent defect at the time of sale; and 3) the seller was

given an opportunity to repair the defect." *Justiss Oil Co., Inc. v. Oil Country Tubular Corp.*, 2015-1148 (La. Ct. App. 3 Cir. Apr. 5, 2017).

Louisiana's concept of implied warranty provides a remedy to a buyer of a product to recover for any "redhibitory defect" undisclosed at the time of sale. "Louisiana Civil Code article 2520 defines a redhibitory defect as one that: 'renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.'" *Page v. Dunn*, No. 16-3621, 2017 WL 5599512, at *3 (E.D. La. Nov. 21, 2017) (quoting La. Civ. Code art. 2520).

"'A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.'" *Ibid.* "A redhibitory defect must be latent and have existed at time of sale, as the implied warranty against redhibitory defects covers only hidden defects, not defects known to the buyer at the time of sale." *Ibid.*

For all of the reasons discussed in exhaustive detail in the Court's prior opinion, the plaintiffs adequately have alleged here that the electronic gear shifts in their cars had a hidden defect when those cars were sold — the propensity to fail to shift to an intended gear or to engage in surprise random gear changes — that rendered their vehicles "so inconvenient or imperfect that, judged by the reasonable person standard, had [they] known of the defect, [they] would never have purchased [the cars]." *Justiss Oil*, 2015-1148. Those allegations also suffice plausibly to allege that the gear shift defect, whether or not it "'render[s] [a class vehicle] totally useless, [still]

diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.'" *Page*, 2017 WL 5599512 at *3 (quoting La. Civ. Code art. 2520).

The Court will deny the request to dismiss Count XXXVI.

## I. Right of Action (Colorado)

FCA argues that the strict product liability claim in Count XIII (Colorado) must be dismissed because the Colorado Products Liability Act does not create a substantive cause of action, but "simply provides presumptions and defenses for such claims." The plaintiffs respond that Colorado recognizes a common law cause of action for strict product liability following the Restatement (Second) of Torts, § 402A, and that the Colorado Products Liability Act, Colo. Rev. Stat. §§ 13-21-401, *et seq.*, merely "complements this claim, by providing applicable presumptions and defenses."

In its reply brief, FCA abruptly shifts gears (presumably intended) and argues that the strict product liability claim (Count XIII) is barred because Colorado has adopted the economic loss doctrine with respect to such claims. But it did not direct any such objection to Count XIII in its opening motion papers, and instead only challenged Count XIV (fraudulent concealment) on that basis. In its opening papers the sole challenge to Count XIII was that it was brought under a statute that does not create any substantive cause of action.

The argument that there is no cause of action for strict liability under Colorado law is a non-starter; the caption of Count XIII does not cite any statute and plainly implies a cause of action under Colorado common law, which readily is recognized by the courts of that State. The Colorado Supreme Court long has recognized a cause of action for strict products liability, and to define the contours of such a claim "has looked to the doctrine of strict products liability as set forth in section 402A of the Restatement (Second) of Torts." *Walker v. Ford Motor Co.*, 2017 CO 102, ¶ 10, 406

P.3d 845, 849 (Colo. 2017) (citing *Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1244 (Colo. 1987) ("In determining the extent of liability of a product manufacturer for a defective product, this court has adopted the doctrine of strict products liability as set forth in the Restatement (Second) of Torts section 402A (1965).")). "Under section 402A, a manufacturer may be held strictly liable for harm caused by 'any product in a defective condition unreasonably dangerous to the user or consumer.'" *Ibid.* (quoting Restatement (Second) of Torts § 402A). The Colorado plaintiffs have alleged all the elements of that cause of action.

FCA's belatedly mounted objection to Count XIII based on application of the economic loss doctrine is not properly before the Court since it was raised for the first time in FCA's reply and was not briefed in the opening motion papers or response. *United States v. Pham*, 872 F.3d 799, 802 (6th Cir. 2017) ("[A] party waives an argument made for the first time on reply.") (citing *Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Moreover, although Colorado courts have held that the economic loss doctrine applies in limited cases to bar some forms of strict liability claims, they have narrowly construed that principle to implicate only claims where it is alleged that the product "injured only itself" and the only purported damages are for replacement of a defective product that was "merely ineffectual" rather than "unreasonably dangerous." *Carter v. Brighton Ford, Inc.*, 251 P.3d 1179, 1187 (Colo. Ct. App. 2010) ("'[P]roducts that are dangerous, rather than merely ineffectual, should be governed by the rules governing products liability law.'" (quoting Restatement (Third) of Torts § 21)).

The Court will deny the request to dismiss Count XIII.

### J. Magnuson-Moss Warranty Act

Finally, FCA contends that the Magnuson-Moss Warranty Act Claim in Count I must be dismissed in part to the extent that it is premised on any defective state law claims. The Court will

grant that request in part congruent to the dismissals of (1) the portion of Count LI (Minnesota) that may be construed as premised on failure to disclose a known defect at the point of sale; (2) the implied warranty claims in Count LXXVI (North Carolina), LXI (Nevada), CX (Washington); and (3) and the minor redaction of Count XXVIII noted above, and will deny the request in all other respects.

IV. Conclusion

For the reasons discussed above, most of the plaintiffs' economic loss claims will survive, but some of them must be dismissed.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the economic loss plaintiffs' second amended consolidated master class action complaint (ECF No. 191) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: (1) the portion of Count LI (Minnesota) that may be construed as premised on failure to disclose a known defect at the point of sale; (2) the implied warranty claims in Count LXXVI (North Carolina), LXI (Nevada), CX (Washington); and (3) that portion of Count XXVIII that may be construed as raising any claims under the authority of 720 Ill. Comp. Stat. § 295/1A.

It is further **ORDERED** that the citation of 720 Ill. Comp. Stat. § 295/1A in Count XXVIII is **STRIKEN**.

It is further **ORDERED** that the claims of former Oklahoma plaintiff Carol Clark pleaded in Counts LXXXIII (consumer fraud), LXXXIV (fraudulent concealment), LXXXV (express warranty), LXXXVI (implied warranty), and LXXXVII (unjust enrichment), and the claims of former Florida plaintiff Justine Andollo pleaded in XVIII (Florida Fair Trade Practices Act), XIX

(fraudulent concealment), XX (express warranty), and XXI (unjust enrichment) are **DISMISSED**

**WITHOUT PREJUDICE**.

It is further **ORDERED** that the defendant's motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: November 28, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on November 28, 2018.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI