UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION

MDL No. 2744

_____/

Case Number 16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION, CERTIFYING ISSUE
CLASSES, AND SETTING DEADLINES FOR SUBMISSION OF PROPOSED NOTICE**

The plaintiffs' steering committee has identified 39 named individuals from 23 different

states asserting a variety of claims on behalf of a putative class against defendant FCA US LLC

(Chrysler) relating to their purchase of one of three models of the defendant's cars and trucks all

equipped with a monostable shifter. The plaintiffs seek to certify a single nationwide class and

either 16 or 23 subclasses (depending on which certification scheme wins approval) under Federal

Rule of Civil Procedure 23(b)(2) or (b)(3). But because the main thrust of the economic loss

component of this MDL is the recovery of damages, a (b)(2) class cannot be certified. And the

plaintiffs have not satisfied their burden of establishing the predominance of common issues over

individual issues in either their multi-state or state-by-state proposals for certification. However,

there are several discrete issues that can be litigated on a collective basis to justify a common-

issues class under Rule 23(c)(4). Those issues, identified below, will efficiently advance the

litigation of this multidistrict case, and therefore the Court will certify a common-issues class,

granting in part and denying in part the motion for class certification.

## I. Background

### A. Facts

The factual background of the case is by now familiar to the parties and was reviewed at length in the Court's previous rulings on the defendant's several rounds of dispositive motions. For the purposes of the present motion, the plaintiffs rely principally on the following alleged circumstances which they believe the discovery in the case will establish.

The vehicles targeted in the Second Amended Consolidated Master Complaint (SACMC) are the 2012-2014 Dodge Charger, the 2012-2014 Chrysler 300, and the 2014-2015 Jeep Grand Cherokee, which were manufactured with a monostable shifter. The defendant sold more than 800,000 vehicles during those model years that used the same electronic gear shifter.

The plaintiffs allege that studies conducted in 2010 and 2012 by defendant's retained market research firm, which were replicated during this litigation by the plaintiffs' human factors expert, suggest that the gear shift design "is defective because it inhibits reliable gear selection and provides insufficient tactile or audible feedback to allow drivers to readily and confidently shift to their intended gear." In their earlier pleadings, the plaintiffs suggested that the transmission design also could, in some cases, spontaneously shift out of a selected gear into another, unintended gear. They now concede that they have abandoned any claims based on that second alleged defect, and they represent that they intend to proceed solely on the theory that the gear shift is defective due to its confusing interface design.

Based on its own internal studies and employee test drives of pre-production cars, Chrysler knew about the problems with the gear shift design well before the class vehicles went to market. It also considered alternative designs such as a rotary knob shifter licensed by Jaguar, but those were rejected as too costly or time consuming to implement, and the defendant went ahead with

marketing the monostable design despite its known issues. Employees who drove production models continued to report problems operating the shifter, which were confirmed by a 2012 focus group study after the first models went to market. Published press reviews of the design also criticized its difficult and confusing operation. Nevertheless, Chrysler continued to use the monostable design without any significant change in Charger and Jeep models through the 2014 model year. The problematic shifter eventually was scrapped in favor of a polystable design starting with the 2015 model year.

In August 2015, in response to numerous driver reports of rollaway accidents involving class vehicles with the monostable shifter, the National Highway Transportation Safety Administration (NHTSA) began an investigation. NHTSA's report concluded that the design was problematic and ignored several basic design principles due to its inconsistency with established patterns of automobile gear selector operation, unexpected and counter-intuitive operation, excessive demands for user focus to interpret the shifter's condition and behavior, and difficulty of reliably achieving intended gear selections. On April 22, 2016, Chrysler issued a voluntary recall, but its recall notice attributed the rollaway accidents solely to "improper usage" of the shifter, and it asserted (and continues to assert) that its solution of a software update to add an "auto-park" feature to the class vehicles was merely to foreclose the possibility of rollaway accidents due to misuse by drivers who failed to put their vehicle in park before exiting. The plaintiffs contend that, notwithstanding the software fix, the problems with the shifter's confusing design and operation remain.

The plaintiffs previously pleaded that their vehicles were subject to excess depreciation on the used market, but at oral argument on the parties' expert motions counsel for the plaintiffs conceded that they have abandoned that damages theory. They now assert that they will proceed

solely on the theory that they suffered common economic losses due to overpaying for new vehicles at the point of sale, which they believed were safe and fit for daily transportation, but which they later found were unacceptably difficult and dangerous to drive.

## B. Claims

The SACMC pleads a variety of legal theories for recovery of these economic loss damages under the laws of 23 states, which do not always align neatly. In the decision on the defendant's motion to dismiss under Rule 12(b)(6), the Court dismissed several of the claims: (1) the implied warranty claims in Counts LXI (Nevada), LXXVI (North Carolina), CX (Washington); and (2) the claims voluntarily dismissed by former plaintiff Carol Clark, who was the sole named plaintiff from Oklahoma (Counts LXXXIII-LXXXVII). The Court also later dismissed, with the consent of the parties, the claims of Justine Andollo of Florida (Counts XVIII-XXI), due to her absence from or non-participation in the case (dismissed by Pretrial Order 17 issued Nov. 18, 2018). However, since Andollo was dismissed from the case, a new Florida plaintiff, Sara Lalli, has appeared to take her place. Lalli's claims presently are the subject of a separately filed motion to dismiss, but because that motion remains pending, Lalli's claims under Florida law will be considered here. Finally, the Court also dismissed, upon voluntary notices, the claims by the only named plaintiffs from Minnesota (Corinn Berken) (Counts XLIX, L, LI, LII, LIII, LIV) (ECF No. 370, Apr. 11, 2019), and Georgia (Erica Willis) (Counts XXII-XXVII) (ECF No. 263, Oct. 5, 2018).

Accounting for the cumulation of those dismissals noted above, the remaining live claims pleaded in the SACMC are cataloged here. The Count number is listed in parentheses:

- Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (I) (by all plaintiffs)
- Arizona: Jeffrey Guy and Casey E. Perkins
  - Consumer Fraud, Ariz. Rev. Stat. § 44-1521 (II)
  - Fraudulent Concealment (III)

- o Express Warranty, Ariz. Rev. Stat. § 47-2313 (IV)
- o Unjust Enrichment (V)
- California: David Goldsmith and Michael V. Nathan, Jr.
  - o Unfair Competition, Cal. Bus. & Prof. Code § 17200 (VI)
  - o Consumers Legal Remedies Act, Cal. Civ. Code § 1750 (VII)
  - o False Advertising, Cal. Bus. & Prof. Code § 17500 (VIII)
  - o Fraudulent Concealment (IX)
  - o Express Warranty (Song-Beverly), Cal. Civ. Code §§ 1791.2 & 1793.2(D) (X)
  - o Implied Warranty (Song-Beverly), Cal. Civ. Code §§ 1791.1 & 1792 (XI)
- Colorado: Debra Felker
  - o Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 (XII)
  - o Strict Product Liability (XIII)
  - o Fraudulent Concealment (XIV)
  - o Express Warranty, Colo. Rev. Stat. §§ 4-2-313, 4-2.5-210 (XV)
  - o Implied Warranty, Colo. Rev. Stat. §§ 4-2-313, 4-2.5-212 (XVI)
  - o Unjust Enrichment (XVII)
- Florida: Sarah Lalli (Subject to separate motion to dismiss)
  - o Unfair & Deceptive Trade Practices, Fla. Stat. § 501.201 (XVIII)
  - o Fraudulent Concealment (XIX)
  - o Express Warranty, Fla. Stat. § 672.313 (XX)
  - o Unjust Enrichment (XXI)
- Illinois: Kean McDonald and Lindsey Wells
  - o Consumer Fraud & Deceptive Practices, 815 Ill. Comp. Stat. § 505/1 (XXVIII)
  - o Fraud by Concealment (XXIX)
  - o Implied Warranty, 800 Ill. Comp. Stat. §§ 5/2-314, 5/2A-212 (XXX)
  - o Unjust Enrichment (XXXI)
- Iowa: Pamela Havnen
  - o Consumer Fraud, Iowa Code § 714H (XXXII)
  - o Fraudulent Concealment (XXXIII)
  - o Express Warranty, Iowa Code §§ 554.2313, 554.13210 (XXXIV)
  - o Unjust Enrichment (XXXV)
- Louisiana: Dustin Stewart
  - o Implied Warranty (Redhibitory Defects), La. Civ. Code Arts. 2520, 2524 (XXXVI)
- Maryland: Charles Frank Schultz
  - o Consumer Protection Act, Md. Code Com. Law § 13-101 (XXXVII)
  - o Fraudulent Concealment (XXXVIII)
  - o Express Warranty, Md. Code Com. Law § 2-313 (XXXIX)
  - o Implied Warranty, Md. Code Com. Law § 2-314 (XL)
  - o Unjust Enrichment (XLI)
- Massachusetts: Bernadine Hartt, Scott M. Youngstrom, Jr., and Todd Machtley
  - o Deceptive Acts or Practices, Mass. Gen. Laws Ch. 93A, §1 (XLII)
  - o Unjust Enrichment (XLIII)
- Michigan: Melvin Scott
  - o Consumer Protection Act, Mich. Comp. Laws § 445.903 (XLIV)
  - o Fraudulent Concealment (XLV)
  - o Express Warranty, Mich. Comp. Laws §§ 440.2313, 440.2860 (XLVI)

- o Implied Warranty, Mich. Comp. Laws § 440.2314 (XLVII)
- o Unjust Enrichment (XLVIII)
- Missouri:  Taylor Brooks (*WITHDRAWN AS CLASS REP.*)
  - o Implied Warranty, Mo. Rev. Stat. § 400.2-314 (LV)
  - o Express Warranty, Mo. Rev. Stat. § 400.2-313 (LVI)
  - o Unjust Enrichment (LVII)
- Nevada:  Eliam M. Marrero-Bernal
  - o Deceptive Trade Practices, Nev. Rev. Stat. § 598.0903 (LVIII)
  - o Fraudulent Concealment (LIX)
  - o Express Warranty (LX)
  - o Unjust Enrichment (LXII)
- New Jersey:  Clare Colrick
  - o Consumer Fraud, N.J. Stat. § 56:8-1 (LXIII)
  - o Fraudulent Concealment (LXIV)
  - o Express Warranty, N.J. Stat. § 12-A:2-313 (LXV)
  - o Implied Warranty, N.J. Stat.  § 12-A:2-314 (LXVI)
  - o Unjust Enrichment (LXVII)
- New York:  John Lynd and Janella Mack
  - o Deceptive Acts or Practices, N.Y. Gen. Bus. Law § 349 (LXVIII)
  - o False Advertising, N.Y. Gen. Bus. Law § 350 (LXIX)
  - o Express Warranty, N.Y. U.C.C. § 2-313 (LXX)
  - o Fraudulent Concealment (LXXI)
  - o Unjust Enrichment (LXXII)
- North Carolina: Jacob Gunnells
  - o Unfair & Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1 (LXXIII)
  - o Fraudulent Concealment (LXXIV)
  - o Express Warranty, N.C. Gen. Stat. § 25-2-313 (LXXV)
  - o Unjust Enrichment (LXXVII)
- Ohio:  Danielle and Joby Hackett
  - o Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 (LXXVIII)
  - o Fraudulent Concealment (LXXIX)
  - o Express Warranty, Ohio Rev. Code § 1302.26 (LXXX)
  - o Implied Warranty, Ohio Rev. Code § 1302.27 (LXXXI)
  - o Unjust Enrichment (LXXXII)
- Oregon:  Todd Fisher
  - o Unlawful Trade Practices, Or. Rev. Stat. § 646.605 (LXXXVIII)
  - o Fraudulent Concealment (LXXXIX)
  - o Express Warranty, Or. Rev. Stat. § 72.3130 (XC)
  - o Unjust Enrichment (XCI)
- Pennsylvania: Bruce Vosburgh, John and Mary Metzger
  - o Unfair Trade Practices, 73 Pa. Cons. Stat. § 201-1 (XCII)
  - o Fraudulent Concealment (XCIII)
  - o Express Warranty, 13 Pa. Cons. Stat. § 2313 (XCIV)
  - o Implied Warranty, 13 Pa. Cons. Stat. § 2314 (XCV)
  - o Unjust Enrichment (XCVI)

- Texas: Cris-Ann Craig, Kelli Foreman, Krystal Dial, Ashley Gillespie, Robert F. Hyatt IV, Cameron Phelps, and Jay Waggoner
  - Deceptive Trade Practices, Tex. Bus. & Com. Code § 17.41 (XCVII)
  - Fraudulent Concealment (XCVIII)
  - Express Warranty, Tex. Bus. & Com. Code § 2.313 (XCIX)
  - Implied Warranty, Tex. Bus. & Com. Code § 2.314 (C)
  - Unjust Enrichment (CI)
- Utah:  Trevor Marble
  - Consumer Sales Practices Act, Utah Code § 13-11-1 (CII)
  - Fraudulent Concealment (CIII)
  - Express Warranty, Utah Code § 70A-2-313 (CIV)
  - Implied Warranty, Utah Code § 70A-2-314 (CV)
  - Unjust Enrichment (CVI)
- Washington:  Karen Stedman and Cameron Webster
  - Consumer Protection Act, Wash. Rev. Code § 19.86.010 (CVII)
  - Fraudulent Concealment (CVIII)
  - Express Warranty, Wash. Rev. Code § 62A.2-313 (CIX)
  - Unjust Enrichment (CXI)
- Wisconsin:  Marc Hughes (*WITHDRAWN AS CLASS REP.*)
  - Deceptive Trade Practices, Wis. Stat. § 110.18 (CXII)
  - Fraud by Concealment (CXIII)
  - Express Warranty, Wis. Stat. § 402.313 (CXIV)
  - Unjust Enrichment (CXV)
- Wyoming:  Ann Magnuson
  - Consumer Protection Act, Wyo. Stat. § 40-12-101 (CXVI)
  - Fraudulent Concealment (CXVII)
  - Express Warranty, Wyo. Stat. § 34.1-2-313 (CXVIII)
  - Implied Warranty, Wyo. Stat. § 34.1-2-314 (CXVIX)
  - Unjust Enrichment (CXX)

C.  Proposed Class and Subclasses

Despite the variety of legal theories under the law of different jurisdictions, the plaintiffs

ask the Court to certify a nationwide class under Rule 23(b)(2) defined as follows:

> All persons or entities who currently own or lease a 'Class Vehicle' which
> means a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014 2015
> Jeep Grand Cherokee which is equipped with the monostable shifter.

They also ask the Court to certify 16 sub-classes under Rule 23(b)(3), which they propose to

organize by commonality of certain elements of their causes of action under various rules of state

law.  In the alternative to the elemental sub-classes, they ask the Court to certify Rule 23(b)(3)

classes state-by-state, for the 23 states with live claims pleaded in the SACMC. Finally, as another alternative, they ask the Court, if it decides not to certify any classes, to "schedule a bellwether trial" in any one of the constituent cases.

## II. Class Certification Requirements Under Rule 23(a)

Although perhaps slightly more complicated than ordering from a restaurant menu, a party seeking class certification under Federal Rule of Civil Procedure 23 must choose all four items under column (a) and pick at least one more from column (b). *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). The "(a)" requirements are numerosity, commonality, typicality, and adequate representation.

Numerosity is shown when the number of potential plaintiffs is too large to make joinder practicable but not so large as to make administration impossible. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976). There is no strict numerical test to determine when the class is large enough or its members too numerous to be joined under the Federal Rules of Civil Procedure. 523 n.24. This requirement is easily satisfied here, where the common issues discussed below implicate claims by the owners of more than 800,000 class vehicles. Even if the 23 states named in the present SACMC were the destinations of less than all of those vehicles, it is a safe assumption that at least hundreds of thousands were sold in those states, since four of them are among the most populous in the union (California, Florida, New York, and Texas).

Commonality simply means that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all questions of law and fact raised in the complaint need be common. *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004). "The standard is not [that] demanding. 'Rule 23(a) simply requires a common question of law or fact.'" *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 583 (W.D. Mich. 2001) (quoting

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)).  This requirement is satisfied as well.  Although the plaintiffs have alleged a variety of legal theories under the laws of several different states, recovery under all of them demands proof of a defect in the vehicles as a result of the shifters.  That is enough; "'for purposes of Rule 23(a)(2), even a single common question will do.'"  *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 355 (N.D. Cal. 2018), *leave to appeal denied sub nom. Reyna v. Arris Int'l PLC*, No. 18-80099, 2018 WL 6167340 (9th Cir. Nov. 8, 2018) (quoting *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Typicality requires that a "sufficient relationship exists between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotes omitted).  Although the named plaintiff's claims must fairly encompass the class members' claims, they need not always involve the same facts or law.  *See Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *Senter*, 532 F.2d at 525 n.31.  Once again, when focusing on the common issue of vehicle defect, the claims of the class representatives are identical to claims that could be raised by absent class members.  On that issue, the named plaintiffs' interests are "'aligned with those of the represented group.'"  *Sprague*, 133 F.3d at 399 (quoting *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996)).

Under Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"  *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th

Cir. 2013)). "The Rule requires that 'the class members have interests that are not antagonistic to one another.'" *Ibid.* "Thus, 'the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *Ibid.* (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)).

The defendant challenges the adequacy of a minority of the named plaintiffs as class representatives on the basis that their claims are not typical of those on which the plaintiffs now seek to proceed, or because their claims may be subject to certain individualized affirmative defenses. The defendant challenges the following plaintiffs from states where more than one named plaintiff presently is joined: Guy (Arizona); Wells (Illinois); Vosburgh (Pennsylvania); and Craig, Gillespie, and Waggoner (Texas). But in those states other named plaintiffs to whom the defendant raised no objection are available to stand in as class representatives: Perkins (Arizona); McDonald (Illinois); Metzger (Pennsylvania); and Foreman, Dial, Hyatt, and Phelps (Texas). Thus, the objections to the representatives from those states are immaterial, because other unchallenged representatives are available.

The defendant also argues that the lone plaintiff from Wyoming (Magnusson) would not be an appropriate representative because her pleadings embraced the now abandoned "spontaneous shift" claims. But the plaintiffs point out that Magnusson also testified to her complaints about the unintuitive operation of the shifter and difficulties selecting intended gears, so she also asserts claims that are typical of the class based on the design defect.

The defendant also contends that Scott (Michigan) and Marrero (Nevada) are unsuitable representatives because they are subject to individualized spoliation defenses for failing to preserve their vehicles for inspection. However, the merits of those affirmative defenses have not been settled at this stage of the case, and the necessity of addressing them in due course does not

foreclose Scott and Marrero from representing their states during the exploration of the narrow issues discussed below, where their claims are otherwise typical of absent class members in those pertinent respects. *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 Employee Benefits Cas. 23498, 2019 WL 314388, at *7 (S.D. Ind. Jan. 24, 2019) ("The Court will not disqualify Hoffman as an adequate class representative based on this affirmative defense, which, at this time, is speculative.").

The plaintiffs conceded in their reply that the available class representatives for Missouri (Taylor Brooks) and Wisconsin (Marc Hughes) cannot adequately represent absent class members from those states (or any others), because the individual claims pleaded by those plaintiffs are inconsistent with the theory of liability now advanced by other plaintiffs in the case. That is because the plaintiffs now have abandoned their claims, which previously were advanced by Brooks and Hughes, that the gear shift mechanism in question has either a manufacturing or design defect that causes class vehicles to spontaneously shift from a selected gear to a different, unintended gear. The plaintiffs have withdrawn Brooks (Missouri) and Hughes (Wisconsin) as potential representatives, and there is no question that classes cannot be certified in those states regarding any claims or issues.

Finally, the defendant raises a specious challenge to the adequacy of the representation of the classes by the plaintiffs' current lead counsel, premised on the supposed "abandonment" of "personal injury" claims. But as the defendant well knows, those plaintiffs who have asserted personal injury claims have been ably represented from the outset by members of the plaintiffs' steering committee who have participated at every stage of this litigation, and that representation has led to the (presumably favorable) negotiated resolution of most personal injury claims that

were joined in this matter. There is no indication from the record of the proceedings that any such extant claims have been or will be "abandoned" by responsible counsel for the plaintiffs.

### III. Rule 23(b) Elements

Rule 23(b) identifies three types of class actions, and a plaintiff must meet the requirements of at least one of them. The plaintiffs here suggest that two apply: Rule 23(b)(2), which is employed when the primary goal of the lawsuit is to obtain injunctive or declaratory relief; and Rule 23(b)(3), which authorizes class certification when common questions of law or fact "predominate" and the collective approach is "superior" to other methods of adjudicating the controversy. *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).

"Rule 23(b)(2) applies when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 279 (6th Cir. 2018). However, "when a case involves individualized damages awards, a damages class cannot be certified under subrule (b)(2)." *Ibid.* (citing *Wal-Mart*, 564 U.S. at 360-62).

"Rule 23(b)(3) classes . . . must meet predominance and superiority requirements, that is, 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness Center*, 863 F.3d at 466. "In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" *Id.* at 468 (quoting

*Amchem*, 521 U.S. at 594; *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016)). "'If the same evidence will suffice for each member to make a *prima facie* showing, then it becomes a common question.'" *Ibid.* (quoting *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)). The plaintiffs "need not prove that every element can be established by classwide proof," but "the key is to identify the substantive issues that will control the outcome." *Ibid.* (quotations omitted).

"In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Ibid.* (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). That is because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class." *Cole*, 839 F.3d at 541. "In the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and . . . ascertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Ibid.* "[T]he ascertainability requirement . . . necessitate[s] 'a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Ibid.* (quoting *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

### A. Plaintiffs' Proposed Classes

#### 1. Rule 23(b)(2) Class

The plaintiffs contend that certification of a nationwide class under Rule 23(b)(2) is appropriate to require the defendant to take further corrective action to fix the problems with the class vehicles, because the previously issued "auto-park" feature fix does not, even where it was successfully installed, reduce the risk of accidental rollaway incidents in cases where the driver

-13-

remains inside the vehicle without opening the door. The plaintiffs ask the Court to compel the defendant to issue a new recall notice explaining that a prior recall was issued, the remedy offered under that recall may be ineffective, and drivers who remain in the vehicle may still be at risk of rollaway accidents even with the fix.

All that may be true, but it is readily apparent that the main thrust of the plaintiffs' complaint is the recovery of damages for the loss of the value of the cars they purchased with the faulty shifters. That reality is fatal to their effort to certify a class under Rule 23(b)(2); the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes* that this rule "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 564 U.S. 338, 360-61 (2011). As the Sixth Circuit observed, the *Dukes* court "stated that 'individualized monetary claims belong in Rule 23(b)(3),' noting the due-process issues raised by binding a (b)(2) class without notice and an opportunity to opt out." *Clemons*, 890 F.3d at 279 (citing *Dukes*, 564 U.S. at 361-63).

The *Dukes* court "held open the possibility, however, that (b)(2) certification might be appropriate when monetary relief is 'incidental to . . . injunctive or declaratory relief." *Ibid.* (quoting *Dukes*, 564 U.S. at 360). But that does not help the plaintiffs here. The money damages sought in this case certainly are not "incidental" to the injunctive relief requested; rather exactly the opposite. Certainly, the plaintiffs would agree that a mere declaration that the vehicles are defective, without some substantial pecuniary award, would not come anywhere near making them whole.

The plaintiffs have not shown how certification of a class under Rule 23(b)(2) would be proper.

## 2. Rule 23(b)(3) Class

The plaintiffs ask the Court to certify sixteen (b)(3) sub-classes; they propose to organize those subclasses by commonality of certain elements of their causes of action under various rules of state law. Alternatively, they ask the Court to certify (b)(3) classes state by state for the 23 states with live claims pleaded in the SACMC. The plaintiffs "bear[] the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466-67 (6th Cir. 2017) (quoting *Dukes*, 564 U.S. at 350). They have not carried that burden; in fact, they have barely attempted to take it up.

The briefing on this motion has not been very helpful. The parties devoted most of their arguments to the common-elements scheme of certification, which is unsupported by any legal authority in the record, because the plaintiffs relied for that purpose on a voluminous excess appendix to the brief, which was stricken by the Court. The motion briefing that was properly filed does not cite any state court authority establishing the elements of even one of the dozens of causes of action pleaded in the SACMC. And even the excess briefing that was stricken does little more to define clearly the elements of many of the pleaded claims; it offers nothing to suggest how the elements on which the plaintiffs focus predominate over other issues raised by the various causes of action.

The plaintiffs' proposed state-by-state structure of subclasses is presented in a single-paragraph argument with no elaboration. The defendant, for its part, raised little substantive opposition to the state-by-state scheme but argued at length in its opposition that the common-elements scheme would be inappropriate. As to the state-by-state scheme, it merely argued that the plaintiffs made no effort to identify the elements of any of their claims — a sound position, since the plaintiffs cited no state authorities except in the stricken appendix.

Even with the benefit of the defunct excess briefing, the plaintiffs simply have not done the heavy lifting of analyzing state by state and claim by claim why the purported common issues predominate over any individual questions, or what common proofs would be used to sustain each claim.

Moreover, the unmanageability of the plaintiffs' proposed schemes of certification is evident from their own presentation. To begin with, the plaintiffs conceded in their reply that the available class representatives for Missouri (Taylor Brooks) and Wisconsin (Marc Hughes) cannot adequately represent absent class members from those states (or any others), because the individual claims pleaded by those plaintiffs are inconsistent with the theory of liability now advanced by other plaintiffs in the case. As noted earlier, the plaintiffs now have abandoned the claims previously advanced by Brooks and Hughes (and others) that the gear shift mechanism in question has either a manufacturing or design defect that causes class vehicles to spontaneously shift from a selected gear to a different, unintended gear. In their reply, the plaintiffs withdrew Brooks and Hughes — the only named plaintiffs from their respective states — as class representatives, and, therefore, the claims of classes in at least those two states cannot be certified at all, because the only named plaintiffs from those states are not members of any proposed class, and they therefore cannot represent the interests of class members in those states, or any others.

Under Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Dry Max Pampers Litig.*, 724 F.3d at 721 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)). Because the plaintiffs admit in their reply that Brooks and Hughes do not share common interests,

their claims are not typical of any of the proposed classes. Apparently lead counsel means simply to abandon the claims of those plaintiffs, since no effort is made to advance the spontaneous-gear-changes defect theory pleaded by them, and counsel has conceded that the only presently asserted defect is due to the alleged confusing design of the gearshift.

The infeasibility of the plaintiffs' proposed cross-state certification scheme is best illustrated at the point in their motion brief where they concede that class certification is *not* appropriate, and is *not even sought*, for the "consumer protection" claims of plaintiffs in seven of the 21 states in which such claims were pleaded in the SACMC:

> Plaintiffs have excluded those states with elements that may be uncommon or might otherwise serve as an impediment to class certification. Because the consumer protection statutes in Arizona, North Carolina, Pennsylvania, and Wyoming require showings of individual reliance, Plaintiffs do not include those claims in the Consumer Protection Classes. Plaintiffs have also excluded states where only affirmative misrepresentations are actionable under the relevant statutes (Colorado, Oregon, and Wisconsin).

Plfs.' Mot. for Class Cert., ECF No. 287, PageID.3816. The plaintiffs do not explain what approach the Court should take to resolve the consumer fraud claims of the individuals in the seven states that are not embraced by any of the proposed classes, and it is unclear whether counsel intends to proceed with individual litigation of those claims, or, more likely, means to simply abandon the plaintiffs to their own devices. Because the plaintiffs also argue that individual litigation of any of the pleaded claims would be economically impossible, it appears that the result would be to cast adrift the plaintiffs in those states with no remedy.

As to the 14 jurisdictions in which class certification of consumer fraud claims is sought, the plaintiffs assert that they can be grouped into several categories based on whether the prohibited species of conduct is "deceptive" or "unconscionable," and whether "omissions" are actionable (as opposed to mere "deceptions"). The plaintiffs' attempted piecemeal treatment of the "unjust enrichment" and "fraudulent concealment" classes runs along similarly arbitrary lines

that merely vary in concert with the rules of decision among the states. The resulting 16 arbitrarily composed "common issues" bins in the plaintiffs' cross-state scheme is not meaningfully smaller than the number of sub-classes that would result from state-by-state certification. Rather than a stratagem for efficiently advancing the entire litigation, the proposed cross-state scheme appears to be simply an artifice to minimize the complications and to sidestep or obfuscate the significant obstacles to certification of classes for the plaintiffs in several jurisdictions.

Although they propose state-by-state certification as an alternative, the plaintiffs do not attempt anywhere in their briefing to explain how certification on a state-by-state basis can be soundly sustained, merely leaving it to "the Court's discretion," without further elaboration. As noted above, neither of the plaintiffs' proposed schemes are supported by any citations of pertinent legal authorities in the motion brief.

Before certifying any claim for class treatment, the Court must conduct a rigorous analysis, examining the elements of each cause of action proposed for certification. *Clemons*, 890 F.3d 254 at 278-79; *Sandusky Wellness Center*, 863 F.3d at 466. The plaintiffs need not show that every element of every claim can be sustained by common proofs, but they must at least identify the elements of their claims so that the Court can weigh the common and individualized issues to determine which predominate. The plaintiffs have not supplied any substantial basis for such determinations here, and they therefore have not cleared the ground on which the Court must stand to certify their claims. *Sandusky*, 863 F.3d at 466-67.

Because the plaintiffs have scarcely approached, let alone carried, their burden of demonstrating the predominance of common over individualized issues on their claims, the Court will not certify classes under Rule 23(b)(3) on either of the alternative schemes that the plaintiffs proposed.

IV.  Issue-Class Certification

Although the plaintiffs have not shown that any of their several causes of action should be certified for class treatment, there are a number of discrete issues apparent from the record that are suitable subjects for class-wide adjudication.  "When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  "Rule 23(c)(4) contemplates using issue certification to retain a case's class character where common questions predominate within certain issues and where class treatment of those issues is the superior method of resolution."  *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019).  Those issues in this case are:

- Whether the monostable gear shift has a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation.

- Whether the defendant knew about the defect and concealed its knowledge from buyers of the class vehicles.

- Whether information about the defect that was concealed would be material to a reasonable buyer.

The parties have not addressed the option of issue-class certification in their briefing (except, perhaps, as it might bear on the plaintiffs' request to schedule a bellwether trial), but they did discuss it at oral argument.  There, plaintiffs' counsel stated that the plaintiffs would be amendable to issue-based certification as an alternative to the schemes proposed in their motion.  The Court believes it is a sensible alternative, particularly in the context of the transfers of these cases under 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers . . .

will promote the just and efficient conduct of such actions."); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 648 (4th Cir. 2018) ("The MDL device is intended to allow federal courts to 'conserv[e] judicial resources in situations where multiple cases involving common questions of fact [are] filed in different districts.'") (quoting *In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig.*, 73 F.3d 528, 531-32 (4th Cir. 1996)).

MDL transferee courts have broad discretion to determine whether ruling on claim-dispositive issues before trial is appropriate. *In re Lipitor*, 892 F.3d at 648. When confronting potentially dispositive issues, the MDL court "must consider whether the issues presented are well suited for the transferee court to deal with in a collective fashion"; "[i]f the issues presented are common to all the cases centralized before the MDL court[, then] the transferee judge may be in the best position to rule." *Ibid.* (quoting Manual for Complex Litigation § 22.36 (quotation marks omitted)). Each of the various legal theories of recovery across the several jurisdictions identified in SACMC require resolution of at least one, if not all, of the issues listed above. They are all "common issues," that is, "one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, --- U.S. ---, 136 S. Ct. 1036, 1045 (2016). "Resolving [these] issues in one fell swoop would conserve the resources of both the court and the parties," *Martin*, 896 F.3d at 416, both here and in the transferor courts.

Under the "broad view" of Rule 23(c)(4) adopted by the Sixth Circuit, "courts apply [Rule 23(b)(3)'s] predominance and superiority prongs after common issues have been identified for class treatment under Rule 23(c)(4). The broad view permits utilizing Rule 23(c)(4) even where

predominance has not been satisfied for the cause of action as a whole." *Id.* at 411 (citations omitted).

The defendant devoted the greater mass of its opposition briefing to enumerating elements of various claims that it contends are *not* subject to common proofs. But the existence of questions requiring individualized answers is not an absolute bar to claim certification under Rule 23(b)(3). *Id.* at 415 ("*Tyson* instructs that certification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately." (quoting 136 S. Ct. 1045)). The pendency of unrelated individualized issues is no impediment at all to certification of discrete common issues for class-wide determination under Rule 23(c)(4). *Id.* at 414 ("The district court's determination that individualized inquiries predominate over the elements of actual injury and causation does not mean that the same individualized inquiries taint the certified issues. To the contrary, the certified issues do not overlap with actual injury or causation. . . . That distinction insulates [the discrete issues] from overlapping with the liability elements that the district court found incompatible with class treatment.").

The defendant also identifies several instances where it believes it has proofs that will defeat the plaintiffs' claims on the merits, either by negating crucial elements or successfully establishing an affirmative defense to liability. But the prospect that the answer to a common question may favor the defendant rather than the plaintiffs certainly does not mean that class litigation of the issue is barred. *See Martin*, 896 F.3d at 416 ("Class treatment of the . . . certified issues will not resolve Defendants' liability entirely, but it will materially advance the litigation. The issue classes therefore satisfy Rule 23(b)(3)'s superiority requirement.") In fact, it weighs in favor of addressing the issue expeditiously in a single proceeding to avoid the needless expense of adjudicating the same question in thousands of individual cases that might be doomed to founder

on the same common shoal. "[T]he 'common contention need not be one that will be answered, on the merits, in favor of the class'"; "'for purposes of Rule 23(a)(2), even a single common question will do.'" *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 355 (N.D. Cal. 2018), *leave to appeal denied sub nom. Reyna v. Arris Int'l PLC*, No. 18-80099, 2018 WL 6167340 (9th Cir. Nov. 8, 2018) (quoting *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045. With respect to the issues noted above, here are at least three common questions that predominate.

### A. Design Defect

The question whether the gear shift has a design defect that renders the class vehicles unsuitable for the ordinary or intended use of providing safe transportation is a typical foundational element for all of the pleaded implied warranty and product liability claims.

Typically, the implied warranty cause of action (variously identified under other labels in some jurisdictions) requires the plaintiffs to prove that a product is not "merchantable," meaning that it is unsuitable for its ordinary or intended use. *E.g.*, California: *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1246, 228 Cal. Rptr. 3d 699, 710 (2018) ("the [item] was not fit for ordinary purposes for which the goods are used.") (implied warranty); Colorado: *Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264, 1277 (D. Colo. 2002) ("products are in a defective condition unreasonably dangerous to the user or consumer") (strict product liability), *Simon v. Coppola*, 876 P.2d 10, 15 (Colo. App. 1993) ("the product was not

suitable for the purpose warranted") (implied warranty); Illinois: *Walker v. Macy's Merchandising Group, Inc.*, 288 F. Supp. 3d 840, 868 (N.D. Ill. 2017) ("Goods are not of merchantable quality if they are unfit for their intended purpose.") (implied warranty); Louisiana: *Justiss Oil Co., Inc. v. Oil Country Tubular Corp.*, 216 So. 3d 346, 361 (La. App. 3 Cir. 2017) ("In a suit for redhibition, the plaintiff must prove [that the product] is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that judged by the reasonable person standard, had he known of the defect, he would never have purchased it.") (redhibitory defect); New Jersey: *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 601 n.8 (3d Cir. 2012) ("goods . . . were not 'merchantable' at the time of sale") (implied warranty); Pennsylvania: *Visual Communications, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 611 F. Supp. 2d 465, 470 (E.D. Pa. 2009) ("[t]his requires showing [] that the product malfunctioned [and] that the plaintiff used the product as intended or reasonably expected by the manufacturer") (implied warranty); Utah: *Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶ 8, 263 P.3d 1191, 1195 (Ct. App. 2011) ("the product was unreasonably dangerous due to a defect or defective condition") (implied warranty).

Under the laws of all the jurisdictions where implied warranty claims were pleaded, "merchantability" of an automobile requires a showing that the vehicle operates in a "safe condition" or provides "safe transportation." California: *Zuehlsdorf v. FCA US LLC*, No. 18-1877, 2019 WL 2098352, at *10 (C.D. Cal. Apr. 30, 2019) ("As cars are designed to provide transportation, the implied warranty of merchantability is a guarantee that they will operate in a safe condition and be substantially free of defects.") (citing *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012)); Illinois: *Overland Bond & Inv. Corp. v. Howard*, 9 Ill. App. 3d 348, 354, 292 N.E.2d 168, 172-73 (1972) ("Fitness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects. It should be

obvious that any car without an adequate transmission and proper brakes is not fit for the ordinary purpose of driving."); Louisiana: *Morgan v. Gen. Motors, LLC*, No. 14-1058, 2015 WL 1198424, at *2 (W.D. La. Mar. 16, 2015) ("Plaintiffs have alleged that GM breached the implied warranty of fitness because the vehicles contained an unreasonably dangerous condition and were not suitable for providing safe transportation. This language sufficiently matches up with the language in the statute for redhibition."), *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, No. MDL-991, 1995 WL 491155, at *7 (E.D. La. Aug. 15, 1995) ("[T]he Bronco II's alleged propensity to roll over [is a] sufficient redhibitory defect, because it is likely some of the plaintiffs would not have purchased their Bronco II vehicles had they known of the defect."); Maryland: *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 615-16 (D. Md. 2014) ("'Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable.'" (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)); Michigan: *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 785 (E.D. Mich. 2019) ("[C]ars are not merchantable merely because they are able to provide transportation. Rather, to be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects.") (denying motion to dismiss multiple state-law implied warranty claims, including under Michigan law); New Jersey: *Kearney v. BMW*, No. 17-13544, 2018 WL 4144683, at *15 (D.N.J. Aug. 29, 2018) ("In New Jersey, the implied warranty that comes with the purchase of a car is simply a guarantee that it will operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered merchantable."); *Little v. Kia Motors Am., Inc.*, 455 N.J. Super. 411, 438, 190 A.3d 502, 518 (App. Div. 2018) ("The implied warranty

standard was not limited to whether the Sephia was safe and reliable, but rather, whether it was fit for the ordinary purpose for which cars are used."); Ohio: *Mooradian v. FCA US, LLC*, No. 17-1132, 2017 WL 4869060, at *7 (N.D. Ohio Oct. 27, 2017) ("In the consumer vehicle context, this means that Plaintiffs must adequately allege that their vehicles are not fit for safe driving and reliable transportation."); Pennsylvania: *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation[,] it is generally considered merchantable."); Texas: *Adams v. Nissan N. Am., Inc.*, No. 17-2653, 2018 WL 2338871, at *9 (S.D. Tex. May 4, 2018), *report and recommendation adopted*, 2018 WL 2337135 (S.D. Tex. May 23, 2018) ("Plaintiffs have sufficiently alleged the vehicles are unfit for transportation [where they] allege that because the defective dashboard reflects off the windshield, drivers 'struggle to see' and their view is obstructed[, and thus they] claim the 'Class Vehicles are unfit for transportation because they pose a significant safety hazard' and [are] 'unreasonably dangerous to operate.'"); Utah: *Winzler v. Toyota Motor Sales USA, Inc.*, No. 10-00003, 2010 WL 3064364, at *3 (D. Utah Aug. 3, 2010) ("'[T]he implied warranty of merchantability is simply a guarantee that [the vehicle] will operate in a 'safe condition' and 'substantially free of defects.'" (quoting *Carlson*, 883 F.2d at 297), *judgment vacated on other grounds*, 681 F.3d 1208 (10th Cir. 2012).

The plaintiffs have submitted initial proofs of studies performed by the defendant, before and after the class vehicles were sold, and replicated by the plaintiffs' expert human factors engineer, suggesting that an overwhelming majority of ordinary drivers of the class vehicles could not reliably select intended gear settings with the monostable shifter even after repeated attempts

to use it, while the same drivers used alternative designs without difficulty and with far fewer gear selection errors. A fact-finder reasonably could conclude that such a design, which inhibits a majority of drivers from reliably selecting the desired direction of movement (or stopping the car from moving), is not one that is reasonably suited for safe and reliable transportation.

Under the rules of decision listed above, the questions whether the class vehicles are suitable for their "ordinary purpose" or "intended purpose" of providing "safe transportation"; whether they were "unreasonably dangerous" to drivers; or whether a "reasonable buyer" would have bought the cars despite knowing about the alleged safety defect, all are objective inquiries "susceptible to generalized, class-wide proof," *Tyson*, 136 S. Ct. at 1045, on a common basis applicable to all class vehicles, without regard to the individual circumstances of the buyers. The evaluation of common facts about the gear shift design and the determination by objective criteria whether it renders the vehicles unfit for safe transportation, unreasonably dangerous, or unacceptable to reasonable drivers do not implicate any individualized issues; those common questions predominate over any individualized questions. The discrete question of whether a defect exists is the dominant issue common to all cases and causes of action.

The defendant contends that the configuration of the monostable shifter varied among the class vehicles, but those distinctions may be addressed by presentation of subsets of the common proofs that account for whatever material distinctions there were between the modest number of class vehicle models. The exploration of this foundational question of whether a defect exists that makes the vehicles unfit for the purpose of providing safe transportation, on a class-wide basis, as it pertains to all affected owners of the class vehicles, certainly would be a superior method of resolution of that issue compared with 800,000 individual trials of the same question, based on the same proofs, in a multitude of proceedings. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th

Cir. 2006) ("The threshold issue of whether Ford's warranty promise can reasonably be read to cover the alleged defect at issue in this case, regardless of manifestation during the warranty period, is better litigated in the class context. Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class.").

Moreover, because the alleged design defect is the sole premise of all the express warranty claims, an answer to the question whether the gear shift has a safety defect will have obvious dispositive consequences for all of those causes of action, all of which depend on the same express warranties covering "defects in materials or workmanship." Notably, some of those claims may be doomed for other reasons; the Court previously rejected the defendant's argument that as a matter of law "design defects" are not cognizable "defects in materials or workmanship" under the law of certain jurisdictions. That ruling was premised on the previously pleaded but now abandoned claims that the shifter produced spontaneous unintended gear changes. Whether that basis for dismissal may be renewed against some of the express warranty claims is a question for another day. Suffice it to say, if the conclusion of a fact-finder is that there is no discernible "defect" of any kind in the gear shift, then the express warranty claims must fail regardless of any other rules of decision that may apply.

B. Concealment

Another common question is whether the defendant knew about the alleged safety defect in the gear shift design and concealed its knowledge from users. Concealment of a material fact from another party to a transaction is a foundational element of fraudulent concealment in every jurisdiction where that cause was pleaded. Arizona: *Wells Fargo Bank v. Teamsters*, 201 Ariz. 474, 496, 38 P.3d 12, 34 (2002); California: *Geraghty v. Shalizi*, 8 Cal. App. 5th 593, 597, 215 Cal. Rptr. 3d 61, 64 (2017); Colorado: *Spring Creek Exploration & Production Co., LLC v. Hess*

*Bakken Investment II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018); Florida: *Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1106 n.6 (11th Cir. 2018) (citing *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015)); Illinois: *Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181, ¶ 31, 90 N.E.3d 1048, 1056, 418 Ill. Dec. 559, 567 (Ill. Ct. App. 2018); Iowa: *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 876 (N.D. Iowa 2009) (citing *Sinnard v. Roach*, 414 N.W.2d 100, 105 (Iowa 1987)); Maryland: *Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC*, No. 17-3420, 2019 WL 1441812, at *19 (D. Md. Mar. 31, 2019) (citing *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010)); Michigan: *In re Korn*, 567 B.R. 280, 307 (Bankr. E.D. Mich. 2017) (citing *Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399, 412, 617 N.W.2d 543, 550 (2000)); Nevada: *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1154 (9th Cir. 2005) (citing *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1485, 970 P.2d 98, 110 (1998), *abrogated on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 271, 21 P.3d 11, 15 (2001)); New Jersey: *Argabright v. Rheem Manufacturing Co.*, 258 F. Supp. 3d 470, 488 (D.N.J. 2017) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997)); New York: *JGK Indus., LLC v. Hayes NY Bus., LLC*, 145 A.D.3d 979, 980, 45 N.Y.S.3d 479, 481 (N.Y. App. Div. 2016); North Carolina: *Brodkin v. Novant Health, Inc.*, 824 S.E.2d 868, 874 (N.C. Ct. App. 2019); Ohio: *Cianfaglione v. Lake Nat'l Bank*, --- N.E.3d---, 2019-Ohio-1299, ¶ 23, 2019 WL 1517667, at *3 (Ct. App. Apr. 8, 2019); Oregon: *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1223 (D. Or. 2016) (citing *Oregon Pub. Employees' Ret. Bd. v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424, 83 P.3d 350, 359 (2004)); Pennsylvania: *V-Tech Serv., Inc. v. Street*, 2013 PA Super 166, 72 A.3d 270, 275-76 (2013), *Rissmiller v. NGK N. Am., Inc.*, No. 18-00597, 2018 WL 4203839, at *3 (E.D. Pa. Sept. 4, 2018) (citing *Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500 (Pa.

Commw. Ct. 2013)); Texas: *Jang Won Cho v. Kun Sik Kim*, No. 14-16-00962, --- S.W.3d ---, 2019 WL 1442412, at *11 (Tex. Ct. App. Apr. 2, 2019)); Utah: *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1162 (D. Utah 2018) (citing *Hermansen v. Tasulis*, 2002 UT 52, ¶ 24, 48 P.3d 235, 241-42 (2002)); Washington: *In re Mastro*, No. 09-16841-MLB, 2017 WL 2889659, at *23 (Bankr. W.D. Wash. July 6, 2017) (quoting *Adams v. King Cty.*, 164 Wash. 2d 640, 662, 192 P.3d 891, 902 (2008)).

The defendant contends that the question of what it concealed and when cannot be resolved on a class-wide basis because public knowledge about the defect varied throughout the relevant class period. But that argument is particularly disingenuous considering the defendant's recent fraught attempt to conceal from public disclosure the crucial proofs offered by the plaintiffs to prove the existence of the defect. The studies that the defendant made such vigorous, repeated attempts to sequester under seal as "confidential information" suggest a singular striking proposition that, on this record, has never been conceded or disclosed by the defendant to anyone, namely the conclusion, reached through multiple repeated studies, that *nearly all ordinary drivers presented with the monostable shifter design were unable to learn to operate it reliably after a reasonable number of tries*.

In its 2016 recall notice, the defendant cast the sole "defect" with the shifter as being entirely due to "misuse" by drivers who failed to put their vehicles in park before exiting. It has insisted repeatedly throughout this litigation that the gear shifter is "not defective" and that it works as designed when properly used, tarring all of the plaintiffs' claimed misfortunes as the product of mere "user error." The defendant *never* has admitted, or informed affected buyers of its vehicles, that it learned during repeated trials of the design that the monostable shifter confounded attempts at routine operation by *almost all of the ordinary drivers who were asked to try it*. Whether the

defendant disclosed the substance or conclusions of its 2010 and 2012 studies to any class members, and the implications of those conclusions for the safety of its shifter design, is a factual question that readily can be addressed by proofs common to the entire class, particularly since, based on the present record, it appears that the information never came publicly to light until it was disclosed as part of the recent filings in this litigation. The defendant's determined efforts to maintain the "confidentiality" of the studies defies any presumption that they previously publicly were disclosed.

The defendant asserts that nothing remains to be disclosed about the gear shift design because every operator of a class vehicle could learn all there is to know about it from a test drive, or certainly after years of driving their cars. But even if the plaintiffs individually found the gear shift confounding to use, there is nothing in the record to suggest that they were informed before buying their cars that nearly all other drivers of the vehicles had the same problems using it. That knowledge of the design's allegedly nearly universal awkwardness reasonably could be found to be far more material to a potential buyer than mere individual distaste for it.

This issue likewise predominates over non-common issues, and collectively determining it is a superior method of adjudication.

## C. Materiality

In nearly all jurisdictions where the plaintiffs have pleaded consumer protection, deceptive practices, or fraudulent concealment claims, the pertinent rules of decision call for an evaluation of whether a "reasonable consumer" or "reasonable person" likely would consider the information concealed to be important when making a purchasing decision. Because this universally calls for application of an objective standard, the question whether the concealment of information about the alleged gear shift defect should be deemed "material" can be answered by common, class-wide proofs concerning whether reasonable consumers would have been concerned about the

information withheld. Arizona: *Meredith v. BankUnited*, No. 10-01480, 2011 WL 13233483, at *12 (D. Ariz. May 6, 2011) ("A matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in question.") (fraudulent concealment); California: *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) ("Materiality, for [Consumers Legal Remedies Act] claims, is judged by the effect on a 'reasonable consumer.'"); Florida: *Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 445 (Dist. Ct. App. 2017) ("Materiality is generally evaluated under an objective test — inquiring whether a misrepresented or omitted fact would have taken on significance in the mind of a reasonable person.") (fraudulent concealment); Colorado: *Maxwell v. United Servs. Auto. Ass'n*, 2014 COA 2, ¶ 42, 342 P.3d 474, 484 (Colo. Ct. App. 2014) ("[W]hile uniform concealment of material information creates an inference of reliance, that inference may be rebutted by evidence that a reasonable consumer would have made the same decision, even if the information had been disclosed.") (Consumer Protection Act, fraudulent concealment); Illinois: *Smith v. NVR, Inc.*, No. 17-8328, 2018 WL 6335051, at *4 (N.D. Ill. Dec. 5, 2018) ("It is plausible that reasonable consumers would rely on NVR's pre-sale representations regarding the natural wood cabinets and 30-year shingles and then not realize that they had received 25-year shingles and veneer cabinets.") (consumer fraud); Iowa: *Dier v. Peters*, 815 N.W.2d 1, 8 (Iowa 2012) ("[A] fraudulent misrepresentation is material if it is likely to induce a reasonable person to act."); Maryland: *Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. 14-2376, 2015 WL 4394408, at *20 (D. Md. July 15, 2015) ("The non-disclosed fact must be material, which means it must be one on which a reasonable person would rely in making a decision.") (fraudulent concealment); Massachusetts: *Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 671-72 (1st Cir. 2017) ("[T]o determine whether conduct is deceptive [under Mass. Gen.

Laws Ch. 93A], the finder of fact must assess whether the conduct possesses a tendency to deceive and could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted."); Michigan: *In re Pixley*, 456 B.R. 770, 782 (Bankr. E.D. Mich. 2011) ("'A material fact must be of enough importance in the matter that a reasonable person would be likely to rely on it.'" (quoting Michigan Standard Civil Jury Instruction 128.10)); Ohio: *Calypso Asset Mgmt., LLC v. 180 Indus., LLC*, 2019-Ohio-2, ¶ 46, --- N.E.3d ---, 2018 WL 6874611, at *9 (Ct. App. 2018) ("A misrepresentation is material when, under the circumstances, it would likely affect the conduct of a reasonable person in determining whether to enter into the transaction at issue.") (fraudulent inducement); Nevada: *Trejo de Zamora v. Auto Gallery, Inc.*, No. 12-01357, 2014 WL 1685925, at *9 (D. Nev. Apr. 28, 2014) ("For purposes of deceptive trade practices, materiality is a question of fact [and the] essential question is whether the reasonable buyer's decision to buy or not to buy would change if the fact at issue were disclosed."); New Jersey: *Hussain v. Citizens Fin. Grp., Inc.*, No. A-0865-17T1, 2019 WL 490091, at *5 (N.J. Super. Ct. App. Div. Feb. 8, 2019) ("A fact is material [for purposes of the Consumer Fraud Act] when the seller knows or should know it is important to the particular buyer's decision or when such fact would be important to the decision of a reasonable buyer."); New York: *Porsche v. LLR, Inc.*, No. 18-9312, 2019 WL 2062845, at *7 (S.D.N.Y. Apr. 30, 2019) ("LLR's practices are likely to mislead a reasonable consumer and were thus materially misleading.") (deceptive practices); Oregon: *McFadden v. Dryvit Sys., Inc.*, 54 UCC Rep. Serv. 2d 934, 2004 WL 2278542, at *12 (D. Or. Oct. 8, 2004), *report and recommendation adopted*, No. 04-103, 2004 WL 2852554 (D. Or. Dec. 10, 2004) ("'A misrepresentation is material where it would be likely to affect the conduct of a reasonable man with reference to a transaction with another person.'" (quoting *Millikin v. Green*, 283 Or. 283, 285, 583 P.2d 548, 550 (1978)) (fraudulent concealment); Pennsylvania: *Kline v.*

*EDS Relocation & Assignment Servs.*, No. 08-0980, 2008 WL 4822026, at *5 (M.D. Pa. Nov. 4, 2008) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.") (fraud); Texas: *Whittington v. Mobiloil Fed. Credit Union*, No. 16-482, 2018 WL 6582824, at *4 (E.D. Tex. Oct. 26, 2018) ("[F]raud requires a material representation [and 'material' means that] a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question."); Washington: *Young v. Toyota Motor Sales, USA*, No. 35842-9-III, 2019 WL 2223161, at *3 (Wash. Ct. App. May 23, 2019) ("Implicit in the definition of 'deceptive' is the understanding that the actor misrepresented something of material importance. Deception exists [under the Consumer Protection Act], if there is a representation, omission or practice that is likely to mislead a reasonable consumer.").

Under all those rules of decision, the "materiality" of information about the defect that was concealed by the defendant may be evaluated on an objective basis, by considering common proofs, without involving the circumstances of any of the prospective class members' individual transactions. This is a third discrete issue, implicating numerous pleaded claims, on which common questions of fact entirely predominate, because no individualized inquiries are involved. Deciding them on an aggregate basis is a superior method of adjudication.

## V. Conclusion

The plaintiffs have failed to demonstrate that their proposed national class is certifiable under Rule 23(b)(2). They also come up short on establishing that common issues predominate over individual questions for either state-by-state or cross-state class certification of any of their pleaded causes of action. Nevertheless, there are several common questions that efficiently may

be addressed by means of collective litigation. The Court has the discretion under Rule 23(c)(4) to certify those discrete issues for resolution on a class-wide basis.

Accordingly, it is **ORDERED** that the motions for class certification (ECF No. 286, 287) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiffs' requests to certify their proposed classes and subclasses under Rules 23(b)(2) and 23(b)(3) are **DENIED**.

It is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4), a class is conditionally certified in this case consisting of all persons or entities who currently own or lease a class vehicle, which means a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014-2015 Jeep Grand Cherokee equipped with the monostable shifter, where the vehicle was purchased in Arizona, California, Colorado, Florida, Illinois, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, or Wyoming, for determination of the following issues:

- Whether the monostable gear shift has a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation.

- Whether the defendant knew about the defect and concealed its knowledge from buyers of the class vehicles.

- Whether information about the defect that was concealed would be material to a reasonable buyer.

It is further **ORDERED** that the plaintiffs named in the Second Amended Consolidated Master Complaint, except for plaintiffs Guy (Arizona); Wells (Illinois); Vosburgh (Pennsylvania); and Craig, Gillespie, and Waggoner (Texas), are **DESIGNATED** as class representatives for their respective jurisdictions.

It is further **ORDERED** that requests for class certification of any issues or claims pleaded under the laws of Missouri (Counts LV-LVI) and Wisconsin (Counts CXII-CXV) are **DENIED**.

It is further **ORDERED** that the requests to designate plaintiffs Brooks and Hughes as class representatives for any purpose is **DENIED**.

It is further **ORDERED** that lead counsel and the plaintiffs' steering committee are appointed as class counsel.

It is further **ORDERED** that counsel for the parties must meet and confer and present to the Court **on or before December 23, 2019** a proposal for a notice to class members that complies with Federal Rule of Civil Procedure 23(c)(2)(B), and a method of delivering the notice to absent class members.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   December 9, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on December 9, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---