# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FCA US LLC MONOSTABLE ELECTRONIC GEARSHIFT LITIGATION | Master File No.16-md-02744 Honorable David M. Lawson Magistrate Judge David R. Grand |
| MDL No. 2744 | |
| This Document Relates to: PERSONAL INURY TRACK CASES | |
| DEDRA MANEOTIS, | Civil Action No. 17-cv-10351 |
| Plaintiff, | |
| v. | |
| FCA US LLC, a Delaware Corporation, | |
| Defendant. | |

**SECOND AMENDED CIVIL COMPLAINT AND JURY DEMAND**

# TABLE OF CONTENTS

<u>**Page**</u>

I.   INTRODUCTION ....................................................................................1

II.   JURISDICTION ....................................................................................4

III.   VENUE ..................................................................................................4

IV.   PARTIES ...............................................................................................5

    A.   Plaintiff .......................................................................................5

    B.   Defendant ....................................................................................6

V.   FACTUAL ALLEGATIONS ..................................................................7

    A.   Dedra Maneotis ..........................................................................7

    B.   FCA and the ZF Electronic Gear Shifter ..................................11

        1.   FCA knew that the shifter was defective and unreasonably dangerous.....14

        2.   NHTSA has determined the ZF Shifter is poorly designed. .....................16

        3.   Reports to NHTSA recount incidents of vehicle rollaway. .....................20

        4.   FCA and ZF maintain that there is nothing wrong with the Defective Shifter Vehicles........................................................................22

        5.   FCA's delayed and inadequate response to the defectively designed ZF Shifter has led to hundreds of accidents, many involving serious injury. .24

    C.   The Crash and Failures ............................................................31

    D.   Damages.....................................................................................32

VI.   TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL.........................33

    A.   Equitable Tolling ......................................................................33

    B.   Estoppel.....................................................................................35

VII.   VIOLATIONS ALLEGED....................................................................36

COUNT I  NEGLIGENCE .............................................................................36

COUNT II  NEGLIGENCE PER SE..............................................................39

010621-11  885073 V1

COUNT III  STRICT PRODUCT LIABILITY..........................................................................41

REQUEST FOR RELIEF ..................................................................................................44

DEMAND FOR JURY TRIAL ........................................................................................44

010621-11  885073 V1

## I.    INTRODUCTION

1.    Car makers must design and manufacturer their cars to be safe to operate.  One of the most basic safety features in every car is the gear shifter that causes a stationary car to remain stationary *unless and until* an operator wants the car to move. The design of a gear shifter must be such that drivers know when a car is safe to exit because it is in the "park" mode, and if a car maker decides to use a monostable shifter that does not change positions, it must include a safety override that automatically puts the car in "park" or engages the parking brake when the driver gets out of the car.

2.    FCA US LLC ("FCA") broke this basic rule when it designed and manufactured cars with monostable shifters that did not provide a reliable method of determining gear placement and did not include any safety-override to prevent rollaway accidents. In its 2012-14 Dodge Chargers and Chrysler 300s, and 2014-15 Jeep Grand Cherokees ("Defective Shifter Vehicles"), FCA installed gear shifters, designed and manufactured by ZF Friedrichshafen AG ("ZF"). Departing from the long established "PRND" gear selector that provided a distinct position of the shifter for each gear, ZF shifters were electronic and never actually "shifted" into any gear, instead returning to a central location after being engaged (the "Defective Shifter"). Thus, the only indication that a specific gear has been selected is that a light changes, i.e., when shifting from Drive to Park, the light changes from D to P.

There is no physical Park, Reverse, Neutral or Drive gear level, and there is no safety override function that puts the Defective Shifter Vehicles into "park" if a driver attempts to exit the vehicle while it is in another gear.

3.    The Defective Shifter design is dangerously defective because there is not any tactile or position feedback to the operator as to whether the car has actually been placed into the safe-to-exit "park" gear, nor a safety override that automatically puts the car in "park" or applies the parking brake if the driver gets out of the car. This dangerous defect has resulted in hundreds of accidents and vehicle rollaways as a result of drivers not knowing which gear their transmission is in and/or exiting their vehicle without the vehicle in Park.

4.    The safety issue is real: As of February 2016, the National Highway Transportation Safety Administration ("NHTSA") and the Office of Defects Investigation ("ODI") (collectively, "NHTSA-ODI") had identified over 300 accidents have already been reported, causing dozens of serious injuries.

5.    The design defect was avoidable.  FCA competitors, including BMW, have for several years used similar electronic shift levers that return to center after being engaged.  But on the BMW, if the car is not in "park," and the driver opens the door and unbuckles the seat belt, the car automatically shifts into "park," preventing rollaway incidents and accidents.

010621-11  885073 V1

6.      The Audi A8 luxury sedan used the identical Defective Shifter, but Audi did not introduce a single A8 into the market before designing and implementing a safety override that automatically engaged the electronic parking brake if the driver's door was opened and the seatbelt unbuckled.  FCA could have provided a similar safety override, but it chose not to.

7.      Though complaints and accident reports have been ongoing since soon after FCA began selling Defective Shifter Vehicles, FCA did not initiate a voluntary recall of the over 811,000 Defective Shifter Vehicles in the United States in mid-2016. Initially, FCA only sent a letter to owners describing the design defect of the Defective Shifter, even though it knew a viable fix existed and could solve the problem.  After years of blaming rollaway accidents on their customers and telling them the cars were not defective, the widely publicized death of Anton Yelchin—a popular young actor—and the filing of the original complaint in this action, FCA finally changed its tune and issued a recall to purportedly add an "autopark" feature to the defective shifter mechanism.

8.      FCA's unreasonable delay in fixing the defect and its warning letter was too little, too late for Dedra Maneotis.  Nearly a million Defective Shifter Vehicles remain in unsuspecting owners' driveways and garages. As a result of this dangerous defect, the Defective Shifter Vehicles are a hazard to their owners and the public and directly caused injuries to Plaintiff.

9.     Plaintiff seeks damages for the tortious conduct of FCA related to the defectively designed gear selector as alleged in this Complaint.  Specifically, Plaintiff seeks: compensation for rehabilitation, medical bills, pain and suffering, overpayment for a defective vehicle, consequential damages, and punitive damages for FCA's knowing disregard for its customers' safety in designing and selling the Defective Shifter Vehicles and fraud that put Dedra Maneotis at risk.

## II.     JURISDICTION

10.     By Order of the United States Judicial Panel for Multidistrict Litigation, this Court has subject matter jurisdiction over this action for pretrial purposes under 28 U.S.C. § 1407 because the matter in controversy involves common questions of fact with other actions transferred to MDL No. 2744.[1]

## III.     VENUE

11.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Colorado.  Plaintiff resides in the District of Colorado and the Defective Shifter Vehicle is owned by her employer, who is domiciled in the District of Colorado.  FCA has marketed, advertised, sold, and leased the Defective Shifter Vehicles within the District of Colorado.

---

[1] See Transfer Order, *In re: FCA US LLC Monostable Electronic Gearshift Litigation*, MDL No. 2744, Dkt. No. 44 (J.P.M.L. Oct. 5, 2016).

## IV.   PARTIES

### A.   Plaintiff

12.     Plaintiff Dedra Maneotis is a resident of Colorado domiciled in Craig, Colorado. Dedra's employer bought a 2014 Jeep Grand Cherokee in Colorado on April 29, 2013, which she was permitted to use.  Unknown to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with a Defective Shifter that is defectively designed.  The design defect allows the driver to get out of the car while the car is not in "park," which can cause the car to roll away from its parked position. The defect in the Jeep Grand Cherokee has caused Plaintiff serious physical injury.  FCA knew that the Defective Shifter could lead to vehicle rollaway incidents, but did not disclose this defect to Plaintiff, so Plaintiff operated the vehicle on the reasonable, but mistaken, belief that the Jeep Grand Cherokee was safe to operate as designed.

13.     Unknown to Dedra, at the time the vehicle was sold, the Jeep Grand Cherokee was equipped with a Defective Shifter that was defectively designed. The design defect allows the driver to get out of the vehicle while the vehicle is not in "park," which can cause the vehicle to roll away from its parked position and potentially cause serious bodily injury to the exiting driver or any other unsuspecting persons in the vehicle's path. The defect in the Jeep Grand Cherokee caused Ms. Maneotis's injuries when the Jeep Grand Cherokee rolled away striking and injuring her.

14.     FCA knew that the Defective Shifter in the Defective Shifter

Vehicles, including the Jeep Grand Cherokee, could lead to vehicle roll-away

incidents. However, FCA did not disclose this defect to the public or Dedra so

Dedra operated the Jeep Grand Cherokee on the reasonable, but mistaken, belief

that the Jeep Grand Cherokee was safe to operate as designed.

**B.     Defendant**

15.     Defendant FCA US LLC ("FCA") is a limited liability company

organized and existing under the laws of the State of Delaware, and is wholly

owned by holding company Fiat Chrysler Automobiles N.V., a Dutch corporation

headquartered in London, United Kingdom. FCA is doing business in the District

of Colorado and elsewhere. FCA's principal place of business and headquarters is

in Auburn Hills, Michigan.

16.     FCA (commonly referred to as Chrysler) is a motor vehicle

"Manufacturer" and a licensed "Distributor" of new, previously untitled Chrysler,

Dodge, Jeep, and Ram brand motor vehicles ("vehicles"). FCA's Chrysler brand is

one of the "Big Three" American automobile brands. FCA engages in commerce

by distributing and selling new and unused passenger cars and motor vehicles

under its Chrysler, Dodge, Jeep, and Ram brands. Other major divisions of FCA

include Mopar, its automotive parts and accessories division, and SRT, its

performance automobile division. As of 2015, FCA is the seventh largest automaker in the world by unit production.

17.     FCA's business operations in the United States include the manufacture, distribution, and sale of motor vehicles and parts through its network of independent, franchised motor vehicle dealers. FCA is engaged in interstate commerce in that it sells vehicles through this network located in every state of the United States.

18.     FCA and/or its affiliates and agents developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Defective Shifter Vehicles.

## V.     FACTUAL ALLEGATIONS

### A.     Dedra Maneotis

19.     Dedra Maneotis is a 80-year-old mother of four and grandmother of six. Before she was run over by her car, Dedra loved playing with her grandchildren and great-grandchild and working part-time at her family's business. She had an active lifestyle, caring for and playing with her great-grandchild, and attending school activities for her grandchildren. She loved to travel and took pride in fastidiously keeping her home in order.

20.     But on December 14, 2013, Dedra's Jeep Cherokee rolled back onto her as she was trying to get out through the driver's side door. Dedra was unable to hold on, fell out of the vehicle, and was flipped over by the driver-side wheel.

Dedra spent until New Year's Day in the hospital, causing her to miss Christmas and her family's annual Greek New Year's Eve party because she was hospitalized.

21.     Dedra's family owns Victory Motors of Craig, Inc.—a Chrysler Dodge Jeep Ram dealership in Craig, Colorado ("Victory Motors"). The day after the rollaway, Dedra's Jeep Grand Cherokee was brought into the service department at Victory Motors. Per FCA's own protocol, the service manager and mechanic at Victory Motors called FCA's Service Technical Assistance Resource ("STAR") team and advised of the rollaway. The STAR team informed the service manager and mechanic that they had not heard of this issue.

22.     However, at that time, FCA knew of the problems.  According to the National Highway Transportation Safety Administration Office of Defects Investigation ("NHTSA-ODI"), "FCA received negative consumer feedback for the Monostable shifters shortly after the [Defective Shifter] Vehicles entered the market" in the 2012 model year.[2]

23.     Moreover, consumers began filing complaints about rollaways involving the Defective Shifter Vehicles on NHTSA's website well before December 21, 2013.  Federal law requires FCA to monitor defects which can cause

---

[2] *See* Exhibit A (announcing findings of the NHTSA-ODI's Engineering Analysis 16-002).

safety issues and report them within five days. FCA regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defective Defective Shifter.

24.     The STAR team gave the service manager and mechanic specific protocols and procedures to test the various systems in Dedra's Jeep Grand Cherokee. None of the protocols and procedures identified an issue or defect and everything checked out to STAR's satisfaction. STAR informed the service manager and mechanic that the rollaway was the result of driver error, and did not mention anything about their knowledge of rollaways or the consumer complaints.

25.     In or around May/June 2014, Tony Maneotis, Dedra's son and co-owner of Victory Motors, attended an annual fleet meeting where FCA dealers met with FCA's sales representatives, fleet representatives, and service representatives to learn about the new vehicles in the upcoming model year. Tony told FCA's employees about his mother's rollaway and asked if they knew about any issues with Dedra's Jeep Grand Cherokee. No FCA employee purported to know about a defect, and no mention was made of the known rollaways or consumer complaints about the shifter issue. Rather, FCA's employees asked if Tony had tested Dedra's Jeep Grand Cherokee with STAR.

26.     In or around May/June 2015, Tony Maneotis again attended the fleet meeting. There, Tony learned that the model year 2016 Jeep Grand Cherokees

would come equipped with a different shifter than the Defective Shifter. Again, Tony raised the issue of his mother's rollaway directly with FCA's employees. Again, FCA's employees said that they were not aware of a safety issue or defect but that the shifter change was being made to improve safety.

27.     A year later, in the 2016 fleet meeting, FCA finally informed dealers that there was a safety issue and defect.  They also advised that a recall was going to be rolled out to correct the defect in the Defective Shifter Vehicles. Only then did Tony Maneotis learn that Dedra's Jeep Grand Cherokee contained a defect that could prevent cars from fully engaging into "park" despite a driver's attempt to place the vehicle into "park," and affected vehicles could roll away without warning.

28.     Today Dedra is numb from the knee to the toes, and her legs get tight quickly. She cannot walk more than 50 yards without problems. She has endured several surgeries to try and repair her injuries but her condition, both physically and cognitively, continues to decline.

29.     From the time of the crash until now, she has relied on pain medication for near-constant pain—she cannot even sit down without pain.

30.     Because of her injuries, Dedra Maneotis cannot participate fully in her family life. She cannot travel, maintain her home, or play with her grandchildren or

-10-

great-grandchild as she once did. Together with her pain, this has severely

diminished her quality of life.

**B.    FCA and the ZF Electronic Gear Shifter**

31.    Dedra Maneotis's vehicle—a 2014 Jeep Grand Cherokee—was

equipped with the Defective Shifter, which is an 8-speed transmission with an

electronic gear selector manufactured by ZF.

32.    On its website announcing a "voluntary recall" of these vehicles, FCA

describes the Defective Shifter as follows:

> The vehicles affected by this recall are equipped with
> electronic shift levers that return to the same position
> after each manipulation. Gear selection is conveyed to
> the driver by multiple sets of indicator lights, not gear-
> selector position, and unless due care is taken, drivers
> may draw erroneous conclusions about the status of their
> vehicles.[3]

33.    The Defective Shifter does not have positions for each gear setting,

i.e., Park, Reverse, Neutral, Drive ("PRND").  Rather, it always rests in the same

position after having been pushed up or down from that position.  The following is

a picture of the Defective Shifter in a Jeep Grand Cherokee:

---

[3] *See* http://media.fcanorthamerica.com/newsrelease.do?id=17455&amp;mid=1
(last viewed on January 19, 2020).

010621-11 885073 V1



34.    Among other things, the lack of a physical gear level for PRND and the Defective Shifter's return to its predetermined location has led to hundreds of reports of Defective Shifter Vehicles rolling away when drivers thought their vehicles were in Park.

35.    The Defective Shifter's sole reliance on visual feedback to convey gear selection has been dangerously ineffective. Indeed, consumer complaints beginning at least as early as 2013, reproduced verbatim below, document Defective Shifter Vehicles' owners' and lessees' inability to determine whether their vehicle is in the desired gear resulting in hundreds of rollaways, accidents, and injuries. Further, numerous complaints to NHTSA allege that once a driver

puts a Defective Shifter Vehicle in Park, the vehicle can move into another gear on its own.

36.     Importantly, the Defective Shifter does not include a safety override that prevents the driver from getting out of the car when it is not in "park."  Other manufacturers, including BMW, use monostable electronic gear shifters like the Defective Shifter, but *the BMW gear shifter has a safety override*. If the BMW is not in "park" and the driver's door is opened while the seatbelt is unbuckled, the car *automatically shifts into "park."* This safety override eliminates the possibility of the rollaway incidents that plague the Defective Shifter Vehicles.

37.     Likewise, the Audi A8 luxury sedan uses the same Defective Shifter that FCA used on the Defective Shifter Vehicles.  But Audi did not sell a single A8 equipped with the Defective Shifter until it had developed a safety override that automatically engaged the electronic parking brake on the car if the driver's door is opened while the seatbelt is unbuckled.

38.     When FCA first sold a Defective Shifter Vehicle, it had the ability and technological capability to install a safety override that would have prevented the rollaway incidents that have plagued the Defective Shifter Vehicles and caused hundreds of accidents, dozens of injuries, and at least one death.  It simply chose not to do so.

-13-

39.     FCA has already recognized that the Defective Shifter has a problem. As noted on its website, "To address customer satisfaction issues, the Company began equipping the Charger and 300 with a new shift-lever design in model-year 2015. The Grand Cherokee's shift-lever was updated in model year 2016."[4]

40.     In FCA's own recall chronology it states that as of April 12, 2016, "FCA has identified approximately 700 field reports potentially related to this issue which includes 212 crashes, 308 claims of property damage and 41 injuries."

**1.     FCA knew that the shifter was defective and unreasonably dangerous.**

41.     Upon reasonable inspection and testing of the Grand Cherokee and each of its components, FCA knew or should have known the Grand Cherokee was defective and unreasonably susceptible to failure.

42.     FCA knew or should have known of the defective design and manufacture of the Grand Cherokee and failed to take reasonable corrective steps in curing the defects.

43.     FCA had sufficient knowledge, expertise, availability, and resources to inspect the Grand Cherokee for defects before its sale.

44.     FCA failed to properly inspect and confirm the safety of the Grand Cherokee before its entry into the stream of commerce and sale.

---

[4] See id.

45.     FCA failed to complete a reasonable inspection of the Grand

Cherokee, which inspection would have revealed the unreasonably high potential

for the failure of the Grand Cherokee.

46.     The Grand Cherokee was manufactured without adequate quality

control measures and using inappropriate manufacturing procedures.

47.     On information and belief, FCA's knowledge as described in this

Complaint is reflected in its internal communications, including memoranda and e-

mail.

48.     FCA's knowledge as described in this Complaint is reflected in

internal communications, including memoranda and e-mail; in reports of other

incidents—including those compiled in the NHTSA database, which FCA

regularly reviews—involving FCA's vehicles; in FCA's compilations and analyses

of crash data; and in the results of tests conducted by Defendant and others,

including but not limited to failure mode and effects analyses (FMEA), human

factors simulations, pre-release vehicle evaluation tests, computer simulations, and

cost/benefit analyses.

**2.     NHTSA has determined the Defective Shifter is poorly designed.**

49.     NHTSA-ODI opened Preliminary Evaluation PE15-030 on August 20, 2015, to investigate 14 reports of rollaway 2014-15 Jeep Grand Cherokee vehicles.[5]

50.     NHTSA testing during PE15-030 indicated that the operation of the monostable shifter is not intuitive and provides poor tactile and visual feedback to the driver, increasing the potential for unintended gear selection.

51.     ODI's analysis of the PE15-030 complaint and field report data identified 306 incidents of vehicle rollaway following intended shifts to Park in the 2014-2015 Grand Cherokee. These resulted in 117 alleged crashes. Twenty-eight of the crashes reportedly caused injuries, including three with a fractured pelvis and four others requiring some degree of hospitalization (a ruptured bladder, fractured kneecap, broken ribs, and damaged right leg). Other injuries include reports of a broken nose, facial lacerations requiring stitches, sprained knees, severe bruising, and trauma to legs.

52.     Model year 2012-2014 Chrysler 300 and Dodge Charger vehicles (L-cars) equipped with 3.6L engines use the same defective Defective Shifter found in the Jeep Grand Cherokee. ODI received 8 complaints, including 4 crashes and 2 injuries on the subject L-cars.

---

[5] *See* Exhibit B (ODI Closing Resume for Investigation PE15-030).

53.     In early February 2016, amid continuing reports of rollaway vehicles, NHTSA upgraded its investigation to an engineering analysis, after determining the issue is one of design rather than defect.[6]

54.     NHTSA described the defect as follows:

> The MY 2014-2015 Grand Cherokee vehicles are equipped with Monostable electronic ("E-shift") gearshift assemblies supplied by ZF Group (ZF). The E-shift system operates electronically and the gear requested by the driver is transmitted from the shifter via the CAN Bus to the Transmission Control Module which makes the requested shift. The Monostable gearshift does not move into a detent but springs back to a centered/neutral position after the driver selects a gear and releases the shifter. A button on the shift knob must be depressed to shift out of Park, shift out of Neutral, and to shift from Drive to Reverse or Park.

> The gear selected is shown on a display in the dash and illuminated letters on the shifter. If the driver's door is opened when the gearshift is not in Park, a chime sounds and a message is displayed on the EVIC to warn the driver. In addition, the engine Start/Stop push-button control logic does not permit normal engine shut-off when the transmission is not in Park. This logic may provide feedback to drivers who attempt to turn the engine off when the transmission is not in Park. ***However, this function does not protect drivers who intentionally leave the engine running or drivers who do not recognize that the engine continues to run after an attempted shut-off.***[7]

---

[6] *See id.*

[7] http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.requestId=48801&referenceSearch.urlCode=RGRCHIUC3ZXFGZZ (last visited February 4, 2019).

55.    NHTSA's testing during PE15-030 indicated that the operation of the monostable shifter "is not intuitive and provides poor tactile and visual feedback to the driver, increasing the potential for unintended gear selection."

56.    ODI's analysis of the PE15-030 complaint and field report data "identified 306 incidents of vehicle rollaway following intended shifts to Park in the 2014-2015 Grand Cherokee."[8] These resulted in 117 alleged crashes and caused the following injuries:

> Twenty-eight of the crashes reportedly caused injuries, including 3 with a fractured pelvis and 4 others requiring some degree of hospitalization ([including, but not limited to:] a ruptured bladder, fractured kneecap, broken ribs, damage[] to right leg). Other injuries include reports of a broken nose, facial lacerations requiring stitches, sprained knees, severe bruising, and trauma to legs.[9]

57.    MY 2012-2014 Chrysler 300 and Dodge Charger vehicles (L-cars) equipped with 3.6L engines use the same Defective Shifter found in the Jeep Grand Cherokee.  ODI received 8 complaints, including 4 crashes and 2 injuries on the L-cars.

58.    On April 22, 2016, FCA submitted a Defect Information Report, informing NHTSA that "[t]he existing strategies built into these vehicles to deter

---

[8] *See* Exhibit A at p. 2.

[9] *Id.*

drivers from exiting the vehicle after failing to put the transmission into PARK

have not stopped some from doing so."   FCA admitted that "[d]rivers erroneously

concluding that their vehicle's transmission is in the PARK position may be struck

by the vehicle and injured if they attempt to get out of the vehicle while the engine

is running and the parking brake is not engaged."

59.    NHTSA continued to investigate the Defective Shifter and perform its

Engineering Analysis through June 24, 2016.  As a result of this analysis, NHTSA

found the Defective Shifter "appears to violate several basic design guidelines for

vehicle controls, such as: 1) be consistent; 2) controls and displays should function

the way people expect them to function; 3) minimize what the user has to

remember; and 4) operations that occur most often or have the greatest impact on

driving safety should be the easiest to perform."

60.    NHTSA concluded that the "[a]udible chimes" and "visual

warning[s]" provided to alert drivers that the vehicle is not in Park when the engine

is running and the driver's door is opened are ineffective.[10]  NHTSA stated:

> Based on ODI's interviews with complainants, in some
> incidents the driver believed they had left the vehicle
> idling in Park when they exited, but the vehicle was not in
> Park.   In other incidents the drivers believed they had
> turned the engine Off after shifting to Park, but failed to
> recognize that the engine did not shutoff and the vehicle
> was not in Park.  The engine noise at idle is not obvious to

---

[10] *Id.*

many drivers who may not recognize that the engine
continues to run after attempted shutoff.[11]

61.     Lastly, NHTSA identified one fatal crash potentially

related to one of the Defective Shifter Vehicles, a 2015 Jeep Grand

Cherokee, stating:

> In addition to the crashes and injuries documented in this
> closing resume, ODI is aware of a fatal incident involving
> a recalled 2015 Jeep Grand Cherokee that occurred over
> the weekend of June 18-19, 2016 in Studio City, California
> that may be related to the alleged defect.  The incident is
> being investigated by the Los Angeles Police Department
> and FCA.[12]

### 3.     Reports to NHTSA recount incidents of vehicle rollaway.

62.     NHTSA has received hundreds of reports of rollaway incidents

involving the Defective Shifter Vehicles, including the reports copied verbatim

below:

> MY WIFE PULLED THE CAR INTO A COMMUNITY
> PARK AND PUT THE JEEP IN PARK AND OPENED
> THE DOOR TO GRAB HER SONS LOST DOG. NEXT
> THING SHE KNOWS THE JEEP IS ROLLING, AND
> PROCEEDS TO RUN HER OVER AND CONTINUES
> DOWN A SMALL HILL INTO SOME TREES. SHE
> WAS TAKEN TO THE HOSPITAL VIA A 911 CALL
> AND WE ARE NOW WAITING FOR RESULTS
> FROM AN MRI. THIS PROBLEM COULD HAVE

---

[11] *Id.*

[12] *Id.*

KILLED HER IF SHE DIDN'T GET HER HEAD OUT
OF THE WAY.

ON AUGUST 19, 2014, I STEPPED OUT OF MY
STATIONARY 2014 JEEP GRAND CHEROKEE
OVERLAND BELIEVING I HAD PUT THE VEHICLE
IN PARK ON A GENTLE CITYSTREET SLOPE
WHEN IT SUDDENLY MOVED BACKWARD,
ROLLING OVER MY LEFT LEG AND SEVERELY
DAMAGING MY KNEE, SKIN, ARTERY, AND
QUAD MUSCLES. MY WIFE IMMEDIATELY
CALLED AN AMBULANCE, WHICH
TRANSPORTED ME TO A LOCAL HOSPITAL,
WHERE DOCTORS SURGICALLY ATTACHED AN
"EXTERNAL FIXATOR" IN THREE PLACES,
STABILIZING AND COMPLETELY IMMOBILIZING
MY LEG (FOR THE NEXT FIVE WEEKS). AFTER A
SECOND SURGERY AND OVER A YEAR OF
PAINFUL AND ARDUOUS THERAPY LATER, I
CAN NOW WALK WITH A KNEEBRACE,
HALTINGLY AND WITH A NOTICEABLE LIMP. . .
ALL DUE TO THE JEEP GRAND CHEROKEE'S
TRANSMISSION THAT DOES NOT ACCURATELY
INDICATE WHAT GEAR IT IS IN! UNLESS ONE IS
CONCENTRATING 100+% OF THE TIME ON THE
CONSOLE SHIFTER AND CONSTANTLY
GLANCING AT THE INDICATOR LIGHTS ON THE
VEHICLE DASHBOARD THE DRIVER NEVER
KNOWS WHAT POSITION THE JEEP'S
TRANSMISSION IS IN! THE SHIFTER ON THE
CONSOLE ALWAYS LOOKS EXACTLY THE SAME,
NO MATTER WHAT GEAR HAS SUPPOSEDLY
BEEN SELECTED. WE HAD NO ABSOLUTELY
FOREWARNING OF THE POTENTIAL LIFE
THREATENING PROBLEM INHERENT IN THIS
VEHICLE'S DESIGN, AND I CAN ONLY THANK
GOD THAT I'M STILL ALIVE TODAY. LAST WEEK
WE WERE SURPRISED TO RECEIVE WRITTEN
NOTIFICATION FROM FIAT CHRYSLER
AUTOMOBILES THAT THE COMPANY AND

NHTSA HAD RECALLED 2014 JEEP GRAND
CHEROKEES FOR THE SPECIFIC DEFECT
DESCRIBED IN MY INCIDENT ABOVE! (FINALLY!
VINDICATION!) THE RECALL NUMBER IS SHOW
BELOW, I BELIEVE. FCA VEHICLE RECALL
NUMBER: S27 / NHTSA 16V240

ON FEBRUARY 25TH, I SHIFTED MY CAR INTO
PARK AND WAS GETTING OUT TO LOOK AT
BACK WIPER WHICH SEEMED TO BE STUCK. I
HAD LEFT THE CAR RUNNING. THE CAR TOOK
OFF IN GEAR AND CAUSED ME TO FALL AND
BREAK MY ANKLE IN AN OPEN COMPOUND
FRACTURE THAT REQUIRED HOSPITALIZATION
AND SURGERY. MY JEEP ENDED UP HITTING A
PARKED GARBAGE TRUCK AND SUSTAINED
ABOUT $5000 DAMAGE. WHO KNOWS WHAT MY
MEDICAL BILLS WILL END UP BEING. PLUS MY
ANKLE MAY NEVER BE RIGHT. I WILL INCLUDE
A PHOTO OF MY CAR AND XRAY. IT HAPPENED
ON PRIVATE PROPERTY (TACO BELL PARKING
LOT). A POLICE OFFICER CAME AND PARKED
MY CAR AND CALLED AN AMBULANCE BUT DID
NOT MAKE A REPORT SINCE ON PRIVATE
PROPERTY. WE HAVE NOT HEARD FROM
GARBAGE TRUCK AND DOUBT IT DID
ANYTHING TO IT. THE CAR WAS IN PARK AND
NOT SURE HOW FAST WAS GOING WHEN HIT
THE GARBAGE TRUCK

**4.    FCA and ZF maintain that there is nothing wrong with the Defective Shifter Vehicles.**

63.    While FCA has acknowledged it knows of 41 injuries that may be related to what it describes as a "confusing" shifter, it has stated: "the vehicles

involved in these events were inspected and no evidence of equipment failure was found."[13]

64.    ZF issued a press release stating:

> ZF supplies gearshift systems to automotive manufacturers according to their technical and design specifications. The manufacturer designs the integration of the gearshift system into the vehicle operating concept and develops the respective safeguard mechanisms. ZF delivered a fully functional state-of-the-art product, which was integrated into the vehicle architecture by the manufacturer. As such, ZF is unaware of any indications that claims could be made against ZF in the context of the current NHTSA investigations of the FCA vehicle models "2014-15 Grand Cherokee; 2012-14 Charger & 300 w/3.6 l engine".[14]

65.    The Defective Shifter Vehicles have been under investigation by NHTSA since August 20, 2015, yet FCA concealed detailed information on the defect by marking as confidential all but two pages from its owner's manual in the presentation it provided to NHTSA in response to its investigation.  FCA has purposefully kept consumers and its customers in the dark about the Defective Shifter defect.  This shroud of secrecy has unquestionably increased the risk of accidents, injury, and death to consumers because it has delayed consumer

---

[13] *See* David Tracy, *Fiat Chrysler Recalls 1.1 Million Cars Because People Can't Figure Out the Shifters*, JALOPNIK (Apr. 22, 2016), available at http://jalopnik.com/fiat-chrysler-is-recalling-1-1-million-cars-because-peo-1772561060 (last accessed on January 19, 2020).

[14] *See id.*

awareness to take extreme care to ensure that the "park" position is engaged before getting out of a Defective Shifter Vehicle.

**5.    FCA's delayed and inadequate response to the defectively designed ZF Shifter has led to hundreds of accidents, many involving serious injury.**

66.    FCA's foot-dragging on notifying its customers of the risks posed by the Defective Shifter and taking steps to correct it is, unfortunately, business as usual for FCA.  As reported in the New York Times on June 21, 2016, Center for Auto Safety Executive Director Clarence Ditlow said, "There was no sense of urgency on Chrysler's part or NHTSA's part given the potential for death or injury." The Times points out that NHTSA "had publicly chastised the company, which acknowledged delaying recalls in almost two dozen cases going back to 2013 and affecting millions of vehicles." NHTSA head Mark Rosekind had said at the time, "[t]his represents a significant failure to meet a manufacturer's safety responsibilities."

67.    Chrysler promised to speed up its recalls and agreed to pay close to $105 million in penalties, but this case evidences the fact that little has changed. FCA and its corporate culture is still putting profits ahead of safety, and FCA customers are being maimed, even killed, as a result.

**6.     FCA finally provides a purported remedy for certain Defective Shifter Vehicles: one that is ineffective and diminishes the functionality of the Defective Shifter Vehicles.**

68.     After its prolonged and unreasonable delay, FCA responded to the defective shifter maelstrom by providing a purported remedy that: (1) is ineffective and/or causes rollaways of Defective Shifter Vehicles; (2) leads to other mechanical failures in the Defective Shifter Vehicles; and/or (3) diminishes the functionality of the Defective Shifter Vehicles.

69.     Moreover, numerous Defective Shifter Vehicle owners have reported that they never received a recall notice from FCA, and have yet to be contacted by the Company or offered the purported remedy for the defective Defective Shifter in their Defective Shifter Vehicles.

70.     Moreover, many of those who have had their Defective Shifter Vehicle repaired by FCA report that the repair was ineffective such that the vehicles continue to experience rollaway incidents (or experienced a rollaway for the first time after the repair) or incidents where their vehicle is not in the intended gear.

71.     On information and belief, dealerships have reported that the first recall remedy was ineffective, many of the Defective Shifter Vehicles have had to be fixed more than once, and they are unsure whether the second recall remedy will, in fact, effectively fix the Defective Shifter.

-25-

72.     FCA already has admitted that at least 13,000 Defective Shifter

Vehicles in the United States have not been properly fixed even though they were

recalled and repaired by the Company.   According to a November 16, 2016

Associated Press article: "The new software was supposed to make the cars and

SUVs automatically shift into park when the driver's door is opened while the

engine is running.  But Fiat Chrysler says the change didn't properly fix 13,000

vehicles in the U.S. and 16,000 in other countries."

73.     FCA spokesman Eric Mayne stated: "The software didn't work in a

small number of vehicles with certain engine, transmission and two- or four-wheel-

drive combinations. . . . In most cases we initiated the installation of that software

without the customer having to show up with the recall notice in hand. It just

wasn't the right software for their particular vehicles."   Thus, certain consumers

have experienced dangerous rollaway incidents after their Defective Shifter

Vehicles were repaired.

74.     FCA sent certain Defective Shifter Vehicle owners a second recall

notice, informing them of the need to take their Defective Shifter Vehicle to the

dealership for additional repairs.  The second recall notice states:

> Our records indicate that the recall repairs were attempted
> on your vehicle at a FCA US dealer.  Further investigation
> by FCA US has determined, however, that **your vehicle
> <u>did not</u> receive the complete and proper recall repair.
> Your vehicle's software requires additional updating**. .
> . . **Until the complete recall repair is performed on your**

-26-

**vehicle, your vehicle may roll away striking and injuring you, your passengers, or bystanders, if the vehicle's engine is left running, the parking brake is not engaged and the vehicle is not in the "PARK" position before exiting the vehicle**."[15]

75. Consumers also report that FCA's purported remedy led to other mechanical failures in their Defective Shifter Vehicles. These mechanical failures occurred shortly after the software update was performed on the Defective Shifter Vehicles.

76. Below is a sample of complaints lodged with NHTSA as a result of FCA's purported remedy:

**2014 Jeep Grand Cherokee**
**Date Complaint Filed:** 08/14/2016
**Date of Incident:** 08/11/2016
**Component(s):** POWER TRAIN, UNKNOWN OR OTHER
**NHTSA ID Number:** 10895811
MY JEEP WAS SERVICED TWICE FOR THE RECENT SHIFTER PROBLEM THAT CHRYSLER IDENTIFIES AS DRIVER INATTENTION OR CONFUSION. THE SOFTWARE PATCH THAT IS INTENDED TO "AUTO PARK" THE VEHICLE, HAS FAILED ON TWO OCCASIONS. THE ENGINE IS STARTED, I APPLY THE BRAKE AND PLACE THE SHIFTER INTO REVERSE OR A FORWARD GEAR. I THE DESIRED GEAR IS ILLUMINATED AND I EASE OF THE BRAKE, HOWEVER, WHEN APPLY GAS THE ENGINE SIMPLY RACES AS IF THE TRANSMISSION IS STILL IN PARK OR NEUTRAL. JEEPS ATTEMPT TO FIX A PROBLEM HAS NOW LED TO ANOTHER PROBLEM. THIS VEHICLE IS UNRELIABLE AND A DEATH MACHINE. I HAVE NO CONFIDENCE IN IT'S OPERATION AND I CAN'T IN GOOD CONSCIENCE SELL THIS VEHICLE TO ANYONE. JEEP CORPORATE SHOULD BE IN JAIL.

---

[15] *See* Exhibit D at p. 1 ("Notice of Need For Additional Repairs") (emphasis in original).

**2014 Chrysler 300**
**Date Complaint Filed:** 08/15/2016
**Date of Incident:** 08/01/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10895959
TL* THE CONTACT OWNS A 2014 CHRYSLER 300. THE CONTACT STATED THAT THE VEHICLE WAS PREVIOUSLY REPAIRED PER NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN); HOWEVER, THE VEHICLE WAS STILL EXPERIENCING THE SAME FAILURE. THE CONTACT STATED THAT THE VEHICLE SLIPPED OUT OF PARK SEVERAL TIMES AFTER BEING REPAIRED. THE CONTACT NOTIFIED THE DEALER, BUT HAD NOT RECEIVED AN ALTERNATIVE REPAIR SOLUTION. THE FAILURE MILEAGE WAS 10,000. UPDATED 10/04/16*LJ

**2014 Jeep Grand Cherokee**
**Date Complaint Filed:** 08/24/2016
**Date of Incident:** 08/16/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10898220
I DRIVE THE 2014 GR CHEROKEE WITH THE ELECTRONIC GEAR SHIFTER THAT HAS BEEN RECALLED FOR THE SHIFTER NOT ENGAGING ALL OF THE WAY INTO PARK. I HAD THE RECALL 'FIX' DONE A COUPLE OF MONTHS AGO, BUT THEN FOUND OUT FROM THE DEALER THAT THE EMERGENCY BRAKE ONLY ENGAGES IF YOU ATTEMPT TO OPEN ONE OF THE DOORS. ABOUT A WEEK AGO, AFTER PARALLEL PARKING ON A BUSY CITY STREET, I PUT THE CAR IN PARK AND REMAINED IN THE CAR FOR ABOUT ANOTHER MINUTE WHILE FISHING QUARTERS OUT OF MY CUPHOLDER (FOR THE PARKING METER). I ALL OF A SUDDEN FELT LIKE SOMETHING HIT MY CAR, LOOKED UP ONLY TO FIND MY CAR HAD ROLLED BACKWARD INTO THE PARKED CAR BEHIND ME. I HAVE A HUGE BIKE RACK ON THE BACK OF MY JEEP THAT BLOCKS THE REVERSE CAMERA, SO THE AUDIBLE SECURITY ALERT IS ALWAYS ON WHEN THE CAR IS IN REVERSE - THIS ALERT DID NOT COME ON WHILE THE CAR WAS ROLLING BACKWARD, THEREFORE, THE CAR WAS NOT IN REVERSE, BUT RATHER NOT IN PARK ALL OF THE WAY. THANKFULLY THERE WERE NO PEDESTRIANS BEHIND MY CAR, NOR ANY DAMAGE TO EITHER VEHICLE, HOWEVER, IF A PERSON WOULD HAVE HAD THEIR BACK TO ME, I WOULD HAVE CRUSHED THEM BETWEEN THE TWO CARS. MY CAR HAS NOW BEEN AT THE DEALERSHIP FOR 6 DAYS

(SECOND TIME FOR SAME ISSUE) AND I'M DEALING WITH CUSTOMER SERVICE DEPARTMENTS WITHIN CHRYSLER/JEEP TO RECTIFY THIS ISSUE SOMEHOW. I WANT EITHER A NEW GEAR SHIFTER THAT IS NOT ELECTRONIC, OR TO GET OUT OF THIS VEHICLE. THIS GEAR SHIFTER IS AN ENORMOUS SAFETY HAZARD. I FEEL LIKE I'M GETTING THE RUN-AROUND, TO SAY THE LEAST, ABOUT A MAJOR RECALL THAT IS THE AUTO MAKERS FAULT, NOT THE CONSUMER. FOR THE RECORD, I HAVE BEEN DRIVING APPROXIMATELY 30 YEARS AND TYPICALLY AVERAGE 20-30K MILES/YEAR. I AM CONSULTING A LAWYER AT THIS POINT.

**2013 Chrysler 300**
**Date Complaint Filed:** 09/08/2016
**Date of Incident:** 08/25/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10904633
TL* THE CONTACT OWNS A 2013 CHRYSLER 300. THE CONTACT STATED THAT THE VEHICLE FAILED TO SHIFT OUT OF PARK. THE VEHICLE WAS SERVICED PER NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN), BUT THE REMEDY FAILED TO REPAIR THE VEHICLE. THE CONTACT MENTIONED THAT THE FAILURE OCCURRED ON THE SAME DAY SHORTLY AFTER THE RECALL REPAIR. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN.

**2012 Chrysler 300**
**Date Complaint Filed:** 10/04/2016
**Date of Incident:** 10/01/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10913784
TL* THE CONTACT OWNS A 2012 CHRYSLER 300. AFTER ATTEMPTING TO PLACE THE VEHICLE IN PARK AND EXIT, THE CONTACT DISCOVERED THAT THE GEAR SHIFT FAILED TO MOVE INTO THE PARK POSITION AND THE ACCESSORY WARNING INDICATOR ILLUMINATED. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN), BUT THE REMEDY FAILED TO REPAIR THE VEHICLE. THE VEHICLE WAS DIAGNOSED A SECOND TIME AND THE TECHNICIAN STATED THAT THE RECEIVING CODE FOR THE TRANSMISSION WAS NOT UPDATED TO THE COMPUTER. THE VEHICLE WAS NOT REPAIRED DUE TO THE PART BEING ON BACK ORDER. THE CONTACT MENTIONED THAT THE ACCESSORY INDICATOR REMAINED

ILLUMINATED AFTER THE RECALL REPAIR. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 57,000.

**2012 Dodge Charger**
**Date Complaint Filed:** 08/23/2016
**Date of Incident:** 08/16/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10897869
TL* THE CONTACT OWNS A 2012 DODGE CHARGER. THE CONTACT STATED THAT THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS REMEDIED PER NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN). ATER LEAVING THE DEALER, THE CHECK ENGINE AND TRANSMISSION WARNING INDICATORS ILLUMINATED. THE VEHICLE COULD NOT BE DRIVEN OVER 20 MPH. THE VEHICLE WAS TAKEN BACK TO THE DEALER, BUT THE DIAGNOSIS WAS UNKNOWN. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS APPROXIMATELY 30,000.

**2013 Dodge Charger**
**Date Complaint Filed:** 09/20/2016
**Date of Incident:** 08/12/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10908275
TL* THE CONTACT OWNS A 2013 DODGE CHARGER. THE CONTACT RECEIVED A RECALL NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V240000 (POWER TRAIN). THE CONTACT TOOK THE VEHICLE TO THE DEALER. WHEN THE DEALER TRIED TO REPLACE THE PART, THE TRANSMISSION CONTROL MODULE CRASHED AND THE ENGINE STALLED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE CONTACT HAD NOT EXPERIENCED A FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 17,000.

**2012 Dodge Charger**
**Date Complaint Filed:** 10/03/2016
**Date of Incident:** 08/11/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10911109
TL* THE CONTACT OWNS A 2012 DODGE CHARGER. AFTER THE VEHICLE WAS REPAIRED PER NHTSA CAMPAIGN NUMBER: 16V240000

(POWER TRAIN), THE CONTACT BEGAN TO EXPERIENCE A FAILURE. THE CONTACT STATED THAT THE SHIFTER FAILED TO LOCK INTO THE DESIRED POSITION. THE CONTACT HEARD A LOUD CLONKING NOISE COMING FROM THE TRANSMISSION. THE DEALER DIAGNOSED THAT THE REPAIR CAUSED THE TRANSMISSION TO FAIL. THE CONTACT WAS UNSURE OF THE DETAILS OF THE REPAIR. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN.

77.     Moreover, when effective, the remedy diminishes the functionality of the Defective Shifter Vehicles.  When a driver of a Defective Shifter Vehicle opens the driver-side door but the car is not in Park, the software fix abruptly places the vehicle in Park even if the driver is not exiting the vehicle.

## C.     The Crash and Failures

78.     On December 14, 2013, Dedra Maneotis pulled up a hill into her driveway and attempted to put her 2014 Grand Cherokee in Park.

79.     As she opened the door and stepped one foot out, the car started to roll backward.

80.     With her left leg out, she tried to hop along with her left foot while holding on to the door and the steering wheel.

81.     But the car door clipped a half-height decorative wall and bent backward, causing Dedra to lose her grip on the door handle. She struggled to stay upright as the car gained speed down the hill.

82.     Dedra Maneotis grew tired and had to let go of her hold on the vehicle. She fell, and her leg got wrapped up in the front driver-side wheel. The

-31-

Jeep rolled up onto the half-height decorative wall and over Dedra's leg. It then rolled over, and then spun out on, Dedra's leg, causing the injury. While the car moved backward to the street, the leg that remained in the car caused her to flip around in the street, preventing a dangerous head injury.

83.     Immediately after the incident, Dedra Maneotis reported it to the police. Officer Ryan M. Fritz responded and reported that "due to the electronic shifting system in this vehicle . . . [it] was not in 'Park' like she [Dedra] thought it was." Officer Fritz further reported that the vehicle caused extensive damage and injured Dedra in the lower legs.  Dedra was hospitalized for these injuries.

**D.     Damages**

84.     Dedra Maneotis continues to undergo extensive rehabilitation and medical treatment.

85.     As a result of the Grand Cherokee's failure to keep her vehicle in park, Dedra has suffered numerous medical issues, including, but not limited to,

     a.    nerve damage;
     b.    numbness from knees to toes;
     c.    constant pain, including constant pain in her leg;
     d.    tightness in her leg;
     e.    knee damage;
     f.    scarring;
     g.    pain while sitting;
     h.    difficulty walking for more than a few minutes; and
     i.    inability to perform basic household chores.

86.     The acts and omissions of FCA were the direct and proximate cause of Dedra's injuries and damages.

87.     As a result of the defective Defective Shifter installed in Dedra's Grand Cherokee, and its failure to keep the vehicle in park, Dedra will require a lifetime of physical and mental assistance and medical treatment.

88.     As a direct and proximate result of the Grand Cherokee's failure, Dedra suffered—and will continue to suffer—non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress, and impairment of quality of life.

89.     As a direct and proximate result of the Grand Cherokee's failure, Dedra suffered—and will continue to suffer—temporary and permanent impairment, physical impairment, and disfigurement.

## VI.     TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL
### A.     Equitable Tolling

90.     FCA was on notice of the risk posed by the Defective Shifter Vehicles well before Dedra was injured in December 2013.  Shortly after the Defective Shifter Vehicles entered the market in late 2011, FCA began to receive negative consumer feedback regarding the Defective  Shifter.[16] Consumers had posted complaints on the NHTSA website regarding the Defective  Shifter since mid-

---

[16] *See* Ex. A at 2.

2013. However, FCA did not share its knowledge of the Defective Shifter's potential risks with consumers like Dedra Maneotis, leaving her vulnerable to potentially cataclysmic injury and preventing legal action to redress the sale of a Defective Shifter Vehicle. This is the quintessential case for equitable tolling.

91.     Within the period of any applicable statutes of limitations, Dedra could not have discovered through the exercise of reasonable diligence that FCA was concealing knowledge of a rollaway risk, other consumers' complaints about the Defective Shifter not achieving "park," and the Defective Shifter complained of herein. Nor could she have known that FCA was misrepresenting the company's true position with respect to the safety qualities of its vehicles. There was no reason to suspect that the Defective Shifter was indeed defective, especially when such concerns were rejected by ZF's business partner, FCA.

92.     Dedra reasonably relied on FCA's STAR team to resolve and identify the potential risk. But FCA's STAR team failed to inform her of the risk posed by the defect and instead blamed Dedra for the rollaway. Given FCA's superior knowledge of the technical makeup of its own vehicles, consumer complaints and other contacts that alert FCA to risks, and FCA's requirement that dealers contact FCA's STAR team with any technical issues, Dedra reasonably relied upon FCA's knowing and affirmative misrepresentations and/or active concealment of key facts regarding the defect.

93.   Dedra's Jeep Grand Cherokee was tested at Victory Motors by FCA-trained personnel working in concert with FCA's STAR team. Tony Maneotis asked FCA employees on multiple occasions whether FCA had knowledge of a safety issue with Dedra's Jeep Grand Cherokee. Both lines of inquiry failed to yield any information that would cause a reasonable plaintiff to inquire further. Dedra had no realistic ability to discern that the vehicles were defective until—at the earliest—her vehicle was recalled. Therefore, the causes of action alleged herein did not accrue until Dedra discovered that the Defective Shifter was defective in a way that would cause rollaways.

94.   For these reasons, all applicable statutes of limitation have been equitably tolled by operation of the discovery rule with respect to claims as to Dedra's Defective Shifter Vehicle.

**B.    Estoppel**

95.   FCA was under a continuous duty to disclose to Dedra the true character, quality, and nature of the Defective Shifter Vehicles at issue.

96.   FCA knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Defective Shifter Vehicles at issue. Dedra reasonably relied upon FCA's knowing and affirmative misrepresentations and/or active concealment of these facts.

97.     Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

## VII.   VIOLATIONS ALLEGED

### COUNT I

### NEGLIGENCE

98.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

99.     FCA, as a designer, manufacturer, and seller of the Grand Cherokee under COLO. REV. STAT. § 13-21-401, owed Plaintiff a duty to exercise reasonable care to prevent the Grand Cherokee from creating an unreasonable risk of harm to Plaintiff, a person reasonably expected to use the Grand Cherokee by FCA and who did so in a manner which FCA might have reasonably expected.

100.    The Grand Cherokee failed because FCA failed to exercise reasonable care to prevent the Grand Cherokee from creating an unreasonable risk of harm. FCA's failures occurred when it manufactured, designed, engineered, developed, tested, approved, inspected, repaired, labeled, advertised, promoted, marketed, distributed, wholesaled, prepared for distribution, and/or sold the Grand Cherokee.

101.    FCA's negligent acts include but are not limited to:

      a.      negligently designing the Grand Cherokee;

      b.      negligently designing and incorporating, among other components, a defective electronic shifter;

      c.     failing to exercise reasonable care to prevent the Grand Cherokee from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use the Grand Cherokee in a foreseeable manner;

      d.     failing to warn the consumer of the risk of harm or injury where a reasonably careful person would have done so under the circumstances;

      e.     failing to incorporate safer alternative designs and formulations during the design and manufacture of the Grand Cherokee that were practicable and would have eliminated the unsafe nature of the Grand Cherokee without impairing its usefulness;

      f.     failing to adequately inspect and test the Grand Cherokee before sale or distribution; and

      g.     failing to recall and remove the Grand Cherokee from the stream of commerce before it malfunctioned during Plaintiff's use.

102.   Dedra Maneotis was a person who FCA reasonably expected, or should have reasonably expected, to use or be affected by the Grand Cherokee.

103.   FCA knew, or should have known in the exercise of reasonable care, of alternative designs that were technologically and economically feasible, and that would better protect occupants from the negligently designed and manufactured defects described above, but FCA chose not to incorporate these alternative designs.

104.   The risk of rollaway was known or knowable to FCA in light of the recognized and prevailing scientific and technical knowledge available at the time of manufacture.

105.   FCA knew or should have known in the exercise of reasonable care that (1) the use of the Grand Cherokee may be harmful or injurious to the user, and (2) that risk of harm and injury was not obvious to the user.

106.   Defendant's inadequate actions, including its quality-control measures and inappropriate manufacturing practices and procedures, contributed to the failure of the Grand Cherokee on December 14, 2013, when Dedra Maneotis was attempting to park it and it failed catastrophically.

107.   The risk of serious injury or death resulting from a rollaway incident was not obvious to Plaintiff or to the general public.

108.   FCA had a duty to warn Dedra Maneotis and the general public given the high likelihood of accident and the seriousness of consequences, such as death or serious injury.

109.   A reasonably prudent manufacturer would warn drivers that the Defective Shifter is unintuitive, provides insufficient tactile or visual feedback to the driver, causing the driver to be unaware if the Defective Shifter fails to shift the vehicle into park despite the driver's attempt to place the vehicle in park. This

-38-

human factors defect made the vehicle more susceptible to rollaway, which can cause serious injury or death.

110.   FCA was obligated to warn, and should have warned, users of the danger involved in using the vehicle.

111.   FCA failed to provide adequate warnings or instructions that informed an ordinary user of the specific risk of harm—not apparent to an ordinary user—involved in any intended or reasonably expected use.

112.   FCA failed to provide adequate warnings or instructions that informed an ordinary user of the specific risk of harm—not apparent to an ordinary user—involved in any failure to properly follow instructions when using the product for its intended and reasonably expected use.

113.   As a direct and proximate result of Defendant's breach of its duties, Dedra Maneotis sustained injuries, damages, and losses that were caused by FCA's negligence while the Grand Cherokee was being used in a manner FCA should reasonably have expected.

**COUNT II**

**NEGLIGENCE PER SE**

114.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

115.   FCA was negligent *per se*.

-39-

116.   Under 49 U.S.C. § 30101, *et seq.*, the purpose of which was to reduce traffic accidents and death and injuries from traffic accidents, and 49 C.F.R. § 573.6 promulgated thereunder, FCA was required to "furnish a report to the NHTSA for each defect . . . related to motor vehicle safety."

117.   This statute was enacted for public safety and designed to protect Plaintiff and other drivers and passengers of vehicles from defective conditions in their vehicles that may cause death or physical injury.

118.   The Defective Shifter in Plaintiff's vehicle was a defect that related to motor vehicle safety because it resulted in a failure of a vehicle to remain stationary when the occupant intended it to do so.  FCA was therefore required to furnish a defect report to the NHTSA.  FCA failed to furnish the required report for years after knowing about the rollaway safety defect and therefore violated the statute and regulations promulgated thereunder.

119.   Plaintiff suffered serious personal injury as a direct and proximate result of FCA's failure to furnish the required defect reports to the NHTSA.

120.   FCA's statutory violation for failing to file the required defect reports was a proximate cause of Plaintiff's injuries. Had the requisite defect reports been furnished to the NHTSA, Plaintiff's vehicle would have been recalled and the defect corrected or, alternatively, Plaintiff would have been on notice of the

defective condition in her vehicle and could have avoided driving the vehicle while the defective condition persisted.

## COUNT III

## STRICT PRODUCT LIABILITY

121.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

122.   Defendant is a "manufacturer" and seller under COLO. REV. STAT. § 13-21-401, as it designed, assembled, fabricated, produced, constructed, and prepared the Grand Cherokee before it was sold. Defendant is a "seller" under the same statute because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for resale or use, with actual knowledge of the defects in the Grand Cherokee.

123.   Defendant sold the Grand Cherokee to a business affiliated with Dedra Maneotis.

124.   FCA placed the Grand Cherokee in the stream of commerce and expected it to reach the user or consumer without substantial change in the condition in which it was sold. Indeed, it reached Dedra Maneotis—someone who would reasonably be expected to use, consume, or be affected by the Grand Cherokee—without substantial change in the condition in which it was sold.

-41-

125.   The Grand Cherokee was defective, and its defects are outlined throughout this Complaint.  Generally, they comprise the design and provision of a dangerous, defective shifter and, despite knowledge of the defects, the failure to warn consumers about the shifter's defects.

126.   In situations such as Dedra's—where the driver used the vehicle as intended and in a foreseeable and reasonable manner—the vehicle should not fail.

127.   Nevertheless, the Grand Cherokee failed, and it did so because of design defects in the Grand Cherokee existing when it left the manufacturer's control.

128.   Defendant knew or should have known of the defective design of the Grand Cherokee and that, as a result, it was unreasonably dangerous.

129.   While history has shown the Defective Shifter causes serious injury and death to operators, it adds no additional utility beyond that offered by traditional automatic shifters, which were readily available, inexpensive, and devoid of the unsafe aspect of the Defective Shifter.  Had a traditional shifter been used, the risk of injury or death from an inadvertent vehicle rollaway would have been eliminated or rendered insignificant.

130.   But, beyond this, FCA could still have kept its drivers safe from the Defective Shifter by incorporating a safety override (as it did for other cars) that automatically engaged the electronic parking brake when the driver's door was

-42-

opened and the seatbelt was unbuckled.  This override would cure the unsafe aspect of the Defective Shifter without impairing any purported usefulness or imposing unreasonable costs.   This sensible, cost-effective feature would have prevented Dedra's and many others' injuries and harm.

131.   The Jeep Grand Cherokee and Defective Shifter performed exactly as intended by FCA, and yet the vehicle was unreasonably dangerous. The danger inherent in the Defective Shifter was not obvious to Dedra Maneotis or the general public, even through repeated use of the Defective Shifter. Nor could Dedra Maneotis  have avoided danger with additional care in the use of the Defective Shifter.

132.   FCA did not warn drivers that the Defective Shifter is unintuitive and provides insufficient tactile or visual feedback to the driver, causing the driver to not know what gear he or she is in. Consequently, the driver may be unaware if the shifter fails to shift the vehicle into park despite the driver's attempt to place the vehicle in park. This human factors defect made the vehicle more susceptible to rollaway, which can cause serious injury or death.

133.   The defects in design and inspection made the Grand Cherokee unreasonably dangerous, unfit, and unsafe for its intended use and caused the Grand Cherokee to fail to perform as an ordinary user would expect when used in its intended and foreseeable manner.

134.   Defendant did not warn or alert purchasers or users of the foregoing dangers, despite knowledge of them.

135.   As a direct and proximate result of the defects in the Grand Cherokee's design and FCA's failures to warn, Dedra Maneotis has sustained injuries, damages, and loss.

136.   Defendant is strictly liable to Dedra Maneotis for the injuries and damages caused by the above defects and inadequacies in the design and manufacture of the Grand Cherokee.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Dedra Maneotis prays for judgment against Defendant FCA in an amount to be determined by the trier of fact for her losses, damages, and harms, economic and noneconomic, for punitive and statutory damages, and for all costs, attorneys fees, expert witness fees, filing fees, pre-judgment and post-judgment interest, and such other further relief as the Court may deem appropriate, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

DATED:  January 22, 2020          HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Robert B. Carey*
Robert B. Carey
11 West Jefferson StreetSuite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com

Steve W. Berman
Thomas E. Loeser
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Christopher R. Pitoun
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC
MONOSTABLE ELECTRONIC
GEARSHIFT LITIGATION

    MDL No. 2744

This Document Relates to:
PERSONAL INURY TRACK
CASES

Master File No.16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

DEDRA MANEOTIS,

                Plaintiff,

        v.

FCA US LLC, a Delaware
Corporation,

                Defendant.

Civil Action No. 17-cv-10351

**INDEX OF EXHIBITS**

Exhibit A – ODI Resume 1
Exhibit B – ODI Resume 2
Exhibit C – Press Release
Exhibit D – Fiat Chrysler Recalls 1.1 Million Cars

# EXHIBIT A



**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

# ODI RESUME

| | |
|---|---|
| **Investigation:** | EA 16-002 |
| **Prompted by:** | |

| | | | |
|---|---|---|---|
| **Date Opened:** | 02/03/2016 | **Date Closed:** | 06/24/2016 |
| **Investigator:** | Stephen Mchenry | **Reviewer:** | Jeff Quandt |
| **Approver:** | Stephen Ridella | | |
| **Subject:** | Vehicle rollaway, engine on | | |

## MANUFACTURER & PRODUCT INFORMATION

| | |
|---|---|
| **Manufacturer:** | Chrysler (FCA US LLC) |
| **Products:** | 2014-15 Grand Cherokee; 2012-14 Charger & 300 w/3.6L engine |
| **Population:** | 811,586 |

| | |
|---|---|
| **Problem Description:** | Drivers may exit the vehicle when the engine is running and the transmission is not in Park, resulting in unattended vehicle rollaway.  Rollaway incidents may result in serious injuries to the driver or passengers as they exit the vehicle or to other pedestrians in the path of the rolling vehicle. |

## FAILURE REPORT SUMMARY

| | ODI | Manufacturer | Total |
|---|---|---|---|
| **Complaints:** | 112 | 526 | 686** |
| **Crashes/Fires:** | 101 | 199 | 266** |
| **Injury Incidents:** | 38 | 43 | 68** |
| **Number of Injuries:** | 38 | 43 | 68** |
| **Fatality Incidents:** | 0 | 0 | 0 |

** Total eliminates duplicates received by ODI and manufacturer.

## ACTION / SUMMARY INFORMATION

**Action:**    This Engineering Analysis is closed. Recall 16V-240.

**Summary:**

On April 22, 2016, Fiat Chrysler Automotive US LLC, (FCA) submitted a Defect Information Report (DIR) to NHTSA regarding a defect that could result in unattended vehicle rollaway with the engine running in approximately 811,586 model year (MY) 2012 to 2014 Dodge Charger and Chrysler 300 vehicles and MY 2014 to 2015 Jeep Grand Cherokee vehicles equipped with 8-speed transmissions and a monostable gear selector (NHTSA Recall #16V-240, FCA Recall #S27). According to FCA's DIR, "The existing strategies built into these vehicles to deter drivers from exiting the vehicle after failing to put the transmission into PARK have not stopped some from doing so. Drivers erroneously concluding that their vehicle's transmission is in the PARK position may be struck by the vehicle and injured if they attempt to get out of the vehicle while the engine is running and the parking brake is not engaged."

The vehicles recalled by FCA are equipped with Monostable electronic ("shift-by-wire") gearshift assemblies supplied by ZF Group (see Figure 1).  The subject Monostable shifter has a single neutral position that it snaps back to when the driver releases the shift knob.  Although the Monostable gearshift has the familiar appearance of a conventional console mechanical gearshift assembly, it has an unfamiliar movement that does not provide the tactile or visual feedback that drivers are accustomed to receiving from conventional shifters.  Consequently, the driver must take additional time to verify that the desired gear position was achieved by checking the PRNDL display on the shift knob or the Electronic Vehicle Information Center (EVIC) display.

FCA received negative consumer feedback for the Monostable shifters shortly after the subject vehicles entered the market.  Field data indicate that the design resulted in higher error rates during attempted shifts to Park and higher rates of powered rollaway incidents.  The Monostable design appears to violate several basic design guidelines for vehicle controls,[1] such as:  1) be consistent; 2) controls and displays should function the way people expect them to function; 3) minimize what the user has to remember; and 4) operations that occur most often or have the greatest impact on driving safety should be the easiest to perform.  FCA changed to Polystable electronic gearshift assemblies in MY 2015 Charger/300 cars and MY 2016 Jeep Grand Cherokee vehicles (see Figure 2).  The Polystable gearshift assemblies stay in the position of the selected gear, similar to a standard mechanical shifter, providing drivers with the expected tactile and visual feedback (i.e., works as expected and does not require additional thought or attention).

Driver awareness of vehicle control logic may also be a contributing factor in driver error rates when attempting to shift to Park or shutoff the engine.  For example, as a safety feature to prevent unpowered rollaway incidents, the engines will not shutoff in the subject vehicles when the driver presses the ignition Start/Stop button if the vehicle is not in Park.  This interlock function is intended to remind the driver to shift to Park before shutting the engine Off and exiting the vehicle.[2]  In addition, to protect the transmission from damage, the vehicle may shift to Neutral by default if a shift to Park is attempted when the vehicle speed is greater than 2 km/h (1.2 mph).  Audible chimes and visual warning messages are provided to alert drivers that the vehicle is not in Park when the driver's door is opened.  However, as stated in FCA's DIR, these strategies have not been effective in preventing drivers from exiting vehicles with the engine running and the transmission not in Park.

Based on ODI's interviews with complainants, in some incidents the driver believed they had left the vehicle idling in Park when they exited, but the vehicle was not in Park.  In other incidents the drivers believed they had turned the engine Off after shifting to Park, but failed to recognize that the engine did not shutoff and the vehicle was not in Park.  The engine noise at idle is not obvious to many drivers who may not recognize that the engine continues to run after attempted shutoff.

In addition to the crashes and injuries documented in this closing resume, ODI is aware of a fatal incident involving a recalled 2015 Jeep Grand Cherokee that occurred over the weekend of June 18-19, 2016 in Studio City, California that may be related to the alleged defect.  The incident is being investigated by the Los Angeles Police Department and FCA.

FCA's recall remedy involves the development of revised control logic to provide "Auto Park" shift strategies as countermeasures for the following scenarios that have resulted in incidents of powered rollaway in the subject vehicles:

---

[1] Green, P., Levison, W., Paelke, G., & Serafin, C. (1995). *Preliminary human factors design guidelines for driver information systems,* pgs 9-11. Washington, DC: Federal Highway Administration (FHWA–RD–94–087). https://deepblue.lib.umich.edu/bitstream/handle/2027.42/1098/88512.0001.001.pdf

[2] Since the subject vehicles use electronic keys with push-button engine Start/Stop functionality (sometimes referred to as "keyless ignition"), an Ignition-Park interlock that prevents removal of a mechanical key from an ignition cylinder when the transmission is not in Park is not available as a safety interlock.

**Scenario 1**
Driver believes they put the vehicle in Park and attempts to shutoff the vehicle using the ignition On/Off button, and then exits the vehicle without realizing that the vehicle is not in Park and the engine continues to run.
**FCA countermeasure:** Automatically shift to Park and shut the engine off when the vehicle speed is 1.2 mph or less and the ignition On/Off button is pressed.

**Scenario 2**
Driver believes the vehicle is in Park, intentionally leaves the vehicle running and attempts to exit the vehicle.
**FCA countermeasure:** Automatically shift to Park if the transmission is not in Park, the vehicle speed is 1.2 mph or less, the driver's seat belt is unbuckled, the driver's door is ajar and the brake pedal is not depressed.

**Scenario 3**
Driver attempts to shift into Park when the vehicle is moving, but the vehicle speed is too high to engage Park.  The vehicle may default to Neutral in this situation.  The EVIC displays a message "Vehicle Speed is too high to shift."
**FCA countermeasure:** Automatically shift to Park if vehicle speed drops to 1.2 mph or less within 5 seconds of the attempted shift to Park.

FCA is conducting owner notification mailings for the final software remedy in phases.  Owner notification mailings for Jeep Grand Cherokee vehicles began June 24, 2016.  Owner notification mailings for Dodge Charger and Chrysler 300 vehicles are planned for July 2016.  For more details on owner notification mailings see the document file for recall 16V-240 on safercar.gov.[3]

**Interim Notification**

The "Auto Park" software remedy was not ready when FCA submitted the DIR in April 2016.  On May 14, 2016, FCA mailed interim notification letters to owners with the following description of the defect and safety precautions to observe when parking the vehicle:

> ***Your vehicle may roll away striking and injuring you, your passengers, or bystanders, if the vehicle's engine is left running, the parking brake is not engaged, and the vehicle is not in the "PARK" position before exiting the vehicle.***

> ***Drivers may inadvertently fail to achieve the "PARK" position before exiting the vehicle. The electronic shift lever in your vehicle does not move like a conventional shifter. Your shift lever is spring loaded and returns to the same center position like a joystick, always returning to the center position after the desired gear is selected.***

---

[3] http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues

> **NOTE: ALWAYS DO A VISUAL CHECK that your vehicle is in "PARK" by looking for the "P" in the Electronic Vehicle Information Center (EVIC) or on the shift lever knob. Always fully apply the parking brake before exiting the vehicle. Please refer to the enclosed Electronic Shifter Quick Reference Information card for detailed information.**

FCA's interim notification letters included Quick Reference cards with detailed information about safety parking procedures.  The cards included pictures of the EVIC, Monostable gearshift and parking brake (see Figures 3a-3c).

This investigation is hereby closed based on the FCA recall.



**Figure 1. Monostable gearshift, 2014-15 Jeep Grand Cherokee.**



**Figure 2. Polystable gearshift, 2016 Jeep Grand Cherokee.**



**Figure 3a. Electronic Vehicle Information Center (EVIC), Gear Position Indication.**



**Figure 3b. Monostable Gearshift, Gear Position Indication.**



**Figure 3c. Parking Brake.**

The Vehicle Owner Questionnaires (VOQs: complaints submitted to NHTSA by the public) associated with the closing of this investigation are:

Jeep Grand Cherokee:  10875341, 10875328, 10875290, 10875247, 10875195, 10874862, 10874636, 10874355, 10873978, 10873439, 10872786, 10872522, 10872521, 10872512, 10872370, 10871852, 10871834, 10871557, 10871391, 10870677, 10870595, 10870571, 10870340, 10870334, 10870332, 10870303, 10870288, 10865868, 10865590, 10865480, 10865176, 10864826, 10864408, 10863787, 10862334, 10862221, 10862203, 10862165, 10861720, 10861490, 10861260, 10861139, 10861046, 10861041, 10861007, 10860985, 10859883, 10859858, 10859802, 10854992, 10854989, 10854911, 10853352, 10852774, 10851654, 10851513, 10851479, 10851352, 10851339, 10851265, 10851253, 10851131, 10851063, 10851007, 10851001, 10850962, 10850950, 10850931, 10850904, 10850897, 10850771, 10850712, 10850699, 10850433, 10840344, 10840121, 10840106, 10839940, 10838846, 10838813, 10838645, 10837926, 10837865, 10837388, 10837169, 10836722, 10836633, 10836415, 10826121, 10826089, 10825981, 10825930, 10825867, 10825852, 10825562, 10825520, 10825466, 10825432, 10825396, 10825381, 10825289, 10825285, 10825276, 10825263, 10825262, 10825228, 10825218, 10825209, 10825207, 10825190, 10825183, 10825139, 10825110, 10825105, 10825098, 10825079, 10825078, 10825071, 10825057, 10825051, 10825037, 10825030, 10825020, 10825019, 10825018, 10825007, 10825006, 10824989, 10824972, 10824968, 10824962, 10824960, 10824923, 10824919, 10824876, 10824819, 10824782, 10824042, 10823099, 10822939, 10820488, 10817252, 10810551, 10810051, 10809691, 10809024, 10807839, 10807416, 10794318, 10787947, 10787576, 10785790, 10783597, 10778854, 10775391, 10767488, 10766494, 10763333, 10763284, 10763082, 10762457, 10761498, 10760980, 10760729, 10760702, 10760081, 10759979, 10759669, 10759622, 10759568, 10759548, 10759533, 10759433, 10759419, 10759287, 10759278, 10759198, 10759186, 10759171, 10759157, 10759131, 10759102, 10759082, 10759066, 10759047, 10759046, 10733158, 10730952, 10725429, 10716526, 10715401, 10711893, 10683556, 10679497, 10676998, 10668651, 10662619, 10662308, 10631167, 10605865, 10583366, 10567538, 10555901, and 10537653.

 Chrysler 300: 10864591, 10863977, 10851074, 10837379, 10825219, 10825003, 10824981, 10714355, 10693300, 10672445, 10670681, and 10566108.

Dodge Charger: 10851599, 10825000, 10824970, and 10595813.

#

EXHIBIT B



# ODI  RESUME

OFFICE OF DEFECTS INVESTIGATION
**NHTSA**
Authentic US Government Information
National Highway Traffic Safety Administration
uses a *digital certificate* to ensure
the content has remained unchanged

| | |
|---|---|
| **U.S. Department of Transportation** | |
| **National Highway Traffic Safety Administration** | |

| | | | |
|---|---|---|---|
| **Investigation:** | PE 15-030 | | |
| **Date Opened:** | 08/20/2015 | **Date Closed:** | 02/05/2016 |
| **Investigator:** | Stephen Mchenry | **Reviewer:** | Jeff Quandt |
| **Approver:** | Otto Matheke | | |
| **Subject:** | Powered vehicle rollaway | | |

## MANUFACTURER & PRODUCT INFORMATION

| | |
|---|---|
| **Manufacturer:** | Chrysler (FCA US LLC) |
| **Products:** | MY 2014 & 2015 Jeep Grand Cherokee |
| **Population:** | 535,681 |
| **Problem Description:** | Complainants allege incidents of rollaway after the vehicle has been shifted to Park. |

## FAILURE REPORT SUMMARY

| | ODI | Manufacturer | Total |
|---|---|---|---|
| **Complaints:** | 61 | 267 | 306** |
| **Crashes/Fires:** | 35 | 95 | 117** |
| **Injury Incidents:** | 13 | 22 | 26** |
| **Number of Injuries:** | 13 | 22 | 26** |
| **Fatality Incidents:** | 0 | 0 | 0 |
| **Other*:** | 0 | 325 | 325 |

**\*Description of Other:** Complaints reporting difficulty shifting to Park.

\*\* Total eliminates duplicates received by ODI and manufacturer.

## ACTION / SUMMARY INFORMATION

**Action:**   This Preliminary Evaluation has been upgraded to an Engineering Analysis (EA16-002).

**Summary:**

The Office of Defects Investigation (ODI) opened Preliminary Evaluation PE15-030 on August 20, 2015,to investigate 14 complaints alleging incidents of rollaway after intended shifts to Park in Model Year (MY) 2014 and 2015 Jeep Grand Cherokees vehicles. The MY 2014-2015 Grand Cherokee vehicles are equipped with Monostable electronic ("E-shift") gearshift assemblies supplied by ZF Group (ZF). The E-shift system operates electronically and the gear requested by the driver is transmitted from the shifter via the CAN Bus to the Transmission Control Module which makes the requested shift. The Monostable gearshift does not move into a detent but springs back to a centered/neutral position after the driver selects a gear and releases the shifter. A button on the shift knob must be depressed to shift out of Park, shift out of Neutral, and to shift from Drive to Reverse or Park.

The gear selected is shown on a display in the dash and illuminated letters on the shifter. If the driver's door is opened when the gearshift is not in Park, a chime sounds and a message is displayed on the instrument panel to warn the driver. In addition, the engine Start/Stop push-button control logic does not permit normal engine shut-off when the transmission is not in Park. This logic may provide feedback to drivers who attempt to turn the engine off when the transmission is not in Park. However, this function does not protect drivers who intentionally leave the engine running or drivers who do not recognize that the engine is still running.  NHTSA testing during PE15-030 indicates that operation of the Monostable shifter is not intuitive and provides poor tactile and visual feedback to the driver, increasing the potential for unintended gear selection.

ODI's analysis of the PE15-030 complaint and field report data identified 306 incidents of vehicle rollaway following intended shifts to Park in the 2014-2015 Grand Cherokee. These resulted in 117 alleged crashes. Twenty-eight of the

crashes reportedly caused injuries, including 3 with a fractured pelvis and 4 others requiring some degree of hospitalization (a ruptured bladder, fractured kneecap, broken ribs, damaged to right leg). Other injuries include reports of a broken nose, facial lacerations requiring stitches, sprained knees, severe bruising, and trauma to legs.

An Engineering Analysis (EA16-002) has been opened to assess the scope, frequency, and safety-related consequences of the alleged defect. The Vehicle Owner Questionnaires (VOQs) associated with the closing of this Preliminary Evaluation are:

10823099, 10822939, 10822442, 10820488, 10817252, 10810551, 10810051, 10809691, 10809024, 10807839, 10807416, 10794318, 10787947, 10787576, 10785790, 10783597, 10778854, 10775391, 10767488, 10766494, 10763333, 10763284, 10763082, 10762457, 10761498, 10760980, 10760729, 10760702, 10760081, 10759979, 10759669, 10759622, 10759568, 10759548, 10759533, 10759287, 10759278, 10759198, 10759186, 10759157, 10759131, 10759102, 10759082, 10759066, 10759047, 10759046, 10733158, 10730952, 10716526, 10711893, 10683556, 10679497, 10676998, 10668651, 10662619, 10662308, 10631167, 10605865, 10583366, 10567538, 10555901, and 10537653.

# EXHIBIT C

En Español    Media Contacts    RSS    Blog    Search    Manage Your Account

BRANDS & PRODUCTS    CORPORATE    PHOTOS    VIDEO    AUTO SHOWS & EVENTS    TECHNOLOGY    GLOBAL MARKETS

Share   Download   Print

**Statement: Shift Strategy**

April 22, 2016 , Auburn Hills, Mich. - FCA US LLC is voluntarily recalling an estimated 811,586 m d-size SUVs and full-size cars in the U.S. to reduce the effect of potential driver error by enhancing warnings and transmission shift strategy.

An investigation by FCA US and the National Highway Traff c Safety Administration found some drivers have exited their veh cles without first selecting "PARK." Such behavior may pose a safety risk if a vehicle's engine is still running.

The Company is aware of 41 injuries that are potentially related. **The vehicles involved in these events were inspected and no evidence of equipment failure was found.**

The vehicles affected by this recall are equipped with electronic shift levers that return to the same pos t on after each manipulation. Gear-selection is conveyed to the driver by multiple sets of ind cator lights, not gear-selector pos t on, and unless due care is taken, drivers may draw erroneous conclus ons about the status of their vehicles.

**The vehicles also deliver warning chimes and alert messages if their driver-side doors are opened while their engines are still running and "PARK" is not engaged.** However, investigat on suggested these measures may be insuff cient to deter some drivers from exiting their vehicles w thout selecting "PARK," so FCA US will enhance the warnings and transmission-shift strategy on these veh cles.

The enhancements will combine warnings w th a transmission-shift strategy to automat cally prevent a vehicle from moving, under certain circumstances, even if the driver fails to select "PARK."

Affected by this campaign are certain model-year 2012-2014 Dodge Charger and Chrysler 300 sedans, and model-year 2014-2015 Jeep Grand Cherokee SUVs. Also subject to recall are an estimated 52,144 vehicles in Canada; 16,805 in Mexico; and 248,667 outside the NAFTA region.

Affected customers will be notified when service becomes available. **In the interim, FCA US urges customers to follow the instructions in their owners' manuals. (See PDF link to the right under ATTACHED.**)**

To address customer-satisfact on issues, the Company began equipping the Charger and 300 w th a new shift-lever design in model-year 2015. The Grand Cherokee's shift-lever was updated in model-year 2016.

**Customers with questions may call the FCA US Customer Care Center at 1-800-853-1403.**

**CONTACT INFORMATION**

Please **login** to view contact details.

Eric  Mayne

**ATTACHED**

Shifter instructions (pdf)

© 2017 FCA US LLC. All Rights Reserved.

Chrysler, Dodge, Jeep, Ram, Mopar and SRT are registered trademarks of FCA US LLC.

ALFA ROMEO and FIAT are registered trademarks of FCA Group Marketing S.p.A., used with permission.

Legal Notices and Terms | Privacy Statement

# EXHIBIT D

# Fiat Chrysler Recalls 1.1 Million Cars Because People Can't Figure Out The Shifters (Update)

David Tracy
4/22/16 4:25pm  •

80.9K    321    4



Photo: FCA

In February, we reported that the National Highway Traffic Safety Administration was looking into certain Fiat Chrysler electronic shifters, which seemed to cause cars to roll away after they were parked. Well, now it looks like Fiat Chrysler has decided to recall 1.1 million vehicles to prevent such a vehicular runaway.

Fiat Chrysler announced today in a press release that it is voluntarily recalling 1.1 million cars worldwide equipped with the ZF eight-speed shifter you see below. These vehicles include 2012-2014 Dodge Chargers and Chrysler 300s and 2014-2015 Jeep Grand Cherokee.

Of the 1.1 million vehicles, approximately 811,000 are in the U.S., while 52,000 are in Canada, 17,000 are in Mexico and the remaining 249,000 are outside of North America.





Photo: FCA

Unlike traditional automatic transmission shifters, the ZF shifter in Fiat Chrysler's vehicles (similar to shifters found in other new vehicles like the BMW 320i), returns to the same position after each driver input. There's no physical "park" or "drive" gear lever position, only a light that changes from D to P.

In addition, there's a warning chime if the driver-side door is open and the engine is not in the "park" position. Fiat Chrysler says all this still wasn't sufficient feedback for drivers to know what gear their cars were in, so "some drivers... exited their vehicles without first selecting 'PARK.'"

The result was people watching their vehicles essentially just drive away. The company says it knows of 41 injuries that might be related to this "confusing" shifter, though Fiat Chrysler maintains that nothing was wrong with the cars, saying: "the vehicles involved in these events were inspected and no evidence of equipment failure was found."

FCA's recall will "combine [additional] warnings with a transmission-shift strategy to automatically prevent a vehicle from moving, under certain circumstances, even if the driver fails to select "PARK."

Photo: FCA

It's not clear why newer Chargers, 300s and Grand Cherokees are not included in the recall. Has Fiat Chrysler added additional warnings? I'm not sure. Though I can tell you that I have driven the vehicles affected by this recall, and I found the shifters to be fairly intuitive.

It's also not clear exactly how Fiat Chrysler will alter the transmission shift strategy. Perhaps they'll simply add some code that automatically puts the transmission in park when the driver's door is open, and the vehicle speed is at or very near zero.

Either way, recalling vehicles is a costly process for automakers, though in this case, the bill will likely be footed by ZF.

UPDATE:

ZF has sent a statement on the manner:

> ZF supplies gearshift systems to automotive manufacturers according to their technical and design specifications. The manufacturer designs the integration of the gearshift system into the vehicle operating concept and develops the respective safeguard mechanisms. ZF delivered a fully functional state-of-the-art product, which was integrated into the vehicle architecture by the manufacturer. As such, ZF is unaware of any indications that claims could be made against ZF in the context of the current NHTSA investigations of the FCA vehicle models "2014-15 Grand Cherokee; 2012-14 Charger & 300 w/3.6 l engine".

So it looks like ZF won't be footing any bills.



Click here to view this *kinja-labs.com* embed.

ABOUT THE AUTHOR

David Tracy

Writer, Jalopnik. 1985 Jeep J10, 1948 Willys CJ-2A, 1995 Jeep Cherokee, 1992 Jeep Cherokee.

David Tracy

✉ Email    🐦 Twitter    🔔 Posts