UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION

                                      Case No. 16-cv-02744
                                      Honorable David M. Lawson
                                      Magistrate Judge David R. Grand

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO COMPEL [544, 545]**

This is a multi-district putative class action lawsuit brought by a group of individuals who purchased, leased, or own vehicles manufactured by Defendant FCA US LLC ("FCA") that are equipped with an allegedly defective monostable electronic gearshift. In their operative complaint, Plaintiffs claim that FCA designed and manufactured cars with monostable shifters "that did not provide a reliable method of determining gear placement and did not include any safety-override to prevent rollaway accidents." (ECF No. 88 at PageID.2609-10.) Plaintiffs contend that the alleged defect has led to "hundreds of accidents and vehicle rollaways as a result of drivers not knowing which gear their transmission is in and/or exiting their vehicle without the vehicle in Park." (*Id.* at PageID.2611.) According to Plaintiffs, this has led to numerous injuries. (*Id.* at PageID.2611-12.)

On February 14, 2020, Plaintiffs filed their Third Motion to Compel. (ECF Nos. 544, 545.)[1] FCA filed a response, and Plaintiffs filed a reply. (ECF Nos. 554, 557.) The Honorable

---

[1] ECF No. 545 is a sealed, unredacted version of Plaintiffs' motion. The reason for the sealing is that Plaintiffs' motion included two exhibits, A and C, that FCA had moved to seal. (ECF No. 542.) However, on April 24, 2020, this Court issued an Order denying FCA's motion to seal those exhibits. (ECF No. 590.)

David M. Lawson referred the motion to the undersigned for determination pursuant to 28 U.S.C. § 636(b). (ECF No. 546.)

The issues raised in Plaintiffs' motion are straightforward and relate to ones this Court previously decided in Plaintiffs' favor. The Court finds that oral argument will not aid it in resolving Plaintiffs' motion. For the reasons explained below, the Court will grant in part and deny in part Plaintiffs' motion.

**Standard of Review**

"[W]hether to grant a motion to compel discovery lies within the district court's discretion." *Wendorf v. JLG Indus., Inc.*, No. 08-CV-12229, 2010 WL 148254, at *1 (E.D. Mich. Jan. 11, 2010). Fed. R. Civ. P. 26(b)(1) controls the scope of discovery and provides, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

This "proportionality" requirement was born out of Rule 26's amendment in 2015, "but the basic tenet that Rule 26 is to be liberally construed to permit broad discovery remains unaltered." *United States v. Quicken Loans Inc.*, No. 16-CV-14050, 2017 WL 2306444, at *1 (E.D. Mich. May 26, 2017) (internal citations omitted).

**Plaintiffs' Motion to Compel**

In its Third Motion to Compel, Plaintiffs seek an order requiring FCA to produce:

> (1) documents responsive to Request No. 44, including ESI collected from the email and non-email custodial file of Thomas Finelli;
>
> (2) documents responsive to Request No. 47 regarding the 2016 polystable retrofit investigation referenced in document MCPS108404, including the production of ESI collected from the email and non-email custodial files of Gerry Schultz, Mark Waelichli [sic], Michael Sowards, Julie Zhu, and Steve Cox; and
>
> (3) all documents regarding the 2013 design work order study referenced in MCPS141149, which are responsive to Request No. 48.

(ECF No. 545, PageID.22591.)

These are not new requests Plaintiffs are raising for the first time. Rather, in granting in part Plaintiffs' Second Motion to Compel, this Court already ordered FCA to produce documents responsive to these three document requests. (ECF No. 471.) At the hearing on that motion, when the subject matter turned to the completeness of FCA's document production, FCA repeatedly responded with the vague and rote assertion that it had "produced documents responsive to" the request in question "pursuant to" or "responsive to" "the ESI protocol." (ECF No. 472, PageID.21922, 21298, 21304, 21309, 21312-13, 21325.) Additionally, FCA seemed to have applied a more narrow definition of relevance than either Plaintiffs or the Court thought appropriate. (*See e.g., id.*, PageID.21316-18, 21321-12, 21325-27.) Although the point should have been obvious enough – particularly in a multidistrict class action like this one where the responding party is a large, multi-national corporation – the Court made clear that performing an initial agreed-upon ESI protocol search, even to the best of the party's ability, does not mean it has fully satisfied its discovery obligations.

For example, the Court explained that making a production "pursuant to" an ESI protocol "doesn't give a party the right to turn a blind eye to other information known to it" that the ESI search did not reveal. (*Id.* at PageID.21314; *cf. id.* (FCA counsel arguing, "we can only look through what the ESI protocol has pulled down, has pooled. And to the extent there are documents

3

that were never put into the pool, that, that is, I think, the reluctance to say that all of these documents have been produced.")). The Court also made clear that where the results of the initial search identified specific potential gaps in production, the parties must work cooperatively to address the matter. (*Id.* at PageID.21288-94.) The same "caginess" that the Court noted at the hearing on Plaintiffs' second motion to compel (*id.* at PageID.21313) permeates much of FCA's opposition to Plaintiffs' instant motion.

### 1. *Documents Related to Rotary Dial Negotiations (Document Request No. 44)*

Document Request No. 44 seeks: "All documents relating to FCA's actual, proposed or potential use of rotary dial shifters supplied by Kostal, including but not limited to any negotiations with Kostal and/or Jaguar concerning licensing, royalties and any restrictions." Plaintiffs assert that "[d]iscovery shows that, in the fall of 2010, FCA decided to abandon the monostable shifter and instead use a rotary dial shifter also used by Jaguar and manufactured by Kostal." (ECF No. 545, PageID.22605.) They further claim that following this Court's prior discovery order, FCA supplemented one of its interrogatory answers by disclosing that Thomas Finelli was "the employee most responsible for the negotiation with Jaguar regarding the use of a rotary shifter in the Class Vehicles." (*Id.* at PageID.22606.) However, Plaintiffs claim that "FCA did not produce any emails reflecting those negotiations" and "only produced two documents that even hit with the term 'Finelli.'" (*Id.*) Thus, they conclude that FCA's document production is "clearly deficient" and ultimately seek an order compelling FCA to produce "any contemporaneous communications with [Jaguar]" reflecting their negotiations. (*Id.*; ECF No. 557, PageID.22752.)

FCA responds that "[t]here is nothing in the evidentiary record to suggest that protracted negotiation *ever* took place" and that the main document on which Plaintiffs rely "does not suggest that [the negotiations] consisted of anything other than a single demand." (ECF No. 554,

4

PageID.22720; ECF No. 545-2 (emphasis in original)). Further, FCA writes that it "can confirm that in the run-up to the October 25, 2019, production, Tom Finelli did indeed search his paper and electronic records and did not find written documentation of discussions with [Jaguar]." (ECF No. 554, PageID.22720.)[2]

While the Court concurs with FCA that the main e-mail on which Plaintiffs rely does not, by itself, suggest that additional written communications between FCA and JLR must have existed, the approach FCA has taken with respect to Plaintiffs' motion leaves the question of whether other communications do exist. If no such additional communications ever existed, that would have been easy enough for FCA to tell Plaintiffs and the Court. Indeed, having identified Finelli as the employee most responsible "for the negotiation with Jaguar" regarding the rotary shifter, FCA could simply ask him whether any additional "contemporaneous communications" between the two companies *ever* existed. If additional written communications (paper or electronic) were exchanged, and Finelli simply could not locate them, then FCA must conduct further reasonable investigation to attempt to do so. This is particularly so considering the importance of the issues at stake in this case, the substantial amount in controversy, FCA's access to the information, the importance of this particular discovery to Plaintiffs' claims and FCA's defenses, and FCA's failure to identify any burden or expense that would be involved in performing the investigation and search described by the Court.

Accordingly, this aspect of Plaintiffs' motion is granted. FCA shall inquire of Finelli whether any additional contemporaneous communications were exchanged with Jaguar

---

[2] The Court notes that FCA distinguishes between "the custodian perform[ing] an attorney-directed self-search of [his] electronic and hard copy sources" and "FCA US perform[ing] a search of the custodian's materials," the latter of which presumably involves searching electronic storage that the custodian himself would not have access to. (ECF No. 554-1, PageID.22735.)

5

concerning FCA's use of the rotary shifter, and shall conduct a reasonable search for any such additional communications not already produced. Regardless, FCA shall ensure that a reasonable search is conducted of any electronic files of Finelli that were not already searched. FCA shall produce any additional responsive documents by May 15, 2020.

2. ***Documents Related to FCA's 2016 Polystable Retrofit Investigation (Document Request No. 47)***

Plaintiffs' Document Request 47 seeks: "All documents relating to any study, investigation or inquiry into retrofitting Class Vehicles with a polystable shifter, including but not limited to the polystable shifter retrofit investigation referenced in MCPS108404." Plaintiffs note, "[w]hile the polystable shifter replaced the monostable shifter in the 2016 Grand Cherokee, [FCA] also investigated whether it was feasible to take the polystable shifter and retrofit it into the Class Vehicles, notably as an alternative to installing Auto Park as part of the recall 'remedy.'" (ECF No. 545, PageID.22607.)

The Court previously found that the request seeks relevant information and ordered FCA to produce responsive documents. (ECF No. 471.) Plaintiffs now challenge FCA's document production, asserting, "FCA has produced only a handful of documents concerning the 2016 polystable retrofit investigation." (ECF No. 545, PageID.22608.) This "prompted Plaintiffs to request [] [that FCA] confirm what *sources* were searched for documents responsive to this request – and, in particular, to indicate whether the *email and non-email custodial files of Gerry Schultz, Mark Waelchli, Michael Sowards, Julie Zhu, and Steve Cox* were searched for responsive documents. [] Mr. Sowards, Ms. Zhu and Mr. Cox were identified by FCA as custodians in the ESI Discovery Protocol, but Mr. Schultz and Mr. Waelchli were not." (*Id.*) (emphasis in original.)[3]

---

[3] Plaintiffs also raise an issue about metadata for a PowerPoint presentation, and claim that FCA "committed to produce" that information. (*Id.*) FCA does not deny this, but merely says that

6

FCA argues that it "studied the idea of a retrofit of new shifters into Class Vehicles as a potential remedial step for the recall of the Class Vehicles" and that "[t]here is no question that this idea was rejected." (ECF No. 554, PageID.22720.) Further, it contends that the very documents on which Plaintiffs' instant motion rest "(1) confirm that the project never went anywhere; (2) describe the steps thought necessary to make a fix suitable for customers; and (3) lay out the costing information that had been developed before the study was discontinued. . . . It is far from clear why Plaintiffs would expect there to be extensive documentation for a project that never went anywhere." (*Id.*) Thus, FCA claims it has done enough, that there is no "legal basis" for Plaintiffs to choose "the correct custodians," and that Plaintiffs' request essentially seeks "forever discovery." (*Id.* at PageID.22722.) These conclusory arguments lack merit.

Plaintiffs are not claiming that "extensive documentation" still needs to be produced, and are not seeking "forever discovery." On the contrary, they have reasonably explained why additional *targeted* discovery is warranted:

> In document MCP108404 – which Plaintiffs specifically identify by Bates-number in Document Request Number 47 – John Zbranchik responded to a February 10, 2016 email from Steve Cox inquiring about a mock-up for switching from a monostable shifter to a polystable shifter in the Jeep Grand Cherokee, stating: "Gerry Schultz [who was *not* on Defendants' list of custodians] is coordinating the electrical activity to support the polystable retrofit investigation." Further, on October 25, 2019, FCA produced a February 11, 2016 email chain in which Mark Waelchli [who was *not* on Defendants' list of custodians] forwards a presentation entitled "WK Monostable to Polystable Retrofit Feasible Options" to various individuals, including Gerry Schultz. [] FCA also belatedly produced an email dated July 13, 2016 from Julie Zhu to Michael Sowards (two custodians that Plaintiffs have sought confirmation as to whether their files were searched) regarding a "Monostable/Rotary Shifter Swap," in which she responded that "the total cost maybe more than buy back [of] the vehicle." []

---

courts "disfavor" requiring production of metadata. (ECF No. 554.) This does not meaningfully respond to Plaintiffs' contentions, and does not suggest that providing the limited metadata requested by Plaintiffs would pose any burden on FCA. Accordingly, FCA shall provide the requested metadata by May 15, 2020.

(ECF No. 545, PageID.22610 (brackets and emphasis in original)).

FCA obviously has a legal responsibility to participate in discovery in good faith. Where Plaintiffs have zeroed in on a few specific custodians and provided detailed and logical reasons to question the dearth, and in some instances, absence of documents authored by them, that means investigating the issue in good faith and ensuring that a reasonable search for responsive documents has in fact been performed.[4] At a minimum, this would mean ensuring that a reasonable search has been conducted of Gerry Schultz's and Mark Waelchli's files, and confirming that the e-mail and non-e-mail custodial files of Michael Sowards, Julie Zhu, and Steve Cox have been searched for responsive documents.

For all of these reasons, and considering the significance of the underlying issue to this case and Rule 26(b)(1)'s other proportionality factors, this aspect of Plaintiffs' motion to compel is granted. FCA shall perform the additional discovery work specified above and produce any additional responsive documents by May 15, 2020.

3. ***Documents Related to the 2013 Design Work Order Study (Document Request No. 48)***

Document Request 48 seeks: "All documents regarding and/or generated in connection with the 'design work room order study,' referenced in MCPS141149, regarding the placement of a polystable shifter into a Grand Cherokee designed and/or assembled with a monostable shifter." As to this issue, Plaintiffs argue:

---

[4] FCA fights this point, as well, criticizing Plaintiffs for being "silent on exactly how searches would be conducted." (ECF No. 554, PageID.22723.) It is FCA that knows the ins-and-outs of its committee structures and product teams, who was working with who, and on what projects, and how files are maintained. Indeed, just two sentences later in its brief, FCA implicitly admits that it is in the best position to investigate these issues and ensure that its document production is reasonably complete. (*Id.* ("a requesting party does not presumptively get to call the shots on the methods by which a producing party does its work.")).

> . . . during the parties' January 23 [meet and confer] call, [FCA's] counsel indicated that the 2013 design work room order study referenced in MCPS141149 may not have actually occurred, and thus Plaintiffs requested confirmation, on or before January 30, whether FCA conducted any work in connection with this study and the Bates-numbers of the documents that FCA produced responsive to this request. [FCA] did not provide that information, notwithstanding the Court's statement that this is a "relevant subject matter for this case" and there was no information before the Court to suggest "that the information related to the work study would not have been useful in terms of addressing the situation with the subject vehicles." (Tr. at 70-73). Because this Court previously ordered that documents concerning the 2013 design work room study be produced, [FCA] should readily be able to confirm whether responsive documents exist and, if so, whether they have been produced.

(ECF No. 545, PageID.22611.)

FCA responds by accusing Plaintiffs of asking FCA's counsel to "stand in for fact witnesses." (ECF No. 554, PageID.22721.) However, FCA then highlights a number of documents it produced in response to Request No. 48, which appears to answer the questions posed in Plaintiffs' brief. (*Id.*) Plaintiffs did not explain why the documents identified by FCA are incomplete. Accordingly, this aspect of Plaintiffs' motion to compel is denied.

**Conclusion**

For the reasons stated above, **IT IS ORDERED** that Plaintiffs' Third Motion to Compel **(ECF Nos. 544, 545)** is **GRANTED IN PART AND DENIED IN PART**. FCA shall perform the additional discovery work described above and produce any additional responsive documents to Plaintiffs by **May 15, 2020**.

**IT IS SO ORDERED.**

Dated: April 28, 2020  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. § 636(b)(1).

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                                                         s/Eddrey O. Butts
                                                                                         EDDREY O. BUTTS
                                                                                         Case Manager

Dated: April 28, 2020