UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION

MDL No. 2744

Case Number 16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DOUGLAS YOUNG AND DAVID CADES**

The plaintiffs have moved to exclude the testimony at the issues class trial of the defendant's human factors experts Douglas Young and David Cades. The motion is fully briefed, and oral argument will not assist in its resolution. The Court will decide the motion on the papers submitted. E.D. Mich. LR 7.1(f)(2).

The plaintiffs argue that certain portions of the testimony by Drs. Cades and Young must be excluded because the witnesses lack the required expertise to give helpful opinions to the jury, and their analysis relies on cherry picked data and questionable statistical methods. For most of the opinions, however, the witnesses are adequately qualified. The plaintiffs' criticisms more appropriately are directed to the weight and not the admissibility of the opinions. The opinions based on the results of a survey question that was included as part of a driving study, however, will be excluded because the question itself is fatally flawed. The motion will be granted in part and denied in part.

I.

A. Background

The parties and the Court are familiar with the factual background of the case. The case concerns alleged defects in the defendant's "monostable gearshift" device which was used in certain models of cars made by FCA US, LLC in the 2012–2014 timeframe.

This multi-district litigation has been pending before the Court since its initiation by order of the JPML in 2016. After years of class-related discovery and multiple rounds of dispositive motion practice, the Court certified an issues class under Federal Rule of Civil Procedure 23(c)(4) to proceed to trial on three certified questions of fact pertinent to all of the economic loss claims asserted by plaintiffs in 21 of the 23 jurisdictions implicated by the consolidated amended class action complaint. The three issues certified for the common issues trial are:

- Whether the monostable gear shift has a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation.

- Whether the defendant knew about the defect and concealed its knowledge from buyers of the class vehicles.

- Whether information about the defect that was concealed would be material to a reasonable buyer.

The Court recently disposed of a motion for summary judgment and motions addressing the admissibility of other expert witnesses for both sides. After a lengthy pause in the proceedings precipitated by the impossibility of in-person operations during the two-year crisis of the global coronavirus pandemic, the class proceeding has been reset for an issue trial commencing on September 6, 2022.

The plaintiffs seek to preclude testimony by the defendant's experts Dr. Douglas Young and Dr. David Cades, whose opinions would be offered to counter testimony by the plaintiffs'

human factors and design defect expert Craig Rosenberg. The admissibility of those opinions must be gauged against the issues certified for trial.

## B. Expert Report

The plaintiffs move to exclude parts of the anticipated testimony that is disclosed in an expert report jointly prepared by Dr. Douglas Young (an expert in kinesiology, or the analysis of human movement, control, coordination, and reaction time), and Dr. David Cades, a psychologist and professed expert in "human factors" design and analysis. They argue that the opinions are based on allegedly cherry-picked data and flawed methods.

Dr. Young holds bachelor's and master's degrees and a Ph.D. in kinesiology from the University of California, Los Angeles and presently works as a principal scientist at Exponent in Los Angeles, California. He also is a professor in the department of kinesiology at California State University, Long Beach. Dr. Cades holds a bachelor's degree in engineering psychology and a master's degree and Ph.D. in psychology from George Mason University. He is a senior managing scientist at Exponent in that company's human factors division. He describes his work as principally concerned with "address[ing] how the capabilities and limitations of people interact with the products, equipment, and systems in their environment, and how this interaction affects safety." Expert Report of Douglas Young and David Cades dated Nov. 16, 2018, ECF No. 694-2, PageID.30307. The general qualifications of Drs. Young and Cades to opine on topics concerning "human factors" and human interface design are not in dispute.

The report indicates that Young and Cades reviewed numerous sources of information when preparing their report, including the pleadings and discovery materials exchanged by the parties to this litigation, depositions of all the named plaintiffs, vehicle inspection reports, Chrysler correspondence and engineering documents relating to the gear shift design, documents relating to

the 2016 recall, depositions of the defendant's principal witnesses, and the reports of the plaintiffs' economic and human factors experts. Expert Report at PageID.30308-314. The report includes an extensive factual recitation spanning the historical vehicle design and evaluation process, customer studies conducted before the class vehicles went to market, the general physical features of the gear shifter, and customer complaints and the recall.

The report also includes extensive discussions of general principles of human interface design and critiques of the methods used by plaintiffs' human factors expert, but the centerpiece of the discussion relating to product design is the analysis of a "Gearshift Behavior Study" conducted by Drs. Young and Cades. *Id.* at 30363-380. That study reportedly involved sixty participants who owned and drove one of five different selected vehicle models: two were class models with the monostable shifter design, two were models contemporary to class vehicles with traditional mechanical shifters, and one was a BMW model with an alternative monostable shifter design that the defendant reportedly considered adopting for the class vehicles. Young and Cades did not inform participants that they were specifically interested in gear shifter features or shifting behavior. Instead, they assigned the drivers a variety of driving tasks to perform on a closed course and then evaluated the incidence of several types of shifting errors based on in-cabin video recordings of the drivers' performance. They categorized the types of errors observed as corrected mis-shifts, uncorrected mis-shifts, or "forgetting to shift," and they also evaluated "time to shift" and "force to shift." *Id.* at 30372. The report included various statistical breakdowns of the data generated by Young and Cades during their driving study.

In a separate section, Young and Cades also reported on their analysis of accident records from a publicly available database of auto accident reports maintained by the North Carolina Department of Motor Vehicles. Expert Report at 30382-385. They assert that analysis of accident

reports from this widely utilized database has been relied upon by academic and private and public authorities as a reliable source for determining the incidence of accidents in safety defect investigations. The accident reports considered were narrowed to include vehicles from different manufacturers that were similar to the class models with a variety of gear shifter designs, and with narratives suggesting incidents similar to those that prompted the class recall.

Young and Cades stated their principal conclusions regarding the safety of the design as follows: (1) "[t]he monostable gearshift design is consistent with human factors design recommendations and guidelines and is not causally related to rollaway incidents or driver errors," (2) "[r]ollaway events are relatively rare, and the risk of an accident or injury resulting from a rollaway event in the class vehicles is not different from that of other vehicles," (3) "[g]earshifting behavior [with] the monostable gearshift is similar to gearshifting behavior [with] comparable monostable and mechanical gearshifts," and (4) "[t]he monostable gearshift does not induce drivers to produce atypical or an overabundance of errors." Expert Report at PageID.30391. They also opined that "[m]ethodological flaws in Dr. Rosenberg's study render the results untenable and do not suggest any increased risk of error in the class vehicles." *Ibid.* Based on their analysis of accident databases and various other sources of information about the car market, the experts also opined that (1) "[t]he number of incidents described by the named plaintiffs is not consistent with the rates of incidents in the putative class," and (2) "[a]n individual's decision to purchase or lease a vehicle depends on a variety of factors, is highly variable across people, and [such decisions] are dissimilar across vehicles." *Ibid.*

A lengthy portion of the report was devoted to a review of academic literature and discussion of testimony by the named plaintiffs about how they decided to buy their cars and the extent to which they perceived issues with the gear shifter design. Expert Report at PageID.30336-

348. However, some of the expressed conclusions bearing on the materiality of the alleged defect appear to be derived principally from an analysis of responses to a survey question that Young and Cades posed at the conclusion of the driving exercises only to those participants who owned one of the two class vehicle models involved in the study. *Id.* at PageID.30379. Young and Cades assert that the language of the question was chosen to closely track the defect description in the 2016 recall notice, and the participants were asked to answer "yes" or "no" to the following prompt:

> Consider the following disclosure:
>
> Your vehicle is equipped with a state of the art, fuel efficient eight-speed transmission. The electronic shift lever in this vehicle does not slide like a conventional shifter. Instead, the shift lever is spring loaded and moves forward and rearward, always returning to the center position after each gear is selected. The transmission gear (PRND) is displayed both on the shift lever and in the Electronic Vehicle Information Center (EVIC).
>
> As with all automatic transmissions, it is possible that a driver might shift into a gear other than the intended gear. This vehicle, unlike some other vehicles, is now equipped with an "auto park" feature. If the driver believes he or she has shifted this vehicle into PARK but has actually shifted into another gear, the vehicle will automatically shift into PARK when the driver releases the brake, unbuckles his or her seatbelt, and opens the driver's door.
>
> However, as with all automatic transmissions, if the driver believes he or she has shifted into PARK but has actually shifted into another gear, and leaves the car running and releases the brake, but does not unbuckle his or her seatbelt and open the driver's door, the vehicle could have unintended movement. If the driver does not immediately apply the brakes, unintended movement of the vehicle could injure those in or near the vehicle.
>
> If you had been provided with the disclosure identified above before you purchased or leased the vehicle, would you still have purchased or leased the vehicle[?]

*Id.* at 30371-372. The owners of class vehicles also were asked if their vehicles had received the "S27" recall fix. Among the 12 Jeep owners, four knew about the recall, three had it applied, and one chose not to have it applied. Among the 12 Chrysler 300 owners, six knew about the recall, five had it applied, and one chose not to have the fix applied. Among those same participants, 10

of the 12 Jeep owners and eight of the 12 Chrysler 300 owners answered that they still would have bought their cars if presented with the above disclosure. *Id.* at 30379.

### C. The Plaintiffs' Objections

The plaintiffs argue that (1) the opinions on consumer purchasing behavior should be excluded in their entirety because Drs. Young and Cades are not qualified to opine on this topic, (2) the results of the driving study must be excluded due to (a) small effects and sample sizes, (b) use of a flawed "between subjects" statistical comparison, (c) sampling bias, (d) improper application of the "chi square" statistical test, and (e) omission from the analysis of any mention about seven participants in the study whose results were not included in the data set, and the data for whom previously were not disclosed, and (3) the analysis of the North Carolina accident database must be excluded because the accident reports are inadmissible hearsay.

## II.

The general rules governing the admissibility of expert testimony were discussed in opinions on earlier motions challenging the proposed testimony of other expert witnesses. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-02744, --- F. Supp. 3d ---, 2022 WL 1004105, at *3 (E.D. Mich. Apr. 4, 2022). To summarize, witnesses qualified as "experts" because of their special knowledge may testify in the form of an opinion based on information made known to them by others. Fed. R Evid. 702, 703. Once qualified, the witness's opinion may be received if it would be helpful to "the trier of fact to understand the evidence or to determine a fact in issue," it "is based on sufficient facts or data," the opinion "is the product of reliable principles and methods," and the witness "has reliably applied the principles and methods to the facts of the case." Fed. R Evid. 702(a)-(d). The witness's opinion must be based on a foundation grounded in the actual facts of the case and valid according to the discipline that furnished the base

of special knowledge, and the witness must appropriately "fit" the facts of the case into the theories and methods he or she espouses. *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 591-93 (1993).

An expert's opinion is not relevant unless it is based on the actual facts of the case. *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 529 (6th Cir. 2014) (Keith, J. dissenting) ("The 'relevancy' prong of Rule 702 requires that an expert's theory adequately 'fit' the facts of the case. Expert testimony that does not fit the facts does not relate to an issue in the case and, therefore, is not relevant.") (citing *Daubert*, 509 U.S. at 591). An opinion is "reliable" from an evidentiary standpoint if it is "valid" according to the discipline upon which it is based. *See Daubert*, 509 U.S. at 590. In determining validity, the Court's focus is on principles and methodology, not results.

### A. General Qualifications

The plaintiffs do not challenge Young's or Cades's qualifications to opine on human factors and the safety implication of interface design or the foundation of their opinions that (1) "[t]he monostable gearshift design is consistent with human factors design recommendations and guidelines," and (2) "[m]ethodological flaws in Dr. Rosenberg's study render the results untenable and do not suggest any increased risk of error in the class vehicles." Those opinions on design issues generally and driving study methodology and other unchallenged portions of the opinion testimony will be allowed.

### B. Driving Study

The plaintiffs take issue with the conclusions founded on the results of the Young and Cades driving study, which they say were derived from an insignificantly small sample that was analyzed using flawed statistical methods. However, as the Court has concluded in several prior opinions finding testimony by other experts in the case to be admissible, such arguments that

conclusions are unreliable "based on various purported statistical deficiencies [] misses the mark," because "'[a]ll of the specific criticisms of [the experts'] experimental design bear on the weight of [their] conclusions and not the admissibility of [the] opinion[s].'" *In re FCA US*, 2022 WL 1004105, at *5 (quoting *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 701 (E.D. Mich. 2019)).

The plaintiffs also challenge the admissibility of the driving study results because information relating to seven persons who were recruited for the study was not included in the analysis, and data derived from those persons was not previously disclosed to the plaintiffs. The plaintiffs argue that the driving study analysis relies improperly on "cherry picked" data, because information about seven persons — five of whom owned class vehicles — was not included in the analysis by Young and Cades, and the data relating to those persons initially was not disclosed when the experts produced their report. The defendant responds that the exclusion of the data that was collected but not used was proper because later — after the individuals had participated fully in the driving exercise — it was "discovered" by the experts that "contrary to their earlier statements" the drivers "were not familiar with the shifters in the vehicles they were driving." The defendant contends that exclusion of the data developed by those drivers was proper because the criteria for the study explicitly required that drivers be "familiar" with the gear shift design of the vehicles they were given to drive. The defendant also says that when the plaintiffs requested the full backup data, it eventually was produced, including information from the omitted participants.

"There is some merit to [the plaintiffs'] argument that an expert cannot 'cherry-pick' only favorable data. . . . [C]herry-picking data is just as bad as omitting it or making it up altogether." *United States v. Lang*, 717 F. App'x 523, 535-36 (6th Cir. 2017) (citing *EEOC v. Freeman*, 778 F.3d 463, 468-71 (4th Cir. 2015) (Agee, J., concurring); *EEOC v. Kaplan Higher Educ. Corp.*, 748

F.3d 749 (6th Cir. 2014)). However, as the Sixth Circuit has explained, "Rule 702 does not require an expert to consider *all* the facts and data available," although "it does require the factual basis of his opinion to be *sufficient*." *Id.* at 536. "[A]n expert may not be permitted to testify to the jury when his opinion rests only on facts that 'plainly contradict' undisputed evidence," and "[t]herefore, the question is whether, in light of the record as a whole, [the Court is] firmly convinced that the record plainly contradicts" the factual basis recited in the expert's report. *Ibid.* In this case, the record does not "plainly contradict" the factual basis of Young's or Cades's opinions. Instead, it merely indicates that the defendant's experts defined certain selection criteria for the study, and that they conformed their analysis to those criteria when compiling and analyzing the results. Certainly, there is a persuasive argument that can be made that including only drivers who were "familiar" with the shifter design calls into question the analytical utility of the resulting conclusions. One might say that it is like analyzing the performance of test-takers who are given the answers in advance. However, the argument that a different study design would have yielded differing results bears on the weight, not the admissibility of the evidence. Moreover, the plaintiffs now are in possession of the full data set that they requested, which will allow them fully to present that criticism of the testimony.

Notably, in the Fourth Circuit concurrence by Judge Agee, the exclusion of opinions based on cherry-picked data was bolstered by the observation of a striking pattern of "fundamental errors, mistakes, and misrepresentations," including "basic arithmetic errors," along with instances of similarly sloppy work by the same expert in many other cases where his testimony had been barred. *Freeman*, 778 F.3d at 470 (Agee, J., concurring). In this case, all of the information collected by Young and Cades was disclosed, and the plaintiffs have not pointed to any plainly egregious errors or misrepresentations in the application of "basic arithmetic" to the data that was selected for

analysis. The experts also have explained why they chose to omit data that was not included in the figures. Their criteria may be subject to fair criticism, but that does not render their testimony inadmissible. *Eimers v. Lindsay Corp.*, No. 19-44, 2021 WL 5647993, at *21 (E.D. Tenn. Dec. 1, 2021) ("Lindsay argues Dr. van Schoor's testimony that alternative designs may have performed better than the X-LITE is speculative, and therefore unreliable, because it is not based on 'objective testing,' does not use similar-enough crash comparisons, and 'cherry-picks' his data points. The content of this argument is substantially the same as the ones [] advanced against Dr. Schrum, Dr. Sicking, and Dr. Kumar's opinions, and it fails for the same reason — the criticisms pertain to credibility and accuracy, not reliability and relevance, because they take issue with the kinds of data points selected rather than the methodology or empirical basis.") (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, at 529-530 (6th Cir. 2008)). "[A]lthough the opinions of the proffered testimony may very well be shaky, because the opinions were based upon facts in the record, and were not assumptions or guesses, [the] challenges merely [go] to the accuracy of the conclusions, not to the reliability of the testimony." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (quotations omitted). "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record. However, mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). The proposed expert testimony in this case based on the driving study results satisfies that permissive standard.

## C. Consumer Psychology

The plaintiffs also move to exclude several opinions in the report about consumer behavior in the automobile market on the ground that neither expert is qualified to give any such expert

testimony. The principal opinion that the plaintiffs seek to exclude states: "[a]n individual's decision to purchase or lease a vehicle depends on a variety of factors, is highly variable across people, and [such decisions] are dissimilar across vehicles." Expert Report, ECF No. 694-2, PageID.30391. Relatedly, the experts also opined that (1) "[h]ad additional information been provided to plaintiffs prior to their purchase or lease of the subject vehicle, it is unlikely to have been noticed or read by every plaintiff," and (2) "for those individuals who would notice and read this information, their responses would vary." *Ibid.* Those opinions would be relevant to the third class issue certified for trial.

It does not appear that the defendant maintains that Dr. Young, as a kinesiologist, is qualified to give any testimony about consumer psychology. Also, the plaintiffs do not challenge the generalized opinions by Dr. Cades on the last two points noted above, and his opinions about the variety and nature of factors considered by persons buying cars, the likelihood that consumers would notice information provided them during a transaction, and the conclusion that their responses to any information supplied would vary, all are grounded adequately in his general background and extensive education in psychology. Those opinions also are supported by Dr. Cades's review of the pertinent academic literature and his consideration of individual testimony by the named plaintiffs about how they decided to buy their cars. It is undisputed that Dr. Cades holds a bachelor's degree in engineering psychology and a master's degree and Ph.D. in psychology from George Mason University, and his extensive education on the principles of human behavior renders him sufficiently qualified to opine in a well-founded manner on generalized topics such as the variability of factors considered by car buyers and the likelihood that, if they were presented with information during a purchase, it would have been considered.

Generalized testimony also could be received on the topic of whether, if a consumer understands a disclosure, the response to it would have "varied" among individuals.

Because Dr. Cades is qualified by his background in psychology to opine in a generalized fashion about behavior of consumers in the car buying market, his testimony discussed above will be allowed at trial.

### D. Opinions Based on Survey Question

Any opinions grounded in the responses to the owner survey that was included as part of the driving exercise or pertaining to the choices of the drivers involved in the survey will be excluded because the framing of the survey question shows that the wording of the prompt was so deceptively slanted that the answers cannot be deemed relevant to any factual issue in this case.

*First*, the question directed respondents to assume that the transmission in their vehicle was equipped with an "auto park feature," and it is undisputed that none of the class models had a such a feature at the time of sale. The question thus did not ask respondents how they felt, or would have felt, about buying the cars they actually bought, having any more or less knowledge about any alleged defect in them, but instead prompted them to consider how they would have felt about buying hypothetical vehicles that never existed before 2016.

*Second*, the biased wording of the prompt renders any responses to it irrelevant to any of the issues certified for trial. Those issues call for a decision on whether a defect in the gear shift existed at the time of sale, what, if anything, the defendant knew about it, and whether what it knew would have been material to a reasonable buyer if that information had been disclosed at the time of sale. The defendant's survey prompt conspicuously "informs" respondents that their vehicles are no more prone to rollaway incidents than vehicles with other gear shift designs. But as the Court discussed at length in its recent opinion denying the defendant's motion for summary

judgment, the record so far presented suggests otherwise, and it also suggests that the defendant knew as much. The prompt essentially directed respondents to assume the unproven premise that the defendant repeatedly has urged throughout this litigation, which is that the class vehicles were, and are, reasonably safe, and that any mishaps with them were caused solely by "user error"; then it asked buyers if they still would have bought their cars had they been so informed. Any responses to that slanted and self-serving questionnaire have no bearing on any issues relevant at trial in this case, and any opinions founded on them are not adequately fitted to the facts in the record.

### E. Accident Database Review

The plaintiffs argue that the experts' opinions about their analysis of North Carolina Accident Database records regarding incidence of rollaway accidents in class vehicles should be excluded because (1) the "unauthenticated hearsay narratives" of accidents drawn from police reports compiled in the database are inadmissible, and (2) the analytical utility of the database as a whole is "questionable" because, by definition, it does not include "reports" of accidents that were not reported — i.e., where no call for help was placed by the drivers involved, or where police did not respond to the accident scene or responded but did not file a report. Those challenges, however, for similar reasons as those discussed above, do not render opinions derived from the study of the accident database inadmissible.

*First*, it is axiomatic that the underlying factual information supporting an expert's opinion need not itself be admissible in order for the opinion testimony to be received in evidence. "An expert may base an opinion on facts or data in the case *that the expert has been made aware of or personally observed*. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, *they need not be admissible for the opinion to be admitted*." Fed. R. Evid. 703 (emphasis added). The plaintiffs have not seriously challenged the

assertions by defendant's experts that the accident database on which they relied comprises the type of information that experts in their field typically would rely upon when assessing the dangerousness of particular automobile designs. The objection that any underlying information in the database comprises inadmissible hearsay is impertinent to the *Daubert* analysis.

*Second*, federal courts in the Sixth Circuit and in other circuits regularly have admitted expert testimony based on analyses of the same and similar accident report databases in product liability actions, finding them relevant to proving dangerousness of the design and whether the defendant was on notice of the defect. *E.g.*, Hernandez v. Ford Motor Co., No. 04-319, 2005 WL 6240743, at *3 (S.D. Tex. July 20, 2005) ("Defendant has demonstrated that Dr. Vogler's statistical evidence addresses products similar to the subject Explorer — other SUVs and other passenger vehicles. Moreover, Vogler's data offers statistical evidence of the risk of rollover, which is the type of accident at issue in this case . . . . Because the statistics review the same class of vehicle, in the same class of accident (rollover), this Court finds that Dr. Vogler's proposed testimony is relevant and probative.") (citing *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 845-46 (3d Cir. 1981)); *see also Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 511 (6th Cir. 1998) (affirming admissibility of Consumer Product Safety Commission statistical study of accident reports concerning minibikes and other similar small vehicles in a product defect case).

*Third*, the Court recently held that similar testimony by the defendant's expert Robert Kuhn concerning the incidence of rollaway accidents indicated by a study of consumer reports logged by NHTSA was admissible at least for the purpose of demonstrating the percentage of class vehicles for which such reports had been received. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-2744, 2022 WL 944285, at *10 (E.D. Mich. Mar. 29, 2022) ("[F]or whatever relevance it has, Kuhn validly could testify, based on his examination of the available records,

about his calculations that the number of complaints received represented less than 1% of the number of class vehicles produced and sold in the relevant jurisdictions. That conclusion, to that limited extent, will be allowed, but the opinion that all class vehicles that were not the subject of complaints were 'safely operated' must be excluded.").

Finally, for the same reasons noted above, statistical criticisms about the analytical power of the conclusions based on alleged omissions from the data set due to unreported incidents go to the weight of the opinions derived from the data, not their admissibility.

### III.

The defendant has satisfied the requirements of Evidence Rule 702 for admission of the expert testimony of Dr. Douglas Young and Dr. David Cades except for opinions based on the survey question posed to participants during the driving study.

Accordingly, it is **ORDERED** that the plaintiffs' motion to exclude the testimony at trial of Dr. Douglas Young and Dr. David Cades (ECF No. 694) is **GRANTED**.

It is further **ORDERED** that Dr. Young may not give any testimony about consumer psychology, and Drs. Young and Cades may not testify about opinions and discussions directly related to the results of a driver survey question which asked participants in the driving study whether they still would have bought their class vehicles even if they were provided certain additional information. The motion is **DENIED** in all other respects.

                                                           s/David M. Lawson
                                                           DAVID M. LAWSON
                                                           United States District Judge

Date:  May 12, 2022