UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION

MDL No. 2744

Case Number 16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF J. MICHAEL DENNIS**

In this third and final round of motions to exclude expert testimony in advance of the class issue trial, the defendant moves to exclude consumer survey testimony by the plaintiffs' expert, J. Michael Dennis. Although Dr. Dennis recently was named as an expert to replace Dr. Justine Hastings, the parties represent that Dr. Dennis has adopted Dr. Hastings's methodology and opinions in toto, and that his testimony will be congruent in every way to the opinions that Dr. Hastings was retained to offer. The defendant's challenge focuses entirely on alleged deficiencies in Hastings's survey methods, and no separate challenge has been raised based on the change in the trial roster. The defendant previously challenged Dr. Hastings's opinions at the class certification stage of the case, a challenge the Court rejected. For many of the same reasons, the Court rejects that challenge again. The motion will be denied.

I.

The parties and the Court are familiar with the factual background of the case. The case concerns alleged defects in the defendant's "monostable gearshift" device which was used in certain models of cars made by FCA US, LLC in the 2012–2014 timeframe. This multi-district litigation has been pending before the Court since its initiation by order of the JPML in 2016. After years of class-related discovery and multiple rounds of dispositive motion practice, the Court

certified an issues class under Federal Rule of Civil Procedure 23(c)(4) to proceed to trial on three certified questions of fact pertinent to all of the economic loss claims asserted by plaintiffs in 21 of the 23 jurisdictions implicated by the consolidated amended class action complaint. The three issues certified for the common issues trial are:

- Whether the monostable gear shift has a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation.

- Whether the defendant knew about the defect and concealed its knowledge from buyers of the class vehicles.

- Whether information about the defect that was concealed would be material to a reasonable buyer.

The plaintiffs originally hired Dr. Hastings, an economist, to testify about economic methodologies utilizing common evidence to demonstrate that members of the proposed class have incurred an economic impact as a result of the allegedly defective shifter. The defendant contends that Dr. Hastings's opinions, adopted by Dr. Dennis, should be excluded because the survey used by Dr. Hastings cannot replicate "real life" experiences in the dealer showroom and therefore are not reliable, the survey is defective in its form, and the survey produced "absurd" results.

Dr. Hastings's extensive academic qualifications as an economist and consumer behavior expert were discussed thoroughly in the Court's previous opinion holding that her testimony was admissible on the question whether a reliable method could be employed to estimate point-of-sale damages for the proposed consumer class. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687 (E.D. Mich. 2019). The defendant raises no challenge to the qualifications of the plaintiffs' substitute expert (Dr. Dennis) to opine on the same topics previously identified in Dr. Hastings' report. Moreover, the parties represent that Dr. Dennis's testimony will mirror in all respects the testimony that Dr. Hastings would have given. Defendant's challenges to the

testimony focus entirely on — and explicitly are directed to — alleged defects in "Dr. Hastings's methods." The defendant insists that because Dr. Hastings's previously disclosed opinions should have been excluded, so should Dr. Dennis's testimony, which adopts them. Notably, there is no dispute presented about the adoption of Dr. Hastings's work by Dr. Dennis as such.

During the class certification proceedings, the Court considered Dr. Hastings's opinion that a reliable and probative survey could be designed using a "conjoint analysis" method to estimate point-of-sale damages for the proposed class. Since that opinion was issued, Dr. Hastings deployed her proposed survey, the results of which were described in her subsequent report. The survey involved more than 3,000 participants selected by a market research firm according to criteria supplied by Dr. Hastings. The respondents were asked to contemplate choosing a 2019 model year car to replace their current vehicle, selected from among hypothetical vehicles with various combinations of six different attributes and with a range of discrete prices. The attributes were "drive type," "accessory package," "blind spot monitor," "possibility of airbag issues," "possibility of gear shifter issues, and "possibility of battery sensor issues." Expert Report of Dr. Justine Hastings dated May 30, 2019, ECF No. 778-4, PageID.33817. The hypothetical prices ranged from $25,000 to $65,000. Rebuttal Report, ECF No. 778-5, PageID.33902.

Dr. Hastings concluded in pertinent part that, "in the but-for world in which buyers knew about the alleged defects before they purchased or leased the Class Vehicles, but-for prices of the Class Vehicles would have been at least 20.8% lower than actual prices for both SUVs and sedans." Expert Report at PageID.33807. The plaintiffs propose to submit the survey results at the issue trial as relevant to the question whether knowledge of the alleged defect would be material to a reasonable consumer; they do not propose to admit any of the other extensive computations relating to the estimate of class-wide damages.

II.

The motion, again, invokes Federal Rule of Evidence 702 and cases interpreting that rule. As a general matter, "expert" testimony consists of opinions or commentary grounded in "specialized knowledge," that is, knowledge that is "beyond the ken of the average juror." *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016), *cert. denied sub nom. Casillas v. United States*, 137 S. Ct. 1120 (2017), and *cert. denied,* 138 S. Ct. 2701 (2018); *see also* Fed. R. Evid. 702. Such testimony is governed by Evidence Rule 702, which was modified in December 2000 to reflect the Supreme Court's emphasis in *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on the trial court's gate-keeping obligation to conduct a preliminary assessment of relevance and reliability whenever a witness testifies to an opinion based on specialized knowledge. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The language added by the 2000 amendment — subparagraphs (b) through (d) — restates *Daubert*'s insistence on the requirements that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses. *See Daubert*, 509 U.S. at 591-93.

The defendant argues that the testimony is irrelevant because a survey cannot account for the "real life" experience that consumers face when visiting a showroom and selecting a vehicle in person, because it would not include the "hands on" experience that consumers have when viewing and driving an automobile that they are considering buying. The defendant also contends that the survey is not reliable because it failed accurately to convey the "magnitude of risk" associated with the "possibility of gear shifter issues." And it argues that the "absurd" results of the calculations of willingness to pay based on the survey data demonstrate that the survey method is fundamentally flawed.

Dispelling any notion that the testimony is irrelevant to any certified issue, it is clear that the opinion that consumers significantly would discount the value of vehicles with a known gear shift defect that could cause rollaway incidents is relevant to the certified trial question of whether knowledge of the alleged defect would be material to a reasonable buyer. *Kumar v. Salov N. Am. Corp.*, No. 14-2411, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers.") (collecting cases; applying California law).

Moreover, the defendant's criticisms against the survey design manifestly are directed to the weight and not the admissibility of the opinion. When it moved to exclude Dr. Hastings's opinion at the class-certification stage, the defendant unsuccessfully argued several of the same points that it now reiterates as grounds for exclusion at trial. It argued then as it does now that several of the "terms that [Dr. Hastings] propose[d] to use [in her consumer survey] such as 'risk' and 'intuitiveness' [were] vague and Hastings ha[d] not put forth any definitions of them that can be evaluated to decide whether survey participants will be able to understand what they are being asked." The defendant also argued earlier that "a survey cannot account for the 'real life'

experience that consumers face when visiting a showroom and selecting a vehicle in person, because it would not include the 'hands on' experience that consumers have when viewing and driving an automobile that they are considering buying." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 696 (E.D. Mich. 2019).

Those arguments, unpersuasive then, are no more convincing now. As the Court previously observed, "[t]he defendant has not identified any significant way in which Dr. Hastings's proposed analysis deviates from the usual principles by which conjoint analysis surveys are designed," and "[a]ll of the . . . criticisms directed at the propriety of the assumptions made by Dr. Hastings [and the parameters of her survey design] merely impeach the factual basis of the opinion and not the reliability of her methods." *Id.* at 697, 698. Thus, the Court concluded that "the defendant has not demonstrated that exclusion of Dr. Hastings's testimony is warranted under *Daubert*, because all of its objections go to the soundness of certain underlying factual assumptions or to the weight of her analysis, questions that are properly for the fact finder to consider." *Id.* at 699 (quotations and alterations omitted); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-2335, 2019 WL 3006465, at *6 (S.D. Cal. July 10, 2019) ("Ocean Spray argues Dr. Belch did not have adequate controls to account for preexisting impressions, he did not pretest his questions to confirm that the respondents understood them, he had no information about what actual retail prices his survey respondents paid or what products and how many they purchased, and he could not tell whether their responses reflected their own purchasing history or were a reaction to his reference price. . . . [T]he Court notes [that] these arguments again go to challenges to methodology not admissibility.") (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("[T]echnical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence,

not its admissibility."); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) (once a survey is admitted, "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility")); *Schechner v. Whirlpool Corp.*, No. 16-12409, 2019 WL 978934, at *10 (E.D. Mich. Feb. 28, 2019) ("[T]he lack of [a] definition of 'pyrolytic' does not render Dr. Simonson's survey conclusions unreliable. Plaintiffs can plausibly criticize Dr. Simonson, for example, for not presenting one group of respondents with the simple 'self-cleaning' term instead of 'pyrolytic self-cleaning,' but these methodological arguments go to the weight of his opinion and not its admissibility."); *Broomfield v. Craft Brew All., Inc.*, No. 17-01027, 2018 WL 4952519, at *10 (N.D. Cal. Sept. 25, 2018) ("CBA chiefly challenges Dennis's consumer survey, arguing that it 'does not measure what consumers find material when purchasing beer in the real world or whether consumers were motivated to purchase Kona beer because of its packaging or alleged representations.' It also argues that Dennis's survey 'fails to consider that purchasing beer is a multifactorial process' by focusing on only one factor (brewery location) without asking about other factors, such as taste, price, and budget. And it challenges Dennis's survey on several other fronts, mainly criticizing the absence of certain types of questions.") (holding that conjoint survey model was sufficiently reliable and results adequately suggested that common questions about the materiality of implied place of origin on product packaging existed to warrant certification of consumer class).

The defendant's argument that the survey failed adequately to convey the "magnitude of the risk" because the questions did not convey any quantitative estimate of incidence of rollaway accidents is misplaced because the assessment of materiality does not depend solely on the rate at which incidents occur, and a sufficiently serious risk can be material even if the incidence is

extremely low. *Beaty v. Ford Motor Co.*, No. 17-5201, 2020 WL 639408, at *6 (W.D. Wash. Feb. 11, 2020) ("A truly dangerous failure (like an exploding gas tank) is material even if it is rare, and in a different case a duty to disclose a material defect may arise even if the defect occurs only infrequently."). Moreover, this criticism is, again, directed properly to the weight of the testimony concerning the factual basis of the survey analysis and not its admissibility.

Finally, the defendant's contention that the survey misrepresented the nature of the defect is remarkably disingenuous when one considers that the survey wording closely tracked the language describing the defect in the defendant's own 2016 recall notice. The survey described the nature of a postulated gear shift issue as follows:

> Some of the . . . models that you are considering have a defect with [the] gear shifter, which relates to motor vehicle safety. Although the gear shifter has the familiar appearance of a conventional shifter, it has an unfamiliar movement that *does not* provide the tactile or visual feedback that drivers are accustomed to receiving from conventional shifters. Specifically, the shifter is spring-loaded and returns to the same center position like a joystick, always returning to the center position after the desired gear is selected. As a result, the driver must take additional time to verify that the desired gear position was achieved by checking the display on the shift knob or behind the steering wheel.
>
> In some cases, drivers may unintentionally fail to achieve the 'PARK' position before exiting the vehicle when the engine is running. As a result, the vehicle may roll away, strike and injure the driver, passengers, or bystanders, or damage nearby property.

Expert Report at PageID.33873. That language substantially mirrors and tracks nearly verbatim in significant respects the characterization of the defect in the recall notice:

> FCA US has decided that a defect, which relates to motor vehicle safety, exists in certain 2014 and 2015 Jeep Grand Cherokee and 2012 through 2014 model year Chrysler 300/Dodge Charger vehicles. The problem is: Your vehicle may roll away striking and injuring you, your passengers, or bystanders, if the vehicle's engine is left running, the parking brake is not engaged, and the vehicle is not in the 'PARK' position before exiting the vehicle. Drivers may inadvertently fail to achieve the 'PARK' position before exiting the vehicle. The electronic shift lever in your vehicle does not move like a conventional shifter. Your shift lever is spring loaded and returns to the same center position like a joystick, always returning to the center position after the desired gear is selected.

Recall Notice, ECF No. 607-8, PageID.27598. The defendant's position that such language "misstated" the nature of the defect is not supported by the record.

III.

The defendant's criticisms of the survey design, as previously held by the Court at the class certification phase of the case, all bear on the weight and not the admissibility of the survey evidence. The defendant has failed to show that the testimony is unreliable or irrelevant.

Accordingly, it is **ORDERED** that the motion to exclude the testimony of Dr. J. Michael Dennis (ECF No. 778) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: August 31, 2022