UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT LITIGATION                    Case Number 16-md-02744
                                                   Honorable David M. Lawson
                    MDL No. 2744                   Magistrate Judge David R. Grand

_____/

## OPINION AND ORDER DENYING DEFENDANT'S SECOND MOTION TO DECERTIFY CLASS AND PLAINTIFFS' MOTION TO SUBMIT TWO ADDITIONAL QUESTIONS TO THE JURY, AND GRANTING PLAINTIFFS' MOTION TO CLARIFY A PREVIOUS EVIDENTIARY RULING

With trial underway, the defendant has filed a second motion to decertify the common issues class, which is the subject of the present proceedings. The plaintiffs have moved to submit two additional questions to the jury that essentially would alter both the class definition and the nature of the questions certified for trial. Both motions will be denied. The plaintiffs also seek clarification of a ruling concerning the admissibility of evidence of polystable shifters. The Court believes that clarification will be helpful and will grant that motion.

I.

On December 9, 2019, the Court granted in part the plaintiffs' motion for class certification and certified an issue class under Federal Rules of Civil Procedure 23(b)(3), (c)(4). Op. & Order Granting in Part Mot. for Class Cert., ECF No. 492. The plaintiffs then filed a motion to amend the class definition, which was granted on January 10, 2020. Order Granting Mot. to Amend Class Definition, ECF No. 510. The class as amended is defined as follows:

> All persons or entities who have purchased or leased a class vehicle, which means a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014-2015 Jeep Grand Cherokee equipped with the monostable shifter.

ECF No. 510, PageID.21608. After those and other orders were entered, *see* ECF No. 512, 538, 548, class notice was provided by mail and email to 767,256 identified class members, with 5,502

identified members who could not be reached for delivery by any means, Report of Delivery of Class Notice, ECF No. 650-1, PageID.29373. The claims administrator received opt-out notices from 187 class members. *Id.* at PageID.29391-95.

The Court certified the class for decision of three questions of fact, stated as follows:

- Whether the monostable gear shift has a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation.

- Whether the defendant knew about the defect and concealed its knowledge from buyers of the class vehicles.

- Whether information about the defect that was concealed would be material to a reasonable buyer.

The defendant previously filed a motion to decertify the class on the ground that proceeding with a common issues trial on the three certified questions would invade the trial rights of the defendant in the four transferred cases, citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), and trying these issues separately from the entire causes of action for each of the respective states may impair the defendant's rights under the Seventh Amendment. That motion was denied on January 4, 2022, after the Court found that the defendant's concerns could be addressed by confining the trial agenda to decision of the certified questions only as they pertain to the claims of plaintiffs and class members in the direct-filed actions.

Taking a different path to a similar destination, the defendant also recently filed a motion for suggestion of remand in the four transferred economic loss matters. That motion was denied on July 27, 2022. In its order, the Court ruled that, to foreclose any lurking *Lexecon* issue, "the issues class trial shall constitute an adjudication by the jury of the three certified questions as they pertain to the parties and claims involved in the direct-filed MDL cases," and "[a]fter the conclusion of the issue trial, the Court will entertain appropriate motions on the questions whether

-2-

and to what extent the results of the issues trial may, by operation of law, be binding on parties and absent class members in *Wall v. FCA US, LLC*, No. 16-13681 (C.D. Cal.); *Mack v. FCA US, LLC*, No. 16-13678 (E.D.N.Y.); *Lynd v. FCA US, LLC*, No. 16-13913 (N.D.N.Y.); and *Brooks v. FCA US, LLC*, No. 16-13677 (W.D. Mo.)."  Order Denying Mot. for Suggestion of Remand, ECF No. 808, PageID.35396.

Trial of the common issues began on September 6, 2022.  Just 11 days prior, the defendant filed a second motion to decertify the class.  The bases of the motion are statements made by the plaintiffs' lead counsel at the final pretrial conference, which the defendant characterizes as exhibiting an intent to "abandon" the claims of class members who bought vehicles after the April 22, 2016 voluntary recall was initiated.

The defendant argues that (1) the case as pleaded never has made a distinction based on date of purchase, and the plaintiffs consistently have framed their claims on behalf of all purchasers, not just those who bought before the auto park recall, (2) the class as certified expressly covers all buyers and lessors of class vehicles, without regard to date, (3) class notice was provided to more than 760,000 class members consistent with that certification, (4) despite having previously moved to amend the class definition, plaintiffs never moved to add any date cutoff in the definition, and (5) immense effort has been expended by both the parties and the Court in preparing for a trial based on the class definition as propounded.  The defendant argues that the abandonment of claims by a significant number of class members demonstrates that counsel is inadequate to advocate for the interests of all class members, and that countenancing the eleventh-hour attempt to abridge the class definition would be extremely prejudicial and disruptive.

For their part, the plaintiffs continue to press the point of a cutoff date, reiterating that they initially sought certification of a 23(b)(3) claims class with a date cutoff of April 22, 2016, and that applicable authorities indicate that a 23(b)(3) class should include a time period.  The plaintiffs

also insist the auto park feature is "basically irrelevant" to the claim of defect as it presently has been framed for trial.

It is well settled that "[a] district court 'retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.'" *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1090 (6th Cir. 2016) (quoting *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004)). And "[t]his includes the duty to decertify the class [at a later stage of the proceeding] where the requirements of class certification [are not] met." *Ibid.* However, the party moving for decertification must advance at least some credible facts or authority suggesting that the Court erred in its evaluation of the propriety of class certification. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 619 (6th Cir. 2013) (holding that district court did not err in continuing class certification because defendant had offered no evidence of the purported inadequacy of a challenged class representative). The defendant has not done so here, mainly because the plaintiffs cannot change the class definition at this point in the case.

By any stretch, the plaintiffs' tardy attempt to redefine the scope of the class on the eve of trial is woefully untimely and procedurally improper. Class certification was granted in this case in December 2019, more than two years and eight months ago. The plaintiffs previously moved to amend the class definition, but they never raised the issue of the date cutoff. The scope of the 23(b)(3) *claims* class that was proposed by the plaintiffs is irrelevant at this point, since the Court denied the motion to certify a 23(b)(3) class, and instead certified a 23(c)(4) common issues class. Moreover, class notice has gone out to more than 760,000 absent class members without regard to the date of purchase of the class vehicles. The time for raising any purported issues with the class definition came and went long ago, and the plaintiffs never presented any such concerns to the

-4-

Court until the final pretrial conference.  Any alteration of the class definition at this late date would be profoundly disruptive and prejudicial.

As to the defendant's argument, the grounds for certification of the class have not changed, and no motion to amend the class definition has been filed.  The Court previously denied a motion to decertify the class because the defendant had not established that any of the grounds for certification materially had shifted.  The second motion to decertify the class similarly must be denied.  Class counsel is charged with trying the case that they made.  The class definition is fixed. It has been in place for more than two years, the class has been notified, and trial has begun.  Even if an amendment of the class definition formally was sought at this stage, it certainly would have to be denied.  There is no reason to believe that class counsel cannot ably try the case, even if some of the arguments made suggest that, in hindsight, they may have chosen to reframe their claims somewhat differently than those that will be put before the jury.

The second motion to decertify the class will be denied.

## II.

The plaintiffs ask the Court to include "two questions" in the jury instructions and verdict form, which they frame as follows:

> Question 1: Did the Class Vehicles have a design defect at the time they left FCA's possession that rendered the Class Vehicles unsuitable for the ordinary purpose of providing safe transportation?
>
> If "yes," proceed to Question 2.
>
> Question 2: Do Class Vehicles that contain AutoPark have a design defect that render the Class Vehicles unsuitable for the ordinary purpose of providing safe transportation?

The plaintiffs argue that the proposed questions conform with the Court's recent ruling on the omnibus motions *in limine*, in which the Court stated that the plaintiffs may offer evidence on the efficacy of the auto park feature in eliminating safety risks other than the direct risk of rollaway

accident when a driver exited a vehicle, as described in the S27 recall notice. They contend that these questions will ensure that the trial verdict is dispositive of "foundational issues" and will facilitate post-trial litigation of whether and to what extent various categories of recovery are possible or precluded. The defendant opposes the motion, arguing that it is improper because the defendant "was not allowed to brief" its version of the proposed instructions, and it believes the motion is untimely. It also contends that the request amounts to a backdoor attempt to amend the class definition. The plaintiffs filed a reply.

The defendant's protest that it was not able "to brief" this question is curious; it could have stated its substantive position in response to this motion. Moreover, the trial is underway, and no jury instructions have been finalized. The plaintiffs' request certainly is timely.

However, there are several other reasons for denying the plaintiffs' request. First, as the defendant aptly notes, the motion essentially is a belated attempt to alter the class definition and partition the class into sub-classes of persons who bought or leased their vehicles before and after the auto park recall. As noted above, the attempt to reconfigure the class on the eve of trial is woefully untimely and procedurally improper.

Second, the cases cited by the plaintiffs do not quite stand for the proposition that they advance, which is that they have some legal entitlement to recover benefit-of-the-bargain damages even if it is determined that any safety defect in their vehicles fully was remedied by the recall.

Third, the question that the plaintiffs want the Court to present to the jury is not the question that was certified for trial, which is "whether the monostable gear shift **has** a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation." If the plaintiffs wanted to amend the statement of certified questions, then they should have moved to do so long ago, and it is far too late to do so now. The question presented to the jury at trial is

-6-

the one that was certified, and the one memorialized in the class notice that was sent to more than 760,000 class members.  Changing that now would undermine the legitimacy of the verdict.

The cases cited by the plaintiffs do not disparage that analysis.  The question addressed by the Ninth Circuit in *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019), was whether "in denying Plaintiff's motion for class certification, the district court [erred when it] focused on potential post-purchase value, suggesting that 'the difference between value represented and value received only equals the cost to replace the defective CSC *if* consumers would have deemed the defective part valueless.'"  *Id.* at 820-21.  The panel rejected the district court's conclusion that a benefit-of-the-bargain damages model was inappropriate for class litigation about an allegedly defective clutch mechanism design because it would represent a "double recovery" if plaintiff recovered the cost of replacing the clutch part, where "some value" already was received because the "[p]laintiff's vehicle was driven for approximately 26,629 miles before the original CSC malfunctioned."  *Id.* at 816.  Contrary to the plaintiffs' argument here, *Nguyen* does not suggest that any recall ever occurred, instead noting only that the allegedly defect part was replaced once without charge during the warranty period, and a second repair was made at the plaintiff's expense when the part failed again after the warranty expired.  *Id.* at 815.  There is no indication in that decision that a defect claim was allowed to proceed where a recall fix fully had remedied the alleged malfunction; instead, the court of appeals merely rejected the idea that benefit-of-the-bargain damages are not an appropriate model merely because some buyers may not have experienced problems caused by a defect.    The case simply asks, if it was fully fixed, how could it break again?

The plaintiffs (and the *Nguyen* decision) also cited *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), which held that a proposed damages model was not "arbitrary" by failing to account for subjective valuation of ad placements by different advertisers, observing

-7-

that "[b]ecause restitution under the UCL and FAL measures what the advertiser would have paid at the outset, rather than accounting for what occurred after the purchase, using a ratio from Google's data that adjusts for web page quality is both targeted to remedying the alleged harm and does not turn on individual circumstances," *id.* at 989.  The *Pulaski* decision merely restated well recognized principles of the law on restitution, and there is no suggestion in the ruling that anything like a recall or full repair of an allegedly defective product occurred after the initial purchase.

Moreover, Sixth Circuit cases on point, which were cited in the plaintiffs' non-controlling district court decisions, plainly have held that the complete repair of an alleged defect forecloses recovery on a benefit-of-the-bargain theory.  *E.g.*, *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015) ("The plaintiffs allege a diminished-value claim against TRW under the Louisiana Civil Code based on the existence of the defective component from the moment of purchase.  Nevertheless, the repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based.  *See Cheng v. BMW of N. Am.*, No. 12–09262, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ('As a practical matter, it is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the . . . defect.').  The district court's conclusion that the plaintiffs presented no evidence of diminished value in light of the repair is not clearly erroneous.").

More significant, there are profound due process concerns raised by any variance between the questions to be presented to the jury and those certified for trial, about which the class members were informed and given a chance to opt out.

The Rule 23(b)(3) notice to class members serves a vital due process purpose by supplying notice of the litigation, explaining what rights will be adjudicated in a way that class members can comprehend, and offering them the opportunity to opt out of collective litigation if they wish to reserve their rights.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (holding that

-8-

any class case that seeks to bind absent class members "must provide minimal procedural due process protection," which include a notice of the issues sufficient to allow a putative class member to decide whether to opt out); *see also Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) (holding that "Rule 23(c)(2)(b) requires the class to provide notice of the nature of the action; the definition of the class certified; the class claims, issues, or defenses; information on how a class member can enter an appearance with their lawyer; information on how class members can opt into or out of the settlement; and the binding effect of the settlement agreement") (quotation marks omitted).  Presenting to the jury a question not explicitly certified and for which notice was not served, or varying questions presented in any way without notice to the class, would run afoul of those bedrock principles of due process in collective litigation under Rule 23.  In the absence of proper notice to the class, the result of this trial would do little to advance this multidistrict case, since the verdict would not be binding on absent class members.  *H. L. v. Matheson*, 450 U.S. 398, 433 (1981) ("As the Court observed in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974), the federal class action procedure 'was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit.'  The binding effect of the class action's disposition poses serious due process concerns where the interests of class members are not properly presented.").

The plaintiffs have settled on a theory of liability that the class vehicles sold with monostable shifters were defective when sold, and the post-recall auto park fix did not cure the defect.  That is how they have been presenting their proofs at trial.  Posing questions to the jury which seek to distinguish between pre- and post-recall vehicles, that is, those with and without the auto park feature, will not address this key liability issue in any helpful way, and it likely will inject confusion into an already complex case.

The plaintiffs' motion to submit their proposed questions to the jury will be denied.

-9-

III.

Finally, the plaintiffs have filed a motion seeking clarification of part of the Court's ruling on the omnibus motions *in limine* addressing the introduction of evidence of polystable shifters as subsequent remedial measures.  The defendant had asked for a ruling to exclude evidence or argument "regarding FCA US's decision to use a polystable gear shifter in model years subsequent to the Class Vehicles."  The plaintiffs did not oppose that request, and the Court granted it on the record at the final pretrial conference.  During trial, that issue has been revisited on several occasions, and the Court has made clear that references to the polystable shifter, which was used in vehicles manufactured after the Class Vehicle model years, may not be made to suggest that the shifters in the Class Vehicles were defective, but discussion of generic polystable shifters would be allowable to provide a basis for examining the defendant's choice to incorporate the monostable shifter in Class Vehicles initially designed and subsequently manufactured and sold throughout the relevant period.  The former purpose of the evidence would run afoul of Evidence Rule 407, which prohibits evidence of subsequent remedial measures to prove liability, but the latter purpose does not.

Despite those rulings, the issue continues to reemerge.  It is appropriate, therefore, to clarify the rulings and the bases for them.

"Ordinarily, evidence of a subsequent remedial measure is not admissible at trial to establish a party's negligence or culpable conduct."  *Frye v. CSX Transportation, Inc.*, 933 F.3d 591, 603-04 (6th Cir. 2019) (citing Fed. R. Evid. 407; *Yates v. Ortho-McNeil-Janssen Pharm.*, Inc., 808 F.3d 281, 292 (6th Cir. 2015)).  The rationale underlying that rule is that "the risk of such admission might discourage a party from otherwise remedying a potential safety hazard."  *Id.* at 603-04 (citing *Smith v. United Broth. of Carpenters and Joiners of Am.*, 685 F.2d 164, 169-70 (6th

Cir. 1982) (Keith, J., concurring); Adv. Comm. Notes).  "Whatever harm may have been caused already, and regardless who is at fault for that harm, a party should not be dissuaded from minimizing the risk of future harm for fear that such remedial measures will be used against the party to establish its liability for the originating accident. Put more simply, a good deed should go unpunished."  *Id.* at 604.  Rule 407, however, allows such evidence to be admitted for other purposes.

The plaintiffs have not indicated that they intend to offer evidence or argument about FCA's decision to use a polystable shifter in later model year vehicles, and they have not done so thus far.  Perhaps that is why the defendant did not take the opportunity to raise issues about the admissibility of the 2012 Lextant Study and Craig Rosenberg's opinion on Rule 407 grounds when it filed its omnibus motion *in limine*.

There has been no evidence offered in this case that FCA manufactured vehicles after the Class Vehicles' model years with an electronic polystable shifter.  The most that can be said of the various studies that have been received in evidence is that FCA was examining the manifold reported problems with the monostable shifter and perhaps was assessing whether a change should be made.  And one of the contemplated options was a polystable shifter.

It has been recognized by federal courts that evidence about the *contemplation* of remedial measures is not excluded by Rule 407; only evidence about measures that actually were implemented is subject to the bar.  "[D]espite the appealing logic of the rule 407 policy, the text of that rule only prohibits evidence of subsequent measures, not evidence of a party's analysis of its product," and "[t]he fact that the analysis may often result in remedial measures being taken . . . does not mean that evidence of the analysis may not be admitted[,] . . . because by themselves, post-accident investigations would not make the event 'less likely to occur;' only the actual implemented changes make it so."  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 430 & nn.

9, 10 (5th Cir. 2006) (cleaned up) (collecting cases).  "'It is only if changes are implemented as a result of the tests that the goal of added safety under Fed. Rules Evid., Rule 407 is furthered; and even then, it is only evidence of those changes that is precluded by the rule.'"  *Ibid.* (quoting 2 Weinstein et al., Federal Evidence § 407.06[1] (2d ed. 1997)).

The evidence about the defendant's commissioning of the 2012 Lextant Study, so far as it has been discussed, is not evidence concerning the defendant's "decision to use the polystable shifter."  Instead, the study, and Dr. Rosenberg's discussion about it, or other evaluations of cars using a polystable shifter design, have been and will be confined to illustrating the difference in function between a more "traditional" shifter with a polystable movement (typical of older non-electronic patterns), which is relevant to the expectations of a reasonable consumer about how gear shifters work, regardless of the inner workings of the shifter mechanism.  The plaintiffs do not intend to argue that the *decision to implement* the polystable shifter is evidence that the monostable shifter was defective.  And Dr. Rosenberg did not opine on that score.  To foreclose any lurking concerns about the proper purpose for which the evidence may be used, the Court will give a limiting instruction to the jury.

IV.

There is no basis to decertify the common issues class previously certified for trial.  The plaintiffs' proposed questions to be submitted to the jury will not help determine any liability issue embodied in the certified common issues.  Clarification of the evidentiary ruling concerning evidence of polystable shifters is appropriate.

Accordingly, it is **ORDERED** that the defendant's second motion to decertify the class (ECF No. 822) is **DENIED**.

It is further **ORDERED** that the plaintiffs' motion to include two questions in jury instructions (ECF No. 836) is **DENIED**.

It is further **ORDERED** that the plaintiffs' motion for clarification of the Court's previous ruling on the exclusion of evidence of a polystable shifter installation as a subsequent remedial measure (ECF No. 830) is **GRANTED**.  The plaintiffs may not introduce evidence that the defendant installed polystable shifters in vehicles manufactured after the Class Vehicles' model years to prove that a subsequent remedial measure was taken to remedy a defect.  However, the plaintiffs may introduce evidence of the defendant's evaluation of polystable shifters for the purposes discussed above.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 12, 2022