## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FCA US LLC MONOSTABLE ELECTRONIC GEARSHIFT LITIGATION<br><br>MDL No. 2744 | No. 16-md-02744-DML-DRG<br><br>Honorable David M. Lawson<br>Mag. Judge David R. Grand |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OF UTAH CLASS AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

Plaintiff Trevor Marble, by and through his attorneys, respectfully moves for class certification pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3) on behalf of himself and all others similarly situated and for the appointment of counsel and class representative pursuant to Fed. R. Civ. P. 23(g). The bases for this motion are set forth in the accompanying Brief in Support of Plaintiff's Motion for Class Certification, exhibits thereto, issue trial verdict, deposition testimony, the record in this case, and additional argument the Court may consider. Plaintiff hereby moves this Court for an Order:

1.      Certifying the following Class under Fed. R. Civ. P. 23(b)(3):

All persons or entities who have purchased or leased a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014-2015 Jeep Grand Cherokee equipped with the monostable shifter, where the vehicle was purchased or leased in Utah, but excluding every person who has brought a claim against FCA US LLC alleging recovery for bodily injuries caused by those vehicles under any legal theory.

Plaintiff seeks certification of the Utah Class for a claim of breach of implied warranty of merchantability and violations of the Magnuson-Moss Warranty Act.

2.      Appointing Plaintiff Trevor Marble as the Class Representative for the Utah Class.

3.      Appointing the following leadership structure pursuant to Fed. R. Civ. P. 23(g):

a. E. Powell Miller and Steve W. Berman as Lead Counsel and Chairs of the Plaintiffs' Steering Committee; and

       b.  Joseph Meltzer, Gregory Coleman, Daniel Gustafson, and Robert Shelquist as members of the Plaintiffs' Steering Committee.

4.     Any other appropriate relief in furtherance of class certification.

Pursuant to Local Rule 7.1, the parties met and conferred on October 12, 2022, regarding the legal basis for certifying the proposed class. Defendant does not concur in the relief sought in this Motion.

Dated: October 21, 2022

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

*Plaintiffs' Lead Counsel and Chair of Plaintiffs' Steering Committee*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Christopher R. Pitoun
301 N. Lake Ave, Suite 920

3

Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152
christopherp@hbsslaw.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Joseph H. Meltzer
Tyler S. Graden
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
trgaden@ktmc.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Jason S. Kilene
David A. Goodwin
Canadian Pacific Plaza
120 S. Sixth St., Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
dgoodwin@gustafsongluek.com

**LOCKRIDGE GRINDAL
NAUEN P.L.LP.**
Robert K. Shelquist
Rebecca A. Peterson
100 Washington Ave., Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman
Mark E. Silvey
Adam E. Edwards
William A. Ladnier
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: (865) 247-0080
Fax: (865) 533-0049
gcoleman@milberg.com
msilvey@milberg.com
aedwards@milberg.com
wladnier@milberg.com

*Plaintiffs' Steering Committee*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE: FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT
LITIGATION

       MDL No. 2744

No. 16-md-02744-DML-DRG

Honorable David M. Lawson
Mag. Judge David R. Grand

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OF UTAH CLASS AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

**TABLE OF CONTENTS**

Page

STATEMENT OF ISSUES PRESENTED...............................................................ix

TABLE OF MOST APPROPRIATE AUTHORITIES ............................................x

TABLE OF AUTHORITIES ...................................................................................xi

I. INTRODUCTION ..................................................................................1

II. FACTS COMMON TO ALL MEMBERS OF THE CLASS...............1

III. APPLICABLE LEGAL STANDARDS ................................................6

IV. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF
RULE 23.................................................................................................7

    A. The Proposed Class...................................................................7

    B. The Proposed Class Satisfies the Requirements of Rule 23(a). .7

        1. The members of the proposed Class are so numerous that
joinder is impracticable. ..................................................7

        2. FCA's common course of conduct to the Class satisfies
the commonality requirement..........................................8

        3. Plaintiff's claims are typical of those of the Class because
the claims arise from a common course of conduct and
are pled under common legal theories.............................9

        4. Plaintiff and his counsel will adequately represent the
Class's interests. ...........................................................10

V. THE COURT SHOULD CERTIFY THE PROPOSED DAMAGES
CLASS UNDER RULE 23(B)(3) .......................................................12

    A. The Proposed Class Satisfies Rule 23(b)(3). ...........................12

        1. Common questions of fact predominate over individual
issues..............................................................................13

        2. Common questions of law predominate over individual
issues..............................................................................14

        (a)     Implied Warranty Claim.......................................14

        (b)     Magnuson-Moss Warranty Act Claim .................16

    3.     Common questions of law and fact concerning damages predominate over questions affecting only individual members of the Classes. ................................................17

        (a)     Benefit-of-the-Bargain – Conjoint Analysis ........17

        (b)     Benefit-of-the-Bargain – Cost of Repair..............20

    4.     Class treatment of this case is manageable and superior to individual litigation.......................................................22

VI.    CONCLUSION ..................................................................24

## STATEMENT OF ISSUES PRESENTED

1.      Should this action be certified as a class action pursuant to Fed. R. Civ. P. 23(a) where the requirements of numerosity, commonality, typicality, and adequacy of representation are satisfied?

2.      Should this action be certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) where common issues of law and fact predominate under the Utah breach of implied warranty and Magnuson-Moss Warranty Act claims and a class action is a superior method to adjudicate the controversy?

3.      Should the Court appoint Plaintiff Trevor Marble as Class Representative since his claims are typical of those of the Class members, and he is committed to vigorously prosecuting this litigation?

4.      Should the Court appoint E. Powell Miller and Steve W. Berman as Lead Counsel and Chairs of the Plaintiffs' Steering Committee and Joe Meltzer, Gregory Coleman, Daniel Gustafson, and Robert Shelquist as members of the Plaintiffs' Steering Committee since such counsel has extensive complex class action experience and will fairly and adequately represent the interests of the Class?

PLAINTIFF'S ANSWER: YES

## <u>TABLE OF MOST APPROPRIATE AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)
*Bechtel v. Fitness Equipment Services, LLC*,
  339 F.R.D. 462 (S.D. Ohio 2021)
*Bennett v. CMH Homes, Inc.*,
  770 F.3d 511 (6th Cir. 2014)
*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)
*Elkins v. Mylans Labs, Inc.*,
  2013 WL 3224599 (D. Utah June 25, 2013)
*Fallick v. Nationwide Mut. Ins. Co*.,
  162 F.3d 410 (6th Cir. 1998)
*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013)
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*.,
  722 F.3d 838 (6th Cir. 2013)
*Rikos v. P&G Co*.,
  799 F.3d 497 (6th Cir. 2015)
*Weidman v. Ford Motor Co.*,
  2022 WL 1071289 (E.D. Mich. Apr. 8, 2022)
*Winzler v. Toyota Motor Sales USA, Inc.*,
  2010 WL 3064364 (D. Utah Aug. 3, 2010)
*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012)

**Statutes**

15 U.S.C. § 2301
Utah Code § 70A-2-314

**Rules**

Fed. R. Civ. P. 23(a)
Fed. R. Civ. P. 23(b)

# TABLE OF AUTHORITIES

**Page**

## Cases

*Afro Am. Patrolmen's League v. Duck*,
  503 F.2d 294 (6th Cir. 1974) ...................................................................7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................... *passim*

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ...................................................................7

*Bacon v. Honda of Am. Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) ...................................................................8

*Bechtel v. Fitness Equipment Services, LLC*,
  339 F.R.D. 462 (S.D. Ohio 2021)...................................................................17

*Bennett v. CMH Homes, Inc.*,
  770 F.3d 511 (6th Cir. 2014) ...................................................................16

*Calloway v. Caraco Pharm. Lab'ys., Ltd.*,
  287 F.R.D. 402 (E.D. Mich. 2012)...................................................................22

*Carlson v. Gen. Motors Corp.*,
  883 F.2d 287 (4th Cir. 1989) ...................................................................15

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...................................................................17

*Davidson v. Henkel Corp.*,
  302 F.R.D. 427 (E.D. Mich. 2014)...................................................................9

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995)...................................................................9

*Elkins v. Mylans Labs, Inc.*,
  2013 WL 3224599 (D. Utah June 25, 2013) ...................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ..................................................................................14

*Falco v. Nissan N. Am.*, *Inc.*,
  2016 WL 1327474 (C.D. Cal. Apr. 5, 2016).................................. 14, 21

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ...................................................................9

*Faltermeier v. FCA US LLC*,
  2016 WL 4771100 (W.D. Mo. Sept. 13, 2016)......................................21

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .......................................................10

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) .................................................................10

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016)................................. 19, 21

*In re Myford Touch Consumer Litig.*,
  2016 WL 7734558 (N.D. Cal. Sept. 14, 2016)............................... 14, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. Nov. 30, 2010).................................21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) .................................................... 7, 17, 22

*Keegan v. Am. Honda Motor Co., Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012).........................................................13

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) .................................................................17

*Lloyd v. Gen. Motors Corp.*,
  397 Md. 108 (2007).................................................................................21

*Martin v. Behr Dayton Thermal Prods. LLC*,
  896 F.3d 405 (6th Cir. 2018) .................................................................22

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ...............................................................21

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)..........................................................13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................6

*Potter v. Blue Cross Blue Shield*,
   2011 WL 9378789 (E.D. Mich. July 14, 2011)....................................12

*Rikos v. P&G Co.*,
   799 F.3d 497 (6th Cir. 2015) ................................................................8

*Rockey v. Courtesy Motors, Inc.*,
   199 F.R.D. 578 (W.D. Mich. 2001).......................................................8

*Rosen v. J.M. Auto Inc.*,
   270 F.R.D. 675 (S.D. Fla. 2009) .........................................................13

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*,
   821 F.3d 992 (8th Cir. 2016) ..............................................................13

*Senter v. General Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ................................................................7

*Sloan v. General Motors LLC*,
   2020 WL 1955643 (N.D. Cal. Apr. 23, 2020)................................ 13, 21

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ..............................................................10

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ................................................................9

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) .................................................................17

*Tershakovec v. Ford Motor Co.*,
   2021 WL 2700347 (S.D. Fla. July 1, 2021) .......................................16

xiii

*Thompson v. Paasche*,
    950 F.2d 306 (6th Cir. 1991) ...................................................................19

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ................................................................10

*Victorino v. FCA US LLC*,
    2019 WL 5268670 (S.D. Cal. Oct. 17, 2019).....................................16

*Ward v. Dixie Nat. Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ................................................................20

*Weidman v. Ford Motor Co.*,
    2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ....................................21

*Winzler v. Toyota Motor Sales USA, Inc.*,
    2010 WL 3064364 (D. Utah Aug. 3, 2010).........................................15

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ....................................................... 10, 24

## Statutes

15 U.S.C. § 2301 ..........................................................................................1, 10

Utah Code § 70A-2-314..................................................................................1, 10

Utah Code § 70A-2-714(2) ................................................................................17

## Rules

Fed. R. Civ. P. 23(a).......................................................................... 1, 7, 9, 10

Fed. R. Civ. P. 23(b)(3).................................................................... *passim*

# I.  INTRODUCTION

FCA manufactured and sold or leased, in the State of Utah, at least 7,322 Class Vehicles with a monostable gear shifter that has a design defect that renders the Class Vehicles unsuitable for the ordinary use of providing safe transportation. The jury in the certified issues trial concluded that the design defect exists in these Class Vehicles under Utah law. Thus, certification of a Rule 23(b)(3) class for breach of implied warranty of merchantability (pursuant to Utah Code § 70A-2-314) and violations of the Magnuson-Moss Warranty Act ("MMWA") (pursuant to 15 U.S.C. § 2301) is appropriate.

Common evidence will prove FCA's liability as to the proposed Utah Class Representative, Plaintiff Trevor Marble ("Plaintiff" for purposes of this motion), and to every Class member under Utah law. Simply put, FCA manufactured and sold or leased the Class Vehicles, Plaintiff and the Class members all purchased or leased a Class Vehicle, and the Class Vehicles all suffer from a unifying design defect. Since all required elements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied, the Court should certify the proposed Class.

## II. FACTS COMMON TO ALL MEMBERS OF THE CLASS

After more than six years of litigation, multiple motions to dismiss, a motion for class certification, a motion for summary judgment, and a Rule 23(c)(4) issues trial, the Court is undoubtedly well-versed in the facts of this case. Thus, Plaintiff

incorporates the facts as stated in Plaintiffs' original motion for class certification (ECF No. 286), the Court's opinion on class certification (ECF No. 492), and the Court's opinion on summary judgment (ECF No. 751) and will only provide a brief summary below.

FCA sold or leased more than 800,000 Class Vehicles nationwide with the same monostable electronic gear shifter supplied by ZF Friedrichshaffen ("ZF"). *See* ECF No. 832, PageID.36440-36443; ECF No. 492, PageID.21385. As FCA's own studies confirm, the monostable shifter is defective because it inhibits reliable gear selection and provides insufficient tactile or audible feedback to allow drivers to readily and confidently shift to their intended gear. FCA conducted numerous human machine interface ("HMI") studies to provide feedback and data on the usability of the monostable shifters. *See, e.g.*, Ex. 1, October 2010 Lextant Study; Ex. 2, February 2, 2011 Email from Ben Dow; Ex. 3, February 8, 2011 E-Shift HMI Detent Test Results; Ex. 4, April 18, 2012 E-Shifter Presentation Slides; Ex. 5, August 2012 Lextant Study; Ex. 6, August 29, 2012 Presentation on HMI Results. As is clear from these studies' results, the monostable shifter consistently performed the worst of all shifters tested, committing multiple times as many errors as the alternatives. *Id.* The studies also showed that the errors with the shifter were "mechanical errors"— meaning that the usability of the shifter did not increase over time as participants knew how to use the shifter but the design itself caused the errors. *See* Ex. 1, page 8.

As was made clear during the issues trial (and in the Court's opinion on summary judgment), FCA had alternative shifters that it could have included in the Class Vehicles, including, specifically, the gated mechanical shifter or the electronic rotary shifter. *See* ECF No. 751, PageID.33561-33568. In fact, in October 2010, FCA decided to use the rotary knob in the Class Vehicles before abandoning it shortly thereafter due to a minor increase in cost. Ex. 7, Oct. 6, 2010 Product Committee Meeting Minutes. Instead, FCA chose the monostable shifter which leads a driver to experience 1 overshoot or undershoot error every 7.4 shifts (a 13.5% error rate)—10 times the number of errors the Jaguar rotary and push button alternatives experienced. Ex. 2.

FCA received negative feedback from its own employees, the media, and consumers immediately. For instance, on July 26, 2011, an FCA employee who took early delivery of a 2012 Charger voiced significant concerns regarding the shifter's functionality. Ex. 8, July 26, 2011 Email from Joe Chryczyk. The employee and eight other people who drove his car had difficulty shifting into gears and "were afraid to take their foot off the brake pedal because they were unsure the vehicle was actually in park." *Id.* The employee noted his concern that FCA was "about to send a vehicle into production that may not appear to function properly." *Id.* Notwithstanding this well-founded concern, FCA proceeded with production. The JD Power Initial Quality Survey Ratings reinforced this concern with data that the shifter is defective, with the

3

monostable shifter in the Class Vehicles scoring significantly worse than the other alternatives, including 4½ times worse than the version of the monostable shifter in the Audi A8. Ex. 9, June 29, 2012 E-Shifter Direction and JD Power Results.

In August 2012, one year after the Chrysler 300s and Dodge Chargers were first sold with the monostable shifter, *but long before the MY 2014-15 Grand Cherokees even went into production*, FCA conducted another clinic with its outside consultant, Lextant, where the monostable shifter in a Class Vehicle was compared with alternative shifters. Ex. 5. FCA's managing engineer Jay Tenbrink, who was "Design Responsible" and "Tech Lead" for FCA's shift systems, attended the multi-day clinic and directly observed test participants' operation of the shifters. Mr. Tenbrink bluntly warned his senior-level manager:

> The results of the mono-stable shifter are much worse than I expected. It really is a shame that we are putting this thing in cars. Anyone who speaks well of that shifter loses credibility in my book. We should get that thing out of our cars ASAP.

Ex. 10, August 3, 2012 Email from Jay Tenbrink. Notwithstanding this stern warning from its "Design Responsible" shifter engineer, FCA continued to manufacture Chrysler 300s and Dodge Chargers with the defective monostable shifter through MY 2014 and also included it in the subsequent production of hundreds-of-thousands of MY 2014-15 Grand Cherokees.

On January 18, 2013, a car reviewer concluded that the monostable shifter in a 2013 Dodge Charger was not "intuitive" and "was downright dangerous." Ex. 11,

MotorAuthority Review. He reported numerous problems when shifting and warned that "when parking, you have to visually check that you actually selected Park, because there's a good chance you didn't do it right and the car is in Neutral and rolling down a hill while you're reaching for your phone." *Id*. As he was "battling" with the shifter, he "had a few near misses, but luckily no car-to-car contact." *Id*. The text of the article was circulated within FCA. FCA's Steve Williams, who was responsible for the design development of the Chrysler 300 and Dodge Charger, received the review and remarked: "*The issues he describes with the shifter are all known and well documented*."

Plaintiffs' expert, Dr. Craig Rosenberg, who is an engineer with a Ph.D. in Human Factors and has 30 years of human factors design experience, evaluated the monostable shifter by conducting an on-road driving study with 31 participants. His conclusions aligned with FCA's own studies, the feedback FCA received from drivers, and the real-world experiences of Class members. He concluded that the monostable shifter is unintuitive, difficult to operate, and does not provide adequate tactile or visual feedback:

> As such, drivers are likely to have excessive unintended gear selection errors, spend more time shifting, and allocate more attention to verify that they are in their intended gear. This has serious safety implications, as unintended gear selection errors can result in vehicle rollaways that can be dangerous to the driver, passengers, and other nearby people and property. Additionally, the increased attention required to shift gears can reduce attention away from the roadway and result in reduced situational

awareness . . . Based on my study, I can conclude that the Monostable gear shifter is defective and a defective shifter has safety implications.

Ex. 12, October 22, 2018 Expert Report of Dr. Craig Rosenberg, at i-ii.

This design defect is present in all Class Vehicles and is a significant risk to the safety of drivers, occupants, and the general public. For the reasons explained further herein, this motion for class certification should be granted so that purchasers and lessees from the State of Utah may proceed with their legal claims against FCA.

## III.   APPLICABLE LEGAL STANDARDS

Class actions are designed to "achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Id*. at 617. Class actions thus give voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

At the class certification stage, the Court conducts a "rigorous analysis" to determine whether the prerequisites of Rule 23 are met, but the Supreme Court "admonishes district courts to consider at the class certification stage only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." *In re*

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

## IV.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

### A. The Proposed Class.

Plaintiff proposes certification of the following Damages class pursuant to Fed. R. Civ. P. 23(b)(3):

> All persons or entities who have purchased or leased a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014-2015 Jeep Grand Cherokee equipped with the monostable shifter, where the vehicle was purchased or leased in Utah, but excluding every person who has brought a claim against FCA US LLC alleging recovery for bodily injuries caused by those vehicles under any legal theory.

Plaintiff seeks certification of the Utah Class for a claim of breach of implied warranty of merchantability and violations of the Magnuson-Moss Warranty Act.

### B. The Proposed Class Satisfies the Requirements of Rule 23(a).

#### 1. *The members of the proposed Class are so numerous that joinder is impracticable.*

Rule 23(a) (1) requires that the class be so numerous that joinder of all class members is "impracticable." That said, no specific number is required. *Senter v. General Motors Corp.*, 532 F.2d 511, 522-23 (6th Cir. 1976). Although the number could be few, *e.g.*, *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (class of 35 employees), the "sheer number of potential litigants in a class,

especially if it is more than several hundred, can be the only factor needed to satisfy numerosity." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Here, using IHS Polk data previously provided to the settlement administrator, at least 7,322 Class Vehicles were sold or leased in the State of Utah, an amount which easily satisfies numerosity. Ex. 13, Dec. of Lisl Miller at ¶ 4. Further, since the Proposed Class is defined by reference to an objective purchase or lease of a particular vehicle, Class members are identifiable through FCA's records and sources otherwise available to FCA, including Department of Motor Vehicles registration data. *See Rikos v. P&G Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (approving identification of class members through review of records and data). As was apparent when notice was issued to more than 500,000 Class members pursuant to Rule 23(c)(4) certification, the proposed Class members are ascertainable.

### 2. *FCA's common course of conduct to the Class satisfies the commonality requirement.*

"Commonality simply means that 'there are questions of law or fact common to the class.'" ECF No. 492, PageID.21391 (quoting Fed. R. Civ. P. 23(a)(2)). "The standard is not that demanding. Rule 23(a) simply requires a common question of law or fact." *Id.* (citing *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 583 (W.D. Mich. 2001)). Importantly, the "interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose

resolution will affect all or a significant number of the putative class members."
*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998).

The Court previously certified an issues class finding that Plaintiffs' allegations of a common defect satisfied Rule 23(a)(2), since "even a single common question will do." ECF No. 492, PageID.21392 (citations omitted). This common question carries over to the proposed Utah class, which brings claims for breach of implied warranty (Utah Code § 70A-2-314) and violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301).

### 3. Plaintiff's claims are typical of those of the proposed Class because the claims arise from a common course of conduct and are pled under common legal theories.

Rule 23(a)(3) typicality requires that a "sufficient relationship exists between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." ECF No. 492, PageID.21392 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). This test is also not very demanding, *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 438 (E.D. Mich. 2014), and "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Since the claims of the Class Representative in the instant case "are identical to claims that could be raised by absent class members," the plaintiff's interests are "aligned with those of the represented group." ECF No. 492,

PageID.21392 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

Plaintiff's claims arise from conduct and under legal theories common to the class: FCA's manufacture and sale/lease of defective vehicles violated Utah Code § 70A-2-314 (breach of implied warranty) and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301). The issues trial verdict concluded that the Class Vehicles sold/leased in Utah are defective. Because Plaintiff's and each Class member's claims arise from the same course of FCA's conduct and under the same legal theories, Plaintiff satisfies the typicality requirement.

### 4. Plaintiff and his counsel will adequately represent the proposed Class's interests.

Per Rule 23(a)(4), Plaintiff must: (i) have common interests with the Class; and (ii) vigorously prosecute the interests of the Class through qualified counsel. ECF No. 492, PageID.21392 (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013)); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). "[O]nly when attacks on the credibility of [Plaintiffs] are so sharp as to jeopardize the interests of [the Class] should such attacks render [them] inadequate." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Where the interests of a class representative is not "antagonistic to those of the Class," courts find that a class representative is adequate. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 494 (E.D. Mich. 2008).

Adequacy is satisfied here. *First*, there are no potential intra-class conflicts and no hint of antagonism between Plaintiff's claims and those of Class members. Plaintiff is a member of the Class he seeks to represent, has the same defective monostable shifter as other Class members, and asserts the same claim for damages. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) (citing *Amchem*, 521 U.S. at 625-27). Plaintiff seeks to hold FCA responsible for the harm to the class. *See* Ex. 14, Deposition Excerpts of Plaintiff Marble, at 181:25-182:3 ("Q: Do you have an understanding of what you are seeking in this lawsuit? A: Yes. Compensation for all owners of the vehicles we have spoken about for a defect on the shifter. Q: And that defect being that the shifter is not intuitive? A: Correct.").

*Second*, Plaintiff has been, and continues to be, committed to exercising good faith and sound judgment in vigorously prosecuting this litigation. Plaintiff has already devoted *substantial* time producing documentary discovery, responding to discovery requests, traveling to Michigan and sitting for a lengthy deposition, presenting his vehicle for inspection by FCA, and retaining and working with Class Counsel—all in the interests of the Class. Plaintiff has been dedicated to prosecuting this case over the past six years and FCA raised no challenge to Plaintiff serving as a class representative (which the Court appointed him to be) when Plaintiffs first moved for class certification in 2019. *See* ECF No. 286.

Further, Class Counsel are highly qualified, experienced, and able to prosecute this litigation on behalf of the Classes. *See Potter v. Blue Cross Blue Shield*, 2011 WL 9378789, at *7 (E.D. Mich. July 14, 2011) (adequacy met by "experienced attorneys who have in the past successfully litigated the very same claims at issue here"). On December 9, 2019, the Court appointed Class Counsel when certifying the Rule 23(c)(4) class. ECF No. 492. Class Counsel has prosecuted this case for the past six years, including through the conclusion of the two-week issues trial in September 2022.

## V. THE COURT SHOULD CERTIFY THE PROPOSED DAMAGES CLASS UNDER RULE 23(B)(3)

### A. The Proposed Class Satisfies Rule 23(b)(3).

Plaintiff satisfies Rule 23(b)(3) by showing that: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, Plaintiff alleges breach of the implied warranty of merchantability under Utah law and violations of the Magnuson-Moss Warranty Act. The issues trial jury concluded that the Class Vehicles have a design defect under Utah law. Thus, Plaintiff's and Class members' claims "are subject to generalized proof" and "the same evidence will suffice for each member to make a *prima facie* showing[.]" ECF No. 492, PageID.21396 (citing *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821

F.3d 992, 998 (8th Cir. 2016)). Their claims are optimally suited for adjudication and resolution on a class-wide basis.

### 1. *Common questions of fact predominate over individual issues.*

Courts often find that common factual issues predominate in automobile class action cases involving vehicles that perform below the industry standard. *See, e.g.*, *Daffin*, 456 F.3d at 554; *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 532–34 (C.D. Cal. 2012) (finding predominance based on common evidence of defect, the defect's impact on vehicle safety, Honda's knowledge, and Honda's disclosures to customers); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596–97 (C.D. Cal. 2008) (predominating common issues included defendant's knowledge of defect, its duty to disclose, whether failure to disclose was material, and whether conduct violated consumer protection statutes); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681–82 (S.D. Fla. 2009) (finding the "critical issue of whether the [airbag system] was defective is common to all putative class members" and "predominates over the individual issues"). In consumer cases like this one—where an aggregated, streamlined adjudication of FCA's liability for the monostable shifter defect would be far more efficient than thousands of individual proceedings involving the same defect and course of conduct—predominance is "readily met." *See Amchem*, 521 U.S. at 625; *see also Sloan v. General Motors LLC*, 2020 WL 1955643, at *50-51 (N.D. Cal. Apr. 23, 2020) (collecting cases and certifying multiple state classes related to vehicle

defect); *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at \*13-14 (N.D. Cal. Sept. 14, 2016) (same); *Falco v. Nissan N. Am.*, *Inc.*, 2016 WL 1327474, at \*7-11 (C.D. Cal. Apr. 5, 2016).

The common factual questions—including the existence of the defect—will predominate at trial and, standing alone, are sufficient to certify the class. *See* Rule 23(b)(3) (questions of law *or* fact must predominate); *Daffin*, 458 F.3d at 554 (affirming district court's certification of class based solely on common factual questions).

### 2. *Common questions of law predominate over individual issues.*

The inquiry into whether common questions of law predominate begins with the elements of the underlying cause of action. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here, Plaintiff brings claims for breach of implied warranty and violations of the Magnuson-Moss Warranty Act. These claims will be subject to generalized proof and Plaintiff will rely on common evidence to prove the two claims being prosecuted by the Utah class.

### (a) Implied Warranty Claim

To establish a breach of implied warranty of merchantability under Utah law, Plaintiff must show that "(1) Defendant[] sold a good, (2) which the [Plaintiff] bought, and (3) which did not meet one of the standards of merchantability—passes without objection; is of fair average quality; is fit for ordinary purposes; is of even kind,

quality and quantity; is adequately contained, packaged and labeled; and conforms to promises on the packaging." *Elkins v. Mylans Labs, Inc.*, 2013 WL 3224599, at *5 (D. Utah June 25, 2013). In the motor vehicle context, "[t]he implied warranty of merchantability is simply a guarantee that [the vehicle] will operate in a 'safe condition' and 'substantially free of defects.'" *Winzler v. Toyota Motor Sales USA, Inc.*, 2010 WL 3064364, at *3 (D. Utah Aug. 3, 2010) (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)).

These common questions—and the common answers they will generate—predominate over any individualized issue. In fact, as is explained more thoroughly in Plaintiffs' motion for summary judgment, these common questions have already been answered. **First**, Defendant has stipulated to the fact that it sold and leased the Class Vehicles in Utah. *See* ECF No. 832, PageID.36443. **Second**, Plaintiff Marble purchased his Class Vehicle on January 7, 2014. ECF No. 182, ¶ 117. **Third**, the issue trial jury concluded that the Class Vehicles have a "design defect that renders the Class Vehicles unsuitable for the ordinary use of providing safe transportation" under Utah law. ECF No. 853, PageID.36913. The certified issue answered by the jury "is a typical foundational element for all of the pleaded implied warranty and product liability claims," including under Utah law. ECF No. 492, PageID.21405 (citing *Winzler*, 2010 WL 3064364, at *3).

15

Numerous other courts have certified classes for litigation of implied warranty claims for automobiles. *See In re MyFord Touch*, 2016 WL 7734558, at *25 (certifying implied warranty claims under, *inter alia*, California, Massachusetts, New Jersey, and North Carolina laws, because if "each MFT version is similarly flawed, it follows that each would breach (or not) the IWM in materially the same way"); *see also Tershakovec v. Ford Motor Co*., 2021 WL 2700347, at *21 (S.D. Fla. July 1, 2021) (certifying implied warranty claims under laws of California and Texas); *Victorino v. FCA US LLC*, 2019 WL 5268670, at *12 (S.D. Cal. Oct. 17, 2019) (common issues predominate on IWM claim).

### (b) Magnuson-Moss Warranty Act Claim

For the same reasons that certification is proper for Plaintiff's implied warranty claim, certification also is proper for Plaintiff's claim under the Magnuson–Moss Warranty Act. The MMWA "provides a federal cause of action for a consumer" alleging harm due to breach of an implied warranty. *Bennett v. CMH Homes, Inc.*, 770 F.3d 511, 512 n.1 (6th Cir. 2014). As this Court made clear in denying FCA's motion to dismiss Plaintiff's MMWA claim, Plaintiff has adequately made out a claim for breach of implied warranty under Utah law, and his claim under the MMWA will "stand or fall" with the state law claims. *See* ECF No. 173, PageID.64. Accordingly, upon certifying Plaintiff's implied warranty claim, this Court should certify Plaintiff's MMWA claim as well. *See Bechtel v. Fitness Equipment Services, LLC*, 339 F.R.D.

462, 486 (S.D. Ohio 2021) (certifying state classes asserting MMWA and state law warranty claims).

### 3. Common questions of law and fact concerning damages predominate over questions affecting only individual members of the Classes.

At the class certification stage, plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability," *In re Whirlpool*, 722 F.3d at 860 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)), and that damages are capable of measurement on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The existence of individualized damages issues does not defeat predominance when damages can be modeled on a measure of common proof. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015). Here, Plaintiff has proposed two acceptable class-wide damage methods. Both methods conform with the breach of implied warranty claim, which states that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted[.]" Utah Code § 70A-2-714(2).

#### (a) Benefit-of-the-Bargain – Conjoint Analysis

The first method of calculating class-wide damages is the conjoint analysis as set forth in the report prepared by Dr. Justine Hastings. Ex. 15, May 30, 2019 Expert Report of Dr. Justine S. Hastings, Ph.D. In the May 22, 2019 order denying FCA's motion to exclude Dr. Hastings' testimony (ECF No. 423), the Court explained that

"[t]he defendant has not identified any significant way in which Dr. Hastings' proposed analysis deviates from the usual principles by which conjoint analysis surveys are designed." ECF No. 423, PageID.20736-20737 (citing cases where conjoint analysis was utilized for estimating point-of-sale damages). Moreover, conjoint surveys "have been approved as a means to estimate overpayment by car buyers in class action cases involving allegedly defective automobile control designs." *Id.*, PageID.20738. "Dr. Hastings has supported her testimony with sufficient authority to proffer an opinion that common damages were sustained and can be estimated by reliable and accepted methods." *Id.*, PageID.20739. Dr. Hastings, through the conjoint survey, reached the conclusion that "in the but-for world in which buyers knew about the alleged defects before they purchased or leased the Class Vehicles, but-for prices of the Class Vehicles would have been at least 20.8% lower than actual prices for both SUVs and sedans." ECF No. 827, PageID.36246.

Plaintiffs replaced Dr. Hastings with Dr. J. Michael Dennis and Michael Williams (who adopted Dr. Hastings' methodology and opinions in toto) after Dr. Hastings could no longer proceed in her role. FCA thereafter filed a motion to exclude the testimony of Dr. Dennis, which the Court denied on August 31, 2022 (ECF No. 827). FCA's motion to exclude Dr. Dennis "focus[ed] entirely on – and explicitly [was] directed to – alleged defects in 'Dr. Hastings' methods.'" ECF No. 827, PageID.36245. But the Court determined that "defendant's criticisms against the

survey design manifestly are directed to the weight and not the admissibility of the opinion." *Id.*, PageID.36247.

The Court has previously found that Plaintiff adequately pled economic loss in the form of loss of the benefit-of-the-bargain, explaining: "All of the plaintiffs adequately have alleged that they were damaged as a result of buying cars with a dangerously unreliable gear shift design, which resulted in, *inter alia,* a loss of economic value of the cars at the time of purchase, along with other incidental and consequential losses based on the defendant's failed attempts to repair the defect." ECF No. 173, PageID.5291. The "benefit-of-the-bargain defect theory compensates a plaintiff for the fact that he or she overpaid, at the time of sale, for a defective vehicle." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *10 (S.D.N.Y. July 15, 2016). The law in the Sixth Circuit recognizes benefit-of-the-bargain damages and measures those damages at the time of sale. *See*, *e.g.*, *Thompson v. Paasche*, 950 F.2d 306, 314 (6th Cir. 1991) (applying Michigan fraud law).

Consistent with this precedent, Dr. Hastings' report lays out how generally accepted economic principles can be used to reliably measure common impact here. Ex. 15 at ¶¶ 9, 11, 13-17. The survey evaluated the participants' willingness to pay ("WTP") for a Class Vehicle if they had known, at the point of sale, about the defect at issue in this case. *Id.* at ¶ 11. This allows for an estimation of the price of Class Vehicles in the "but-for world" in which buyers know about the defective shifter

before purchasing or leasing a Class Vehicle. *Id.* at ¶¶ 11, 59, Table 1. This model translates Plaintiffs' "legal theory of the harmful event into an analysis of the economic impact of that event," which is all that is required at class certification. *Comcast*, 133 S. Ct. at 1435.

### (b) Benefit-of-the-Bargain – Cost of Repair

Additionally, Plaintiff proposes an alternative class-wide damages model presented by Plaintiff's expert, Murat Okcuoglu. This model examines the technical feasibility and cost of retrofitting the Class Vehicle with polystable shifters. *See* Ex. 16, May 30, 2019 Expert Report of Murat Okcuoglu. This analysis yields the same result for each Class member—a retrofit to each Class Vehicle, which Mr. Okcuoglu opined "is both economically and technically feasible." *Id.* at p. 16. Thus, the value of the consumer's overpayment from the Defect can be estimated through the cost of permanently repairing the Defect. *Id.*; *see also Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (finding predominance where "the formula for damages was identical for all class members").

In cases such as this one, Plaintiff is entitled to recover benefit-of-the-bargain damages based on the cost of repairing the Defect. Such damages are available for an automotive safety defect:

> Plaintiffs essentially allege that they contracted for safe vehicles that
> start and stop upon proper application of the accelerator and brake
> pedals. Plaintiffs allegedly received defective vehicles subject to
> dangerous SUA events, meaning that Plaintiffs' vehicles sometimes do

20

not start and stop as promised. Accepting these allegations as true, they are sufficient to fall under the "benefit of the bargain" rubric.

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1165-1166 (C.D. Cal. Nov. 30, 2010). Benefit-of-the-bargain damages are available to all purchasers of the defective vehicles who had suffered harm by overpaying for the vehicles, and not limited to just those vehicles that had "manifested the [] defect." *Id.* at 1165.

In automotive defect cases, courts have repeatedly recognized that the cost to repair the defect will properly measure the consumers' benefit-of-the-bargain damages because it restores the consumers to the position they would have occupied but for the defect. *See, e.g.*, *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *4-5 (E.D. Mich. Apr. 8, 2022) (certifying class and approving of cost-of-repair damages theory); *Sloan*, 2020 WL 1955643, at *47-48; *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019); *Falco*, 2016 WL 1327474, at *12; *Faltermeier v. FCA US LLC*, 2016 WL 4771100, at *8 (W.D. Mo. Sept. 13, 2016); *In re GM Ignition Switch*, 2016 WL 3920353, at *31; *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007).

In this case, Plaintiff's expert has opined that the estimated cost to FCA to retrofit the defective monostable shifter with the polystable shifter would be $680.40 per vehicle. Ex. 16, at p. 28. This per vehicle cost could be applied, on a class-wide basis, to the number of vehicles in the proposed Utah class. Using this cost of repair as a measure of damages is appropriate here, given that it is a consistent model for each

Class member and is supported by both economic analysis and the relevant caselaw. And because this cost of repair damages framework is tied to Plaintiff's theory of class-wide liability and can be shown through common, class-wide evidence, Plaintiff's proposed damages model satisfies the predominance requirement of Rule 23(b)(3).

### 4. *Class treatment of this case is manageable and superior to individual litigation.*

"The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012). The purpose of the superiority inquiry is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615; *see also In re Whirlpool*, 722 F.3d at 859. A finding of predominance implies that class treatment is superior. *See Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020). Class treatment of Plaintiff's and Class members' claims is superior here because "[r]esolving the issues in one fell swoop would conserve the resources of both the court and the parties." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 416 (6th Cir. 2018).

To satisfy the Rule 23(b) superiority requirement, the court must weigh four factors including: (1) the interests of the class members in individually controlling

separate actions; (2) the extent and nature of the litigation already begun by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties in managing a class action. *In re Flint Water Cases*, 558 F. Supp. 3d 459, 513 (E.D. Mich. 2021) (citing Fed. R. Civ. P. 23(b)(3)).

By either Dr. Hastings's or Mr. Okcuoglu's calculations, the value of individual claims is simply too low to incentivize most Class members to litigate their claims against a sophisticated manufacturer like FCA. Similarly, the resources necessary to litigate the issues trial are far beyond the means of any individual litigant. Continued litigation in this matter would only heighten the difficulty for an individual to continue to litigate. Concentrating this action in this Court has continued to benefit the parties and continues to allow for efficiencies that would not be possible absent consolidation.

One essential lesson of the issues trial is that the Parties and this Court now know that this case is manageable as a class action. The trial required the jury to apply the definitions of "design defect" from nineteen different states, apply multiple burdens of proof, and follow detailed instructions. If nothing else, the jury's finding that the monostable shifter has a design defect under the laws of Utah indicates that a jury can in fact apply the common evidence presented to the laws of a state and make appropriate findings. The Class proposed here involves a single state's law and two similar claims. In fact, as stated above, Plaintiff will be filing a motion for summary

judgment as to liability of these two claims. If the Court grants that motion, the only remaining issue for the jury to decide will be damages—a narrow trial that would likely last only a couple of days.

Reinventing the wheel for separate individual claims would not provide a more efficient use of the time and resources of the Parties and the Court, nor would it lead to a just outcome for Plaintiffs and Class members who have been harmed. *See Young*, 693 F.3d at 545; *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Thus, Class treatment is superior compared to multiple litigations involving substantially similar claims.

## VI.    CONCLUSION

Plaintiff satisfies all the elements of Rule 23(a) and (b)(3). Thus, Plaintiff respectfully requests that the Court grant this motion.

Dated: October 21, 2022     */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

*Plaintiffs' Lead Counsel and Chair of Plaintiffs'*
*Steering Committee*

**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
Steve W. Berman
Sean R. Matt
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Christopher R. Pitoun
301 N. Lake Ave, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152
christopherp@hbsslaw.com

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer
Tyler S. Graden
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
trgaden@ktmc.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Jason S. Kilene
David A. Goodwin
Canadian Pacific Plaza
120 S. Sixth St., Suite 2600
Minneapolis, MN 55402

Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
dgoodwin@gustafsongluek.com

**LOCKRIDGE GRINDAL
NAUEN P.L.LP.**
Robert K. Shelquist
Rebecca A. Peterson
100 Washington Ave., Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
Gregory F. Coleman
Mark E. Silvey
Adam E. Edwards
William A. Ladnier
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: (865) 247-0080
Fax: (865) 533-0049
gcoleman@milberg.com
msilvey@milberg.com
aedwards@milberg.com
wladnier@milberg.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/ E. Powell Miller
E. Powell Miller