# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:  FCA US LLC MONOSTABLE
ELECTRONIC GEARSHIFT
LITIGATION

MDL No. 2744

_____/

Case No: 16-md-02744
Honorable David M. Lawson
Magistrate Judge David R. Grand

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(3) OR (c)(4) AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................i

TABLE OF AUTHORITIES ................................................................ iii

COUNTERSTATEMENT OF ISSUES PRESENTED........................................ vi

MOST CONTROLLING AUTHORITIES ............................................ vii

INTRODUCTION ...............................................................................1

BACKGROUND .................................................................................2

    A.    Plaintiffs Move To Certify Consumer Protection Classes..........2

    B.    The Court Denies The Motion To Certify The Consumer Protection Classes But Certifies An Issues Class. ......................4

    C.    Class Members Are Notified That They Will Be Bound By The Results Of The Issues Trial.................................................5

    D.    The Jury Finds For FCA US On All Issues Except One. ...........6

ARGUMENT .....................................................................................7

I.    The Motion Is Untimely And Barred By The Law-Of-The-Case Doctrine. ....................................................................................7

    A.    The Motion Is An Untimely Request For Reconsideration. ......8

    B.    The Motion Is Untimely Under The Scheduling Order.............9

    C.    The Motion Is Barred By The Law-Of-The-Case Doctrine. ......9

II.    The Jury's Findings Defeat The Claims Plaintiffs Seek To Certify. ...........11

    A.    The "Defect" Findings Defeat The Consumer Protection Claims, And Plaintiffs Are Judicially Estopped From Arguing Otherwise.....................................................................11

    B.    The "No Concealment" Finding Also Defeats The Consumer Protection Claims.......................................................16

i

III.   The Court Should Deny The Motion To Certify A Rule 23(b)(3) Class For Many Of The Same Reasons As Last Time..............................................17

      A.   Plaintiffs Have Not Established Commonality Under Rule 23(a)...................................................................................17

      B.   The Proposed Class Representatives Are Inadequate...............20

      C.   Individual Issues Would Dominate Any Common Ones. ........21

IV.   The AutoPark Recall Mooted The Claims Of The Proposed Class.............23

V.   The Court Should Not Certify Another Rule 23(c)(4) Issues Class. ...........24

VI.   Certifying A New Class Would Create Grave Constitutional Problems. ....24

CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Ocwen Loan Serv., LLC,*
    321 F.R.D. 125 (E.D. Pa. 2017) ........................................................................22

*Andersen v. Atl. Recording Corp.,*
    2010 U.S. Dist. LEXIS 44168 (D. Or. May 4, 2010).........................................17

*Arizona v. California,*
    460 U.S. 605 (1983) ..........................................................................................10

*Bench Billboard Co. v. City of Covington,*
    547 F. App'x 695 (6th Cir. 2013).......................................................................10

*Cole v. GMC,*
    484 F.3d 717 (5th Cir. 2007) .............................................................................18

*Corder v. Ford Motor Co.,*
    283 F.R.D. 337 (W.D. Ky. 2012) .......................................................................22

*Cranpark, Inc. v. Rogers Grp., Inc.,*
    821 F.3d 723 (6th Cir. 2016) .............................................................................15

*DiPonio Constr. Co. v. Int'l Union of Bricklayers & Allied Craftworkers,*
    739 F. Supp. 2d 986 (E.D. Mich. 2010) ...............................................................8

*Green v. Liberty Ins. Corp.,*
    2016 U.S. Dist. LEXIS 42602 (E.D. Mich. Mar. 30, 2016)...............................18

*Guinn v. Praxair, Inc.,*
    2019 U.S. Dist. LEXIS 11924 (E.D. Mich. Jan. 25, 2019) ................................13

*In re Dry Max Pampers Litig.,*
    724 F.3d 713 (6th Cir. 2013) .............................................................................20

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,*
    2012 U.S. Dist. LEXIS 13887 (D.N.J. Feb. 6, 2012).........................................22

*In re Jackson Nat'l Life Ins. Co. Premium Litig. v. Jackson Nat'l Life Ins. Co.,*
    209 F.R.D. 134 (W.D. Mich. 2002) ...................................................................10

*In re McCormick & Co.*,
  422 F. Supp. 3d 194 (D.D.C. 2019) .................................................................22

*Jadian, Inc. v. Nat'l Quality Assurance USA, Inc.*,
  2020 U.S. Dist. LEXIS 101325 (W.D. Mich. June 10, 2020).............................13

*Junod v. NWP Servs. Co.*,
  2016 U.S. Dist. LEXIS 195195 (C.D. Cal. July 18, 2016) .................................15

*Krueger v. Wyeth, Inc.*,
  2008 U.S. Dist. LEXIS 12236 (S.D. Cal. Feb. 19, 2008) ...................................20

*Mays v. TVA*,
  274 F.R.D. 614 (E.D. Tenn. 2011) .....................................................................21

*McDaniel v. Anheuser–Busch, Inc.*,
  987 F.2d 298 (5th Cir. 1993) ..............................................................................25

*McNulty v. Arctic Glacier, Inc.*,
  2016 U.S. Dist. LEXIS 14826 (E.D. Mich. Feb. 8, 2016) ..................................10

*Mirando v. United States Dep't of Treasury*,
  766 F.3d 540 (6th Cir. 2014) ..............................................................................13

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................13

*Oscar v. Bmw of N. Am., LLC*,
  2012 U.S. Dist. LEXIS 84922 (S.D.N.Y. June 19, 2012)...................................23

*Pucci v. Somers*,
  2021 U.S. Dist. LEXIS 195781 (E.D. Mich. Oct. 12, 2021) ..............................14

*Robinson v. GE Co.*,
  2016 U.S. Dist. LEXIS 50166 (E.D. Mich. Apr. 14, 2016) ................................21

*Rockey v. Courtesy Motors, Inc.*,
  199 F.R.D. 578 (W.D. Mich. 2001) ....................................................................22

*Sanchez v. Wal Mart Stores, Inc.*,
  2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009)...................................20

*Sater v. Chrysler Grp., LLC*,
    2016 U.S. Dist. LEXIS 178421 (C.D. Cal. Oct. 25, 2016) ..................................24

*Sharp v. FCA United States LLC*,
    2022 U.S. Dist. LEXIS 194163 (E.D. Mich. Oct. 25, 2022) ..............................23

*Shreve v. Sears, Roebuck & Co.*,
    166 F. Supp. 2d 378 (D. Md. 2001) ....................................................................15

*Smith v. Mount Pleasant Pub. Schs.*,
    298 F. Supp. 2d 636 (E.D. Mich. 2003) ................................................................8

*Williams v. Warner Music Grp. Corp.*,
    2021 U.S. Dist. LEXIS 255093 (C.D. Cal. Dec. 14, 2021)..................................10

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
    681 F.3d 1208 (10th Cir. 2012) ...........................................................................23

## Statutes

15 U.S.C. § 2301 ............................................................................................................2

Iowa Code § 714H.2(5) ................................................................................................19

Iowa Code § 714H.2(4) ................................................................................................21

Nev. Rev. Stat. § 598.0915-0925 .................................................................................19

Ohio Rev. Code § 1345.01(A) ......................................................................................21

## Rules

E.D. Mich. Local Rule 7.1(h)(2) ....................................................................................9

Fed. R. Civ. P. 16(b)(4)...................................................................................................9

Fed. R. Civ. P. 23(b) ............................................................................................. *passim*

Fed. R. Civ. P. 23(c)........................................................................................... 1, 4, 24

## Treatises

18B Charles A. Wright et al., *Federal Practice & Procedure* § 4478 (2d ed.
    2022)....................................................................................................................10

## <u>COUNTERSTATEMENT OF ISSUES PRESENTED</u>

1. Whether any extraordinary circumstances exist to reconsider the Court's Order dated December 9, 2019 (ECF No. 492), denying Plaintiffs' motion to certify consumer protection classes under Federal Rule of Civil Procedure 23(b)(3).

2. If so, whether any consumer protection claims in Colorado, Florida, Illinois, Iowa, Massachusetts, Maryland, Michigan, Nevada, New Jersey, Ohio, Oregon, Texas, or Washington remain viable after the jury findings from the issues class trial.

3. If so, whether the Court should certify a class action for the consumer protection claims under Rule 23(b)(3) or, in the alternative, certify a new issues class under Rule 23(c)(4).

The Court should answer NO to all questions.

## <u>MOST CONTROLLING AUTHORITIES</u>

- *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009)

- *In re Jackson Nat'l Life Ins. Co. Premium Litig. v. Jackson Nat'l Life Ins. Co.*, 209 F.R.D. 134 (W.D. Mich. 2002)

- Federal Rule of Civil Procedure 23

- Local Rule 7.1(h)(2)

- Opinion and Order Granting in Part and Denying in Part Plaintiffs' Motion to Certify Class Action, Certifying Issues Classes, and Setting Deadlines for Submission of Proposed Notice (Dec. 9, 2019), ECF No. 492, PageID.21384

## INTRODUCTION

Nearly three years ago, the Court denied Plaintiffs' motion to certify various classes under Rule 23(b)(3), including three "Consumer Protection Classes."  The Court instead certified an issues class under Rule 23(c)(4), reasoning that "[e]ach of the various legal theories of recovery . . . require resolution of at least one, if not all, of the [certified] issues."  Certification Order at 20, ECF No. 492, PageID.21403. One of those issues is whether the monostable shifter has a defect, which "is the dominant issue common to *all* cases and causes of action."  *Id.* at 26, PageID.21409 (emphasis added).  Another issue is whether FCA US concealed the alleged defect, which is an issue common to *all* consumer protection—or "consumer fraud"— claims.  *Id.* at 30-31, PageID.21413-21414.

Plaintiffs never moved the Court to reconsider the denial of their Rule 23(b)(3) motion or their request to certify the "Consumer Protection Classes."  Instead, Plaintiffs acceded to the issues class and sent all class members a notice stating that, if the member did not opt out of the class, "you and FCA US will be bound by the jury or Court's answers to the [certified] questions."  Class Notice, ECF No. 650-1, PageID.29378.  The jury ultimately found "no defect" in all States except Utah and also found that FCA US did not conceal the alleged defect.

Plaintiffs now seek a do-over.  Despite years of litigation and a jury verdict resolving the common issues, Plaintiffs move to certify essentially the same

1

Rule 23(b)(3) "consumer protection" class the Court refused to certify three years ago—only this time, Plaintiffs include thirteen States instead of fourteen.  Plaintiffs do not explain why the Court should reconsider its Order denying the first Rule 23(b)(3) motion.  Nor do they offer a plausible explanation for why the jury verdict from the issues trial did not defeat the consumer protection claims Plaintiffs are trying to certify (again).  And even if Plaintiffs could avoid those problems, their new proposed class would not satisfy Rule 23(b)(3) for many of the same reasons the Court explained years ago.  The Court should deny the motion.

## BACKGROUND

### A.   Plaintiffs Move To Certify Consumer Protection Classes.

The Second Amended Consolidated Master Class Action Complaint ("SACMC") asserts claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and the laws of twenty-one States.  *See* ECF No. 182, PageID.5428. The state-law claims include breach of warranty, fraudulent concealment, unjust enrichment, and violations of consumer protection statutes.

The theory of liability underlying all claims is that vehicles with the monostable shifter are defective even though FCA US introduced an "AutoPark" feature in April 2016.  According to the SACMC, AutoPark "has been ineffective" and "has diminished the functionality of the Class Vehicles."  SACMC ¶ 20,

2

PageID.5442; *see also id.* at ¶¶ 202-12; Pltfs. Opp. to Mot. to Dismiss at 1, ECF No. 200, PageID.6351 ("FCA's claimed fix does not work.").

In January 2019, Plaintiffs moved to certify a nationwide class and also certify either 16 or 23 subclasses under Rules 23(b)(2) and (b)(3). The subclasses included "Consumer Protection Classes on behalf of consumers in 14 jurisdictions," which Plaintiffs grouped into three subclasses of States that "employ[ ] substantially similar—if not identical—consumer fraud standards." First Mot. to Certify at 20, ECF No. 286, PageID.7647. Plaintiffs proposed to limit the class period to individuals who purchased or leased a class vehicle before the AutoPark recall—i.e., before April 22, 2016. *See* First Mot. to Certify at 1-2, PageID.7608-7609.

Plaintiffs' motion argued that vehicles with the monostable shifter "suffer a unifying design defect" and that the consumer protection claims "will be resolved with proof common to all Plaintiffs and the members of each Class." First Mot. to Certify at 1, PageID.7628. Plaintiffs identified the "common issues" for resolution to include whether the monostable shifter is defective, whether FCA "concealed the defect," and "whether FCA's omissions were material," *id.* at 10-11, PageID.7637-7638. "The key evidence necessary to establish [these] claims is common to Plaintiffs and all members of the Classes—they all seek to prove, among other things, that the Class Vehicles have a common defect." *Id.* at 16, PageID.7643.

The motion to certify acknowledged that FCA US issued a AutoPark recall in 2016 to cure the alleged defect, but Plaintiffs maintained that "the vehicles are still defective."  Mot. to Certify 1, PageID.7628; *see also id.* at 2, PageID.7629 ("[T]he monostable shifter *is* defective." (emphasis added)).

### B.   The Court Denies The Motion To Certify The Consumer Protection Classes But Certifies An Issues Class.

The Court denied the motion to certify a class under Rule 23(b)(2) or (3).  *See* Certification Order, ECF No. 492, PageID.21384.  Because Plaintiffs had not shown "the predominance of common issues over individual issues," a Rule 23(b)(3) class could not be certified.  *Id.*  Further, Plaintiffs' effort to certify the "Consumer Protection Classes" failed because the proposed classes run along "arbitrary lines." *Id.* at 17-18, PageID.21400-21401.   "Rather than a stratagem for efficiently advancing the entire litigation, the proposed cross-state scheme appears to be simply an artifice to minimize the complications and to sidestep or obfuscate the significant obstacles to certification of classes for the plaintiffs in several jurisdictions."  *Id.* at 18, PageID.21401.  "[T]he plaintiffs have scarcely approached, let alone carried, their burden" to certify a Rule 23(b)(3) class for the consumer protection claims.  *Id.*

The Court ultimately certified an issues class under Rule 23(c)(4), reasoning that "there are several discrete issues that can be litigated on a collective basis . . . [to] efficiently advance the litigation."  Certification Order at 1, PageID.21384.  The three issues the Court certified—defect, concealment, and materiality—were

4

"common" ones Plaintiffs identified in their first motion to certify.  *See id.* at 19, PageID.21402.  According to the Court, all claims in the SACMC "require resolution of at least one, if not all, of the[se] issues," and so resolving them "in one fell swoop would conserve the resources of both the court and the parties."   *Id.* at 20, PageID.21403 (quotation marks omitted).

Two weeks after the Court certified the issues class, Plaintiffs moved to amend the class definition to replace the phrase "who currently own or lease a class vehicle" with the phrase "who have purchased or leased a class vehicle."   ECF No. 496, PageID.21426.  That was the sole request in the motion to amend.  Plaintiffs did not ask the Court to reconsider the denial of their motion to certify under Rule 23(b)(3).  Nor did Plaintiffs ask the Court to impose a cutoff date for the class definition.  The Court granted the motion.  *See* ECF No. 510.

C.     **Class Members Are Notified That They Will Be Bound By The Results Of The Issues Trial.**

With the Court's approval, *see* ECF No. 538, class notice went to all class members in the 21 certified States, *see* ECF No. 650-1, PageID.29373.  The notice did not identify a cutoff date for the purchase or lease of a class vehicle, and it regurgitated Plaintiffs' argument that "a recall repair implemented by FCA US to install an 'autopark' feature is insufficient."  ECF No. 650-1, Page.ID 29382.

The notice listed the three certified questions and explained that, if the class member did not opt out, "you and FCA US will be bound by the jury or Court's

5

answers to the [certified] questions." *Id.* at PageID.29378; *see also id.* at PageID.29381 (similar). "Once the jury or Judge answers the certified questions, everyone in the Class will be bound by those findings." *Id.* at PageID.29382.

### D.   The Jury Finds For FCA US On All Issues Except One.

A few days before trial, Plaintiffs moved to split the "defect" questions on the verdict form. *See* ECF No. 836, PageID.36589. The motion proposed asking the jury whether the class vehicles *had* a defect "at the time they left FCA's possession" and also asking whether the vehicles *have* a defect post-AutoPark. *See id.*

The Court denied the motion, calling it "a belated attempt to alter the class definition and partition the class into sub-classes." ECF No. 844, PageID.36645. This "attempt to reconfigure the class on the eve of trial is woefully untimely and procedurally improper." *Id.* "If the plaintiffs wanted to amend the statement of certified questions, then they should have moved to do so long ago." *Id.*

The Court instructed the jury on the defect standards for the laws in 19 of the 21 certified States. It also instructed the jury on concealment under both the preponderance of the evidence standard (for the consumer-protection claims) and the clear and convincing evidence standard (for the fraudulent-concealment claims). *See* Day 9 Trial Tr. 46-48, ECF No. 872-2, PageID.38538-38539.

The Court gave Plaintiffs an opportunity to object to the jury instructions. Plaintiffs objected only to not splitting the "defect" questions to ask about the pre-

and post-AutoPark periods.  *See id.*   Plaintiffs did not object to the Court's instructions on the standard of defect for any State.

The jury unanimously found no defect for all States except Utah and also found that FCA US did not conceal the alleged defect.  *See* ECF No. 853.  Having found no concealment, the jury did not reach the issue of materiality.  *Id.*

## **ARGUMENT**

Plaintiffs move to certify a consumer protection class consisting of a cohort of individuals from the issues class.  The Court should deny the motion for four main reasons.  First, the Court already denied a Rule 23(b)(3) motion to certify a class for the consumer protection claims, and Plaintiffs offer no reason to reconsider that ruling.  Second, a jury already found no defect and no concealment for *every* State that Plaintiffs seek to include in the new class, leaving no viable consumer protection claims for the Court to certify.  Third, Plaintiffs have not cured the problems that led the Court to deny their first Rule 23(b)(3) motion; in fact, those problems are now worse.  Fourth, certifying the class would create substantial constitutional problems.[1]

## I.    **The Motion Is Untimely And Barred By The Law-Of-The-Case Doctrine.**

The Court should deny the motion for three independent procedural reasons: (i) the motion is an untimely motion for reconsideration of the 2019 Certification

---

[1] Some language in the motion suggests that Plaintiffs seek to certify *all* claims asserted under the thirteen States, but their arguments about Rule 23(a) and (b) address only the consumer protection claims, and the motion concludes by asking for certification of only those claims.  *See* Mot. 25.

Order; (ii) the motion is untimely under the Court's scheduling orders; and (iii) the motion is barred by the law-of-the-case doctrine.

### A.   The Motion Is An Untimely Request For Reconsideration.

Although Plaintiffs style their motion as a "Motion for Class Certification," it is actually a motion for reconsideration of the Order denying their first motion to certify.  That first motion sought to certify various Rule 23(b)(3) classes, including consumer protection classes for 14 jurisdictions split into 3 subclasses.  In this new motion, Plaintiffs once again move under Rule 23(b)(3) to certify a class for their consumer protection claims.  Other than proposing a class with 13 jurisdictions instead of 14, Plaintiffs seek the same relief based on the same arguments the Court already considered and rejected three years ago.

Insofar as "any new arguments are raised, Plaintiff[s] ha[ve] failed to demonstrate why those arguments could not have been previously offered." *DiPonio Constr. Co. v. Int'l Union of Bricklayers & Allied Craftworkers*, 739 F. Supp. 2d 986, 1004 (E.D. Mich. 2010).  "[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mount Pleasant Pub. Schs.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (Lawson, J.).  If Plaintiffs wanted the Court to consider certifying the 13-State consumer protection class they now propose, they could and should have made that proposal years ago.

8

For this reason alone, the Court should deny this motion as an untimely and improper motion for reconsideration under Local Rule 7.1(h)(2).  The fourteen-day window for Plaintiffs to seek reconsideration has long expired, and they offer no justification for reconsideration, such as a mistake in that order, an intervening change of law, or some factual development.  *See id.*

**B.    The Motion Is Untimely Under The Scheduling Order.**

The motion is also untimely because, under the Court's Pretrial Order No. 15, the deadline for Plaintiffs to file any motion to certify was January 31, 2019.  *See* ECF No. 250, PageID.6645.  Plaintiffs have neither sought leave to file their motion beyond that date nor articulated the requisite "good cause" for amending that deadline.  Fed. R. Civ. P. 16(b)(4).  Although the Court asked the parties to file post-trial motions to address how the jury's "verdict may advance the ultimate determination of the merits," ECF No. 855, PageID.36922, Plaintiffs have hardly done that.  They mostly ignore the jury's verdict and, instead, ask the Court to rewind the clock and consider again whether to certify a Rule 23(b)(3) class for the consumer protection claims.

**C.    The Motion Is Barred By The Law-Of-The-Case Doctrine.**

The motion is also barred by the law-of-the-case doctrine, which "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."  18B Charles A. Wright et al., *Federal*

*Practice &Procedure* § 4478 (2022).  Under this doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  In other words, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *McNulty v. Arctic Glacier, Inc.*, 2016 U.S. Dist. LEXIS 14826, at *56 (E.D. Mich. Feb. 8, 2016) (quotation marks omitted).  Absent "'exceptional circumstances,'" the law-of-the-case doctrine precludes reconsideration of a previously decided issue.  *Bench Billboard Co. v. City of Covington*, 547 F. App'x 695, 705-06 (6th Cir. 2013) (quoting *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006)).

The Court already refused to certify a Rule 23(b)(3) class for the consumer protection claims, and Plaintiffs have "made no showing, nor even argued, that there are extraordinary circumstances warranting reconsideration of the Court's prior ruling." *In re Jackson Nat'l Life Ins. Co. Premium Litig. v. Jackson Nat'l Life Ins. Co.*, 209 F.R.D. 134 (W.D. Mich. 2002) (applying law of the case to deny a motion to certify filed years after the denial of a previous motion to certify).  "Indeed, when confronting renewed motions for class certification previously denied, courts uniformly apply the stringent law of the case standard." *Williams v. Warner Music Grp. Corp.*, 2021 U.S. Dist. LEXIS 255093, at *11 (C.D. Cal. Dec. 14, 2021) (quotation marks omitted).

The Court should follow that uniform law here and reject Plaintiffs' attempt for a "do-over" at certifying a Rule 23(b)(3) class.

## II.   **The Jury's Findings Defeat The Claims Plaintiffs Seek To Certify.**

Even if this motion were procedurally proper, the Court still should deny it for the independent reason that the consumer protection claims Plaintiffs seek to certify are no longer viable.  *See generally* Mot. for Judgment, ECF No. 872.

### A.   **The "Defect" Findings Defeat The Consumer Protection Claims, And Plaintiffs Are Judicially Estopped From Arguing Otherwise.**

"Although the plaintiffs have alleged a variety of legal theories under the laws of several different states, *recovery under all of them demands proof of a defect in the vehicles as a result of the shifters*."  Certification Order at 9, PageID.21392 (emphasis added).  "The discrete question of whether a defect exists is the dominant issue common to *all* cases and causes of action."  *Id.* at PageID.21409 (emphasis added); *see also* Order Denying First Mot. to Decertify at 2, ECF No. 745 (similar).

In their current motion, Plaintiffs seek to certify a class of certain persons who purchased or leased their vehicles in Colorado, Florida, Illinois, Iowa, Maryland, Massachusetts, Michigan, Nevada, New Jersey, Ohio, Oregon, Texas, or Washington.  However, the jury at the issues trial found "no defect" under the laws of *all* those States.  *See* ECF No. 853.  That finding binds the members of the proposed class—all of whom are members of the issues class—and defeats all of the consumer protection claims in the proposed class.

11

Plaintiffs suggest the issue of defect was *not* common to all claims and that the jury's defect findings were limited to the "breach of implied warranty claims." Mot. 1. So, in Plaintiffs' view, the parties spent years litigating an issue that pertained to only one type of claim, leaving most of the other claims for another day. That is wrong. As detailed above, Plaintiffs repeatedly represented—and the Court repeatedly recognized—that "defect" is an issue common to *all* claims. That was the premise of Plaintiffs' first motion to certify, the Court's Certification Order, and the issues trial.

For example, at the class certification hearing, Plaintiffs argued that whether a defect exists is "the heart of . . . *all* of our claims." Class Cert. Hr'g Tr. 6-7, ECF No. 436, PageID.20793-20794 (emphasis added). Plaintiffs told the Court that resolving the defect issue will "advance[ ] the litigation for *each* of th[eir] claims." *Id.* (emphasis added). According to Plaintiffs, "the common issue of defect is central to warranty and really *all of our claims*," including the "Consumer Protection Act claims." *Id.* at 14, PageID.20801 (emphasis added).

The Court agreed, found that whether a "defect" exists is a common question for all claims, and certified the question. The parties then litigated for years based on the premise that "defect" was a common issue for all claims, and the jury largely resolved that issue against Plaintiffs. Yet now Plaintiffs argue that "defect" was *not* an issue common to the consumer protection claims.

A party that loses at trial "cannot make a fundamental change in theory . . . in post-trial briefing." *Jadian, Inc. v. Nat'l Quality Assurance USA, Inc*., 2020 U.S. Dist. LEXIS 101325, at *66 (W.D. Mich. June 10, 2020).  Allowing Plaintiffs "to make this fundamental transformation" years into this litigation and to develop a "new theory of liability" after trial "would significantly prejudice" FCA US by re-opening litigation and re-starting proceedings on a path that closed years ago.  *Guinn v. Praxair, Inc*., 2019 U.S. Dist. LEXIS 11924, at *8 (E.D. Mich. Jan. 25, 2019).

Judicial estoppel was designed for this type of situation.  The doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Mirando v. United States Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (quotation marks omitted).  The doctrine generally applies when (1) a party's later position is "clearly inconsistent with its earlier position;" (2) "the party has succeeded in persuading a court to accept that party's earlier position;" and (3) allowing the party to assert an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (quotation marks omitted).

Those factors are met here.  First, Plaintiffs' current position that the jury's "defect" findings do not apply to the consumer protection claims is clearly

inconsistent with their previous position that "defect" is a "common issue" that lies at the "heart" of "each" claim.  Second, Plaintiffs convinced the Court to accept that position, rule that "defect" is a common issue for all claims, and certify the issues class.  Third, allowing Plaintiffs to switch positions now would give them an unfair advantage of repackaging their claims and starting over years into this litigation and after a trial.  Because Plaintiffs successfully took the position that "defect" is a question common to all claims, they cannot now take a contrary position "simply because [their] interests have changed." *Pucci v. Somers*, 2021 U.S. Dist. LEXIS 195781, at *6-7 (E.D. Mich. Oct. 12, 2021) (Lawson, J.) (quotation marks omitted).

Plaintiffs make two other arguments in an attempt to rescue their consumer protection claims from the jury findings.

First, they suggest their consumer protection claims are based on an alleged "usability flaw," not a "defect," and so the jury's "no defect" finding is inapplicable to these claims.  *See, e.g.*, Mot. 2.  But again, Plaintiffs for years maintained that the alleged defect lies at the heart of their consumer protection claims.  Also, the SACMC uses "defect" and "Defective Shifter" when making allegations about the consumer protection claims; the phrase "usability flaw" appears *nowhere* in the SACMC.  Nor does that phrase appear in any case from any court in any State. "Class certification is not a time for asserting new legal theories that were not pleaded in the complaint." *Junod v. NWP Servs. Co.*, 2016 U.S. Dist. LEXIS

195195, at *12 (C.D. Cal. July 18, 2016) (citing cases refusing to certify a class for a theory "not found in the operative complaint") (quotation marks omitted).

Second, Plaintiffs suggest the "no defect" jury findings do not bar the consumer protection claims because those claims are supposedly governed by "a different legal standard" than the one the jury applied at the issues trial. Mot. 1; *see also id.* at 19. But three years ago, Plaintiffs argued that "each Class member makes *similar (if not identical) legal arguments* to prove FCA's liability." Mot. to Certify 12, PageID.7639 (emphasis added). Further, Plaintiffs do not identify the supposed differences between the "defect" standards the jury applied at trial and the "defect" standards (whatever they might be) that apply to the consumer protection claims. If Plaintiffs had done this work, they would have discovered widespread agreement that a defect is a defect, no matter the claim. *See, e.g.*, *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 418 (D. Md. 2001).

Insofar as Plaintiffs are suggesting the jury should have been instructed differently on the meaning of "defect" because different standards apply to the different claims, that argument comes too late. Plaintiffs never raised that type of objection to the jury instructions, forfeiting their ability to complain now. *See, e.g.*, *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 736 (6th Cir. 2016). If Plaintiffs thought the instructions were wrong, were not asking a common question, or would not answer the "defect" question for a claim, they should have said so long ago.

15

**B.** **The "No Concealment" Finding Also Defeats The Consumer Protection Claims.**

Even if the jury's "no defect" findings do not defeat the consumer protection claims that Plaintiffs seek to certify, the jury's "no concealment" finding would.

All consumer protection claims in the SACMC rest on the theory that FCA US concealed the alleged defect. *See, e.g.*, SACMC ¶¶ 398, 461, 815. As Plaintiffs told the Court at the class certification hearing, concealment is "a common issue" for the consumer-protection claims. ECF No. 436, PageID.20797. And as Plaintiffs explain now, their consumer protection claims "are *all* grounded in allegations that FCA failed to disclose materials facts." Mot. 8 (emphasis added); *see also id.* at 23 ("The failure to disclose . . . is a common element in all jurisdictions at issue.").

The jury, however, found that FCA US did not conceal the alleged defect. That finding defeats all of the consumer protection claims. None is left to certify.

Plaintiffs argue that the jury verdict resolved the "concealment" question for only the Utah claims because the jury found a "defect" under only Utah law. *See* Mot. 5 ("[Q]uestion 2 was only answered in the negative as to Utah."). Not so. Unlike the "defect" findings, the "concealment" findings were not State-specific. The jurors were was asked whether FCA US concealed the alleged defect. They found that FCA US did not. That Plaintiffs *also* failed to prove defect in most States does not make the "concealment" finding inapplicable to those States. And, of course, FCA US could not have concealed a "defect" the jury found does not exist.

16

## III.    The Court Should Deny The Motion To Certify A Rule 23(b)(3) Class For Many Of The Same Reasons As Last Time.

Even if this motion did not fail for the many reasons described above, the Court should deny it for the same reasons the Court articulated when denying Plaintiffs' first motion to certify.

### A.    Plaintiffs Have Not Established Commonality Under Rule 23(a).

As explained above, no common questions remain to satisfy Rule 23(a)(2) because the Court already certified them and the jury already resolved them.  With one exception, all of the common questions Plaintiffs identify in their motion already have been tried to verdict: (i) whether the class vehicles have "common usability flaws" (i.e., defect); (ii) "whether FCA was aware of and concealed usability flaws" (i.e., concealment); (iii) "whether FCA's omissions were material" (i.e., materiality); and (iv) whether FCA violated consumer protection statutes.  Mot. 7. The jury already resolved questions (i), (ii), and (iii).

As to question (iv), Plaintiffs have not shown that "whether FCA violated consumer protection statutes" is a common question; "in fact, they have barely attempted to take it up."  Certification Order 15, PageID.21398.  Plaintiffs "merely recite the elements of their claims . . . without an analysis of how those elements are interpreted or analyzed by the various states"—a cursory approach that "overstat[es] the similarities of various state laws."  *Andersen v. Atl. Recording Corp.*, 2010 U.S. Dist. LEXIS 44168, at *24 (D. Or. May 4, 2010).  Further, simply asking with a

"broad brush" whether FCA US violated a statute does not identify a common legal or factual question sufficient to satisfy Rule 23(a)(2).  *Green v. Liberty Ins. Corp.*, 2016 U.S. Dist. LEXIS 42602, at *9-10 (E.D. Mich. Mar. 30, 2016).

Plaintiffs' cursory approach also "glosse[s] over the glaring substantive legal conflicts among the applicable laws of each jurisdiction."  *Cole v. GMC*, 484 F.3d 717, 725-26 (5th Cir. 2007).  Plaintiffs recognized some of these conflicts in their first motion to certify.  In that motion, Plaintiffs split the 14 States into 3 subclasses to account for differences among the consumer protection statutes and *excluded* Colorado and Oregon from *all* subclasses because the laws of those States are unique.  *See* First Mot. to Certify at 22, PageID.7649.  Yet now, Plaintiffs lump together 13 States into *one* class and *include* Colorado and Oregon.  *See* Mot. 1.

The authorities Plaintiffs cite confirm a lack of commonality.  As one example, they claim the consumer protection statutes in all 13 States generally require a showing of 5 elements: "(a) deception, (b) materiality, (c) intent to induce reliance, (d) causation, and (e) damages."  Mot. 10-11.  But the authorities Plaintiffs quote from Florida and Maryland identify only 3 elements, and those 3 elements are not the same in those 2 States.  *See id.* at 11-12.

The types of prohibited acts also vary among the 13 States.  Plaintiffs' authorities show this too.  According to Plaintiffs, Illinois requires proof of "deception;" Massachusetts requires proof of "an unfair method of competition or

18

. . . unfair deceptive act or practice;" Nevada requires "an act of consumer fraud;" and Oregon requires "an unlawful trade practice."  Mot. 11-13 (quotation marks omitted).  The prohibitions are facially different.

Nor is the word "deception" defined the same way in States that use that term. For example, Iowa defines "deception" as "an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts."  Iowa Code § 714H.2(5).  Nevada, by contrast, defines "deceptive trade practice" in ten statutory provisions that provide various definitions and dozens of examples.  *See* Nev. Rev. Stat. §§ 598.0915-0925.

Moreover, some States have unique prima facie elements.  For example, Washington requires the deceptive act or practice to occur "in trade or commerce." Mot. 14 (quotation marks omitted).  Colorado requires an act "in the course of the [defendant's] business, vocation, or occupation."  *Id.* at 11 (quotation marks omitted).  And Ohio requires a "misrepresentation, deceptive act or omission that impacted [the plaintiff's] decision to purchase." *Id.* at 13 (quotation marks omitted).

The list could go on, but the point is this:  Plaintiffs have not established that the black-letter elements of their consumer protection claims are the same in the 13 States, are interpreted the same way in the 13 States, or can be proven with the same evidence in the 13 States.  They have not established a common issue.

19

**B.**     <u>**The Proposed Class Representatives Are Inadequate.**</u>

The proposed class also fails because the proposed class representatives are not adequate under Rule 23(a)(4).  To satisfy this element, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)).

Plaintiffs cannot make that showing because the proposed class representatives are the same ones the Court appointed for the issues class.  Those representatives have proven unwilling or unable to prosecute the interests of *all* class members: the representatives have abandoned some of those members in the hopes of obtaining a new certification order of a smaller cohort of individuals from the issues class who, according to Plaintiffs, have the strongest consumer protection claims—namely, those individuals who purchased or leased before April 22, 2016. *See* Mot. 1-2.  Not only that, but the proposed class does not include *any* issues-class members from Arizona, North Carolina, Pennsylvania, or Wyoming.

This type of "strategic claim-splitting decision create[s] a conflict between" the named plaintiffs and those of the issues class, rendering the named plaintiffs "inadequate class representative[s]."  *Sanchez v. Wal Mart Stores, Inc.*, 2009 U.S. Dist. LEXIS 48428, at *10 (E.D. Cal. May 28, 2009); *see also Krueger v. Wyeth, Inc.*, 2008 U.S. Dist. LEXIS 12236, at *7 (S.D. Cal. Feb. 19, 2008) (collecting cases

recognizing that "claim splitting constitutes a compelling reason to deny class certification); *Mays v. TVA*, 274 F.R.D. 614, 622-24 (E.D. Tenn. 2011).

In short, the proposed class representatives have proven themselves to be inadequate.  The Court should not give them a second chance with a new class.

### C.  **Individual Issues Would Dominate Any Common Ones.**

Even if Plaintiffs had identified an unresolved common question, their "cursory references to state statutes—which are pivotal to a predominance analysis that is ancillary to class certification—lack the specificity required for the Court to properly parse whether or not the elements, claims, and applicable substantive state laws predominate as to the entire class." *Robinson v. GE Co.*, 2016 U.S. Dist. LEXIS 50166, at *29 (E.D. Mich. Apr. 14, 2016).  Indeed, the unique statutory elements described above, which would create a host of State-specific questions uncommon to the class, barely scratch the surface of the individual inquiries involved.

For example, some consumer protection statutes allow recovery only to consumers who purchased a product for a specific purpose, such as personal, family, or household use.  *See, e.g.*, Iowa Code § 714H.2(4); Ohio Rev. Code § 1345.01(A). Yet some members of the proposed class—including the proposed class representative from one of these States (Ohio)—purchased a Class Vehicle primarily for *business* use and would not satisfy this requirement.  Hackett Depo. Tr. 24:9-25:23, ECF No. 328-48, PageID.15020.  "Clearly, the question of why any particular

21

customer purchased the [vehicle] is not something that can be resolved on a classwide basis," and the question "destroys the predominance of class-wide issues." *Corder v. Ford Motor Co.*, 283 F.R.D. 337, 341 (W.D. Ky. 2012); *see also Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 593 (W.D. Mich. 2001) (similar).

Reliance is another dominating individual issue. Class members who purchased with actual knowledge of the alleged defect could not possibly have relied on FCA US's supposed failure to disclose because the members knew the truth. "Sorting out those who knew of the defect . . . from those having no knowledge[ ] will require numerous individual inquiries." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 13887, at *88 (D.N.J. Feb. 6, 2012); *see also Abraham v. Ocwen Loan Serv., LLC*, 321 F.R.D. 125, 192 (E.D. Pa. 2017) (similar).

The same is true for scienter, which is an element of the consumer protection statutes in some States but not others. *See In re McCormick & Co.*, 422 F. Supp. 3d 194, 227 (D.D.C. 2019) (refusing to certify a multistate consumer protection class because, among other reasons, Florida and Washington have no scienter requirement, whereas Illinois and Iowa do, and these differences are "material").

More individual inquiries would be required to determine materiality—i.e., whether each class member would have altered his or her behavior had FCA US disclosed the allegedly concealed facts. Because purchasing decision are "inherently individualized," "it is impossible to conclude, on a global basis, whether [a]

22

disclosure . . . would have affected purchasers' decisions." *Oscar v. Bmw of N. Am., LLC*, 2012 U.S. Dist. LEXIS 84922, at *12 (S.D.N.Y. June 19, 2012).  As Plaintiffs' conjoint expert admitted at trial, the purchasing and sales decisions of class members involve "many scenarios"—"literally thousands of different possibilities."  Day 4 Tr. at 181-82, ECF No. 872-3, PageID. 38554-38556.

## IV.   **The AutoPark Recall Mooted The Claims Of The Proposed Class.**

"Most Circuits, including the Sixth, have adopted the doctrine of prudential mootness." *Sharp v. FCA United States LLC*, 2022 U.S. Dist. LEXIS 194163, at *15 (E.D. Mich. Oct. 25, 2022) (citing cases).  This doctrine generally applies when a plaintiff receives remedial relief independent of the lawsuit such that "'there remains not enough value left for the courts to add in [a] case to warrant carrying on with the business of deciding its merits.'"  *Id.* (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc*., 681 F.3d 1208, 1211 (10th Cir. 2012)).

Plaintiffs seek to limit the proposed class to only those individuals who purchased or leased their vehicles between 2011 and April 22, 2016—the date FCA US announced the AutoPark recall.  But a jury already determined—for all 13 States in the proposed class—that the vehicles post-recall do not have a defect. Insofar as a defect existed before the recall, "the injury [was] remedied by the repair." *Sharp*, 2022 U.S. Dist. LEXIS 194163, at *22.  Thus, allowing Plaintiffs to pursue claims based on the pre-recall status of the vehicles even though the vehicles

23

have been repaired "would afford [Plaintiffs] precisely the type of double-recovery windfall . . . courts have held is impermissible." *Sater v. Chrysler Grp., LLC*, 2016 U.S. Dist. LEXIS 178421, at *7-8 (C.D. Cal. Oct. 25, 2016).

## V.     The Court Should Not Certify Another Rule 23(c)(4) Issues Class.

Plaintiffs alternatively move to certify another issues class—this time consisting of those individuals who purchased or leased before April 22, 2016. *See* Mot. 2.  The Court should deny this request for the same reasons explained above: (i) this request is an untimely motion to reconsider the Certification Order; (ii) the law-of-the-case doctrine and judicial estoppel bar Plaintiffs from trying to get a second bite at the apple; (iii) Plaintiffs have no remaining viable claims to raise a common issue that the jury did not already resolve; and (iv) the doctrine of prudential mootness independently defeats the claims in the proposed class.

## VI.    Certifying A New Class Would Create Grave Constitutional Problems.

The proposed consumer protection class consists of individuals from the issues class who are from States where the jury found no defect and no concealment. Those findings thus bind all members of the proposed class.  Would the issue of "defect" be relitigated if another class is certified?  If so, under what standards?  And how would those standards differ from those the jury already applied?

Plaintiffs do not address these and similar issues with their proposal.  In fact, the "common evidence" they describe in their motion is the *same evidence* presented

to the issues class jury,[2] and Plaintiffs admit the Court would issue the *same jury instructions* on concealment.  *See* Mot. 25 ("The jury instructions on concealment have already been formulated and . . . would be used in any upcoming trial.").

Asking a second jury to consider the same evidence and return a jury verdict based on the same legal standards in a trial involving the same parties is a quintessential reexamination of facts in violation of the Seventh Amendment.  *See, e.g.*, *McDaniel v. Anheuser–Busch, Inc.*, 987 F.2d 298, 304-05 (5th Cir. 1993) ("[T]he Seventh Amendment guarantee of a trial by the jury is the general right of a litigant to have only one jury pass on a common issue of fact." (citations omitted)).

Proceeding down Plaintiffs' proposed path also would violate due process, risk conflicting verdicts, and change the rules of this MDL after years of litigation. And all of that assumes the Court can get past the many threshold procedural problems and prejudice to FCA US described above, including the prejudice that would flow from reconsidering a ruling that has been law of the case for years.

## CONCLUSION

The Court should deny the motion.

---

[2] Plaintiffs assert that at any second trial, they "will again use the testimony of their human factors expert," Mot. 1, and "will again proffer the testimony of FCA's current and former employees— such as Pamela Williamson, Jay Tenbrink, Mark Chernoby, and Kristin Kolodge," *id.* at 14-15.

Dated: November 14, 2022

Respectfully submitted,

**KLEIN THOMAS & LEE LLC**

By:  _/s/ Brandon L. Boxler_
Fred J. Fresard (P43694)
Ian K. Edwards (P82021)
101 W. Big Beaver Rd.
Suite 1400
Troy, MI 48084
(248) 509-9271
Fred.Fresard@kleinthomaslaw.com
Ian.Edwards@kleinthomaslaw.com

Brandon L. Boxler
919 E. Main St.
Suite 1000
Richmond, VA 23219
(703) 621-2109
Brandon.Boxler@kleinthomaslaw.com

and

John E. Berg (P40428)
CLARK HILL PLC
500 Woodward Ave.
Suite 3500
Detroit, MI 48226
(313) 965-8417
jerb@clarkhill.com

_Attorneys for Defendant FCA US LLC_

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 14, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

**KLEIN THOMAS & LEE LLC**

By: *<u>/s/ Brandon L. Boxler</u>*
Brandon L. Boxler
919 E. Main St.
Suite 1000
Richmond, VA 23219
(703) 621-2109
Brandon.Boxler@kleinthomaslaw.com

*Attorney for Defendant FCA US LLC*