UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FCA US LLC MONOSTABLE ELECTRONIC GEARSHIFT LITIGATION<br><br>MDL No. 2744<br>_____/ | Case Number 16-md-02744<br>Honorable David M. Lawson<br>Magistrate Judge David R. Grand |
| TREVOR MARBLE,<br><br>      Plaintiff,<br>v.<br><br>FCA US, LLC,<br><br>      Defendant.<br>_____/ | Case Number 17-10983<br>Honorable David M. Lawson |

**OPINION AND ORDER DENYING PLAINITFF'S MOTIONS
TO CERTIFY CLASS AND FOR SUMMARY JUDGMENT, AND SCHEDULING
STATUS CONFERENCE**

     Following the class common issues jury trial and ensuing disposition of the other consolidated actions in this multidistrict litigation matter, plaintiff Trevor Marble of Utah has moved to certify a class of Utah plaintiffs and for partial summary judgment on the sole surviving and direct filed cause of action for breach of implied warranty under Utah law. The defendant opposes the class certification motion on the ground that it is essentially a disguised request to reconsider a similar motion that the Court denied years ago and there are individual questions of the buyers' pre-purchase knowledge of the defect that are not amenable to class treatment. FCA also argues that fact issues preclude summary judgment. Because the plaintiff has not established that common issues would predominate over adjudication of the individualized pre-sale knowledge affirmative defense at a prospective trial, and because fact issues indeed preclude summary judgment, both motions will be denied.

I.

The factual background of the case is by now familiar to the parties and was reviewed at length in the Court's previous rulings on the defendant's several rounds of dispositive and class certification motions. *See*, *e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2022 WL 998091 (E.D. Mich. Mar. 31, 2022) (opinion denying defendant's motion for partial summary judgment). The discussion of those facts is incorporated here. The eleven class actions alleging economic loss due to the plaintiffs' purchase of allegedly defective class vehicles were consolidated in this Court by the Judicial Panel on Multidistrict Litigation, and the Court directed the plaintiffs to file a consolidated pleading. The vehicles targeted by the Second Amended Consolidated Master Complaint (SACMC) — the operative pleading presently — which superseded Marble's individual pleading, are the 2012-2014 Dodge Charger, the 2012-2014 Chrysler 300, and the 2014-2015 Jeep Grand Cherokee that were manufactured with a monostable gear shifter. Chrysler's internal communication referred to the class models by certain initials, which are "LX" for the Chrysler 300, "LD" for the Dodge Charger, and "WK" for the Jeep Grand Cherokee. The defendant sold more than 800,000 vehicles during those model years that were equipped with the monostable gear shifter.

The plaintiffs alleged that studies conducted in 2010 and 2012 by the defendant's retained market research firm, which were replicated during this litigation by the plaintiffs' human factors expert, suggested that the gear shift design "is defective because it inhibits reliable gear selection and provides insufficient tactile or audible feedback to allow drivers to readily and confidently shift to their intended gear." They charged that the defendant was aware of the defect before the class vehicles went to market, but it elected to sell them anyway, and without disclosing its knowledge of the shifter problems to prospective buyers. The class vehicles were the subject of a

voluntary recall in mid-2016, which included the deployment of a software fix that adds an "auto park" feature to the shifter system. But the plaintiffs alleged that the fix did not cure certain issues with the design, and they believed that the class vehicles remained unsafe and "defective."

As noted in the Court's prior rulings, the plaintiffs' theory of the case evolved significantly throughout this litigation. The plaintiffs alleged that the June 24, 2016 software fix announced by FCA was ineffective, and there were numerous reports logged by NHTSA of vehicles having rollaway accidents after the fix was applied. The plaintiffs have maintained since the outset of the litigation that despite the availability of the "auto park" update, their cars still are not suitable for their ordinary purpose of providing safe reliable transportation, and the defendant failed to disclose its full knowledge about the design risks until information in its possession came to light finally through the public record of these proceedings. The plaintiffs advanced several somewhat varying grounds for their claim that the vehicles have a persistent and unremediated design defect. At the common issues trial, the plaintiffs abandoned their allegations of post-recall rollaway accidents and did not present any proof that such incidents occurred despite the "auto park" deployment. Instead, the plaintiffs chose to focus at trial on their theory that the existence of an "auto park" feature that deploys only under certain conditions does not eliminate all conceivable risks of unintended vehicle movement due to mis-shifts caused by the shifter's allegedly confusing design. That iteration of the defect claim was the major theme of the plaintiffs' case at trial, which focused on their contentions that the gear shift design remained defective despite class wide deployment of the "auto park" remedy, because its deficient driver interface could lead to unintended vehicle movement any time that a driver tried to select a gear but unwittingly failed due to the confusing design.

The plaintiffs initially pleaded several theories for recovery of economic damages, but they eventually abandoned them all except for the claim that they overpaid at the point of sale for cars that they believed were safe to drive, but which were not. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. at 102 ("[The plaintiffs] now assert that they will proceed solely on the theory that they suffered common economic losses due to overpaying for new vehicles at the point of sale, which they believed were safe and fit for daily transportation, but which they later found were unacceptably difficult and dangerous to drive.").

The course of the litigation over the last seven-plus years is complex, as many MDL cases tend to be. The first among the separate suits that were transferred to this district for consolidation was filed in the Central District of California on June 23, 2016. Three more followed the transfer route, and seven suits were filed in this district. Together, those 11 cases — all putative class actions — collectively comprise the part of the MDL alleging economic loss to the vehicle purchasers. (Several other cases alleging personal injuries were filed in or transferred to this distract as part of the MDL, but they were addressed on a separate track and were not part of the common-issues class trial.)

On December 9, 2019, after a lengthy discovery period, the Court issued an opinion conditionally certifying a common issues class under Federal Rule of Civil Procedure 23(c)(4). The SACMC named as plaintiffs 39 individuals (including Marble) from 23 different states (including Utah) asserting several theories of liability based on allegations of defective shifters in the class vehicles that the defendant manufactured and sold. In its order conditionally certifying the common issues class, the Court determined that the plaintiffs had failed to demonstrate that their causes of action set out in the SACMC were amenable to class treatment under Federal Rule of Civil Procedure 23(b)(2) or (3), but that there were several discrete issues apparent from the

record that were suitable subjects for class-wide adjudication under Rule 23(c)(4). Those issues were:

- Whether the monostable gear shift has a design defect that renders the class vehicles unsuitable for the ordinary use of providing safe transportation.

- Whether the defendant knew about the defect and concealed its knowledge from buyers of the class vehicles.

- Whether information about the defect that was concealed would be material to a reasonable buyer.

The Court found that, although the claims under the laws of the several states set out in the SACMC had varying elements, the common factual questions above would "predominate within certain issues," and "class treatment of those issues [would be] the superior method of resolution." *See Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018).

The parties engaged in several rounds of motion practice preceding the common issues trial in which the defendant moved to decertify the class and foreclose the trial from going ahead on various grounds. The plaintiffs, for their part, made several attempts to reconfigure the class on the eve of trial. The Court stayed the course, and all of those efforts to derail the trial agenda were rebuffed. However, in order to clarify the scope of the trial, the Court ordered that "the issue class trial shall constitute an adjudication by the jury of the three certified questions as they pertain to the parties and claims involved in the direct-filed MDL cases," and that "[a]fter the conclusion of the issue trial, the Court will entertain appropriate motions on the questions whether and to what extent the results of the issue trial may, by operation of law, be binding on parties and absent class members in *[Goldsmith] v. FCA US, LLC*, No. 16-13681 (C.D. Cal.); *Mack v. FCA US, LLC*, No. 16-13678 (E.D.N.Y.); *Lynd v. FCA US, LLC*, No. 16-13913 (N.D.N.Y.); and *Brooks v. FCA US, LLC*, No. 16-13677 (W.D. Mo.)." Order Denying Mot. for Suggestion of Remand, ECF No. 808, PageID.35396 (E.D. Mich. July 27, 2022).

The jury trial on the three certified questions commenced on September 6, 2022. The parties remained at odds over the scope of the issues to be tried even after the trial had begun. The Court issued further rulings before and during the trial rejecting the plaintiffs' attempts to modify or enlarge the issues to be presented to the jury, and a second motion to decertify the class brought by the defendant on the eve of trial. After the close of the proofs, the Court convened a charge conference. At that juncture, the plaintiffs advocated for presenting the jury with a basic, universal definition of the phrase "design defect," while the defendant insisted that the jury must be instructed on the definition of "design defect" as prescribed by the laws of each of the 19 states involved in the direct-filed cases. The Court agreed with the defendant and instructed the jury accordingly. After the two-week trial, the jury returned a verdict on the first certified issue finding no design defect under the laws of 18 states and finding a defect under Utah law. On the second certified issue, the jury found that the defendant did not conceal knowledge of the defect, separately applying two different standards of proof. Per the instructions, the jury did not proceed to answer the third certified issue.

After the verdict was returned, the defendant filed a motion for judgment as a matter of law in its favor on all of the claims brought by the nationwide common issues class, and the plaintiffs filed a motion to certify new sub-classes to represent purchasers in New York and California, whose claims had been excluded from resolution in the class common issues trial. The Court granted the defendant's motion in part and entered judgment on the claims brought by the class members in the 18 jurisdictions where the jury had concluded that the vehicles were not defective according to the prevailing law in those forums. The Court denied the defendant's request for judgment on the claims of all individual and absent class members in New York, California, and Utah. The Court also granted the defendant's motion to strike the plaintiffs' renewed motion to

certify classes for New York and California claims. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2024 WL 1142348, at *1 (E.D. Mich. Mar. 15, 2024); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 685 F. Supp. 3d 540, 542 (E.D. Mich. 2023).

In their opposition to the defendant's motion for judgment as a matter of law on all of the class claims, the plaintiffs represented that plaintiff Trevor Marble from Utah consented to the dismissal of all but one of his previously pleaded claims under Utah law. The Court accordingly dismissed those claims with prejudice. *See* Order of Partial Dismissal re *Marble v. FCA US LLC*, No. 17-10983 (E.D. Mich), ECF No. 907, PageID.40443. As a result of the verdict and the Court's post-trial rulings, all of the other individual and class claims involved in the litigation either were dismissed with prejudice according to the jury's factual findings or remanded along with their constituent actions to the transferor districts. *See* Post-Trial Orders and Judgments, ECF No. 902-909, 918. Presently, the sole surviving cause of action from the SACMC standing before this Court is Count CV (105), which pleads a breach of the implied warranty of merchantability under the State of Utah's enactment of the Uniform Commercial Code (UCC), Utah Code § 70A-2-314. *See* Am. CMC, ECF No. 182, PageID.5832. Utah plaintiff Marble now has moved for certification of a class under Federal Rule of Civil Procedure 23(b)(3) for trial of the surviving Utah implied warranty claim, and he also has filed a motion for partial summary judgment seeking a ruling as a matter of law on liability for the warranty cause of action.

II.

A party seeking class certification under Federal Rule of Civil Procedure 23 must satisfy all four items under subparagraph (a) of the rule and at least one provision of subparagraph (b). *Speerly v. Gen. Motors, LLC*, ---F.4th ---, ---, No. 23-1940, 2024 WL 3964115, at *5 (6th Cir. Aug. 28, 2024). The "(a)" requirements are numerosity, commonality, typicality, and adequate

representation. *Ibid.*; Fed. R. Civ. P. 23(a). The plaintiff argues that the proposed class meets all these requirements, since there are approximately 7,300 identifiable purchasers or lessees of class vehicles in Utah, and they all will claim that their vehicle is defective — as the jury already determined — which satisfies the commonality and typicality requirements. Moreover, Marble already has served as an adequate class representative.

In its response, FCA does not offer any significant pushback on these arguments, except to say that because Marble bought his vehicle as a used car, he is not typical of absent class members who purchased new vehicles. Instead, it criticizes the plaintiff for attempting to seek reconsideration of the denied class certification motion from earlier in the case. More critically, FCA contends that neither the individual damages question nor its affirmative defense that the buyer was aware of the defect are amenable to class treatment, and at this stage of the case that defense will predominate over any lingering common questions.

Pausing for a moment over another defense argument, FCA questions the Court's subject matter jurisdiction, reasoning that because the proposed class consists of approximately 7,300 purchasers who allegedly each sustained $680 in damages due to the alleged point-of-sale overpayment, the aggregate damages alleged fall short of the Class Action Fairness Act's $5 million jurisdictional threshold. *See* 28 U.S.C. § 1332(d). That argument need not detain the Court, however, because there has been no conclusive determination of the amount of the individual absent class members' economic loss, and if a jury were to conclude that each person sustained damages of merely $5 more than the defendant's speculative amount, then the amount in controversy requirement would be met.

Turning to the defendant's principal argument, Rule 23(b) identifies three types of class actions, and a plaintiff must meet the requirements of at least one of them. The plaintiffs seek

certification of a class of Utah purchasers of the class vehicles under Rule 23(b)(3), which authorizes class certification when common questions of law or fact "predominate over any questions affecting only individual members," and the collective approach is "superior" to other methods of adjudicating the controversy. *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). "In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" *Id.* at 468 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997); *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016)). "'If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.'" *Ibid.* (quoting *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)). The plaintiffs "need not prove that every element can be established by class-wide proof," but "the key is to identify the substantive issues that will control the outcome." *Ibid.* (quotations omitted).

Before certifying any claim for class treatment, the Court must conduct a rigorous analysis, *Speerly*, 2024 WL 3964115, at *5, examining the elements of each cause of action proposed for certification, *Clemons*, 890 F.3d at 278-79 (6th Cir. 2018); *Sandusky Wellness Center*, 863 F.3d at 466. The plaintiffs need not show that every element of every claim can be sustained by common proofs, but they must identify the elements of each pleaded cause so that the Court can weigh the balance of common and individualized issues. "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016).

In its prior ruling denying the defendant's motion for judgment as a matter of law on the sole remaining Utah implied warranty claim, the Court held that the plaintiff undisputedly has established the *prima facie* elements of his implied warranty cause of action as a consequence of the jury's fact-finding on the defect question and other undisputed facts established through the proceedings. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 685 F. Supp. 3d at 559-60 ("The jury's verdict conclusively resolved the question whether the class vehicles are fit for the ordinary purpose of providing safe, reliable transportation (at least in Utah). . . . The jury's answer to the defect question, along with the other undisputed facts in the record, are sufficient to make out a *prima facie* case for breach of implied warranty under Utah law.") (citations omitted). The Court acknowledged, however, the defendant's assertion of the pre-sale knowledge affirmative defense, which it did not address at that time because it "was not presented at trial, and the jury was not instructed on that issue, for the obvious reason that the class common issues trial was not a trial of any causes of action, but instead was a preliminary trial of discrete factual questions addressing certain elements fundamental to the plaintiffs' *prima facie* case." *Ibid.*

In that prior ruling, the Court surveyed the decisions on point applying Utah law and found that the prevailing authorities counsel that the determination of whether an individual purchaser had "knowledge" of a defect before buying a product is not resolved conclusively by proofs that the defect was not "concealed" by the defendant, but instead involves a fact-intensive examination of whether the buyer subjectively was made aware of information showing that a defect exists, and that, nevertheless, they proceeded to purchase the product despite that awareness. *Id.* at 560-61 (E.D. Mich. 2023) (citing *Sobiech v. International Staple & Mach. Co.*, 867 F.2d 778 (2d Cir. 1989); *Henry Heide, Inc. v. WRH Prod. Co.*, 766 F.2d 105 (3d Cir. 1985); *Upjohn Co. v. Rachelle Laboratories, Inc.*, 661 F.2d 1105 (6th Cir. 1981); *In re Ford Motor Co. E-350 Van Products*

*Liability Litigation (No. II)*, MDL No. 03-4558, 2012 WL 379944, at *19 (D.N.J. Feb. 6, 2012); *Durbano Metals, Inc. v. A&K R.R. Materials*, 574 P.2d 1159 (Utah 1978)).

Those observations are relevant to the question whether common or individual issues would predominate at a class-wide trial on the surviving warranty claim. On that score, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016). In this instance, the common questions do not predominate. The difficulty for Marble at this juncture is that the elements of his *prima facie* case that could have been sustained by common proofs all have been determined conclusively or are undisputed. The only questions that remain for a trial on the warranty cause of action are (1) whether each purchaser of a class vehicle had knowledge of the defect before he or she bought the vehicle, and (2) what damages were suffered by purchasers as a result of overpaying for a defective vehicle.

As this Court has held in similar product defect suits, the valuation of damages suffered as a result of overpayment for a defective product at the point of sale can be established by class-wide common proofs. *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 523, 2023 WL 2572457 (E.D. Mich. 2023) ("At trial, [the plaintiffs] will seek to recover the difference in price paid by them as a result of overpaying for defective cars at the point of sale. The plaintiffs' experts have proffered reliable statistical means for estimating the overpayment. Such a showing has been held sufficient to warrant certification of a damages class under Rule 23(b)(3) in similar auto defect cases."), *aff'd*, 2024 WL 3964115, at *19 ("[T]here is nothing to indicate that the samples and averages that the Plaintiffs' experts provided and that the district court referenced in certifying the class could not sustain a reasonable jury finding as to the damages suffered by the purchasers of

- 11 -

the affected GM vehicles.") (cleaned up). However, the question whether each purchaser of a class vehicle had knowledge of the defect before the sale is one that is decidedly subjective and individualized, which cannot be resolved on the basis of class-wide common proofs.

For its part, the defendant maintains that Marble's test drive of the class vehicle and his statement at his deposition that he found the shifter "odd" because he had "no idea for sure . . . what gear it was in," but he bought the car anyway, conclusively establishes pre-suit knowledge. But the Court observed in ruling on a different motion that the record in this litigation contains sufficient common proofs to allow a plaintiff plausibly to establish that she did not comprehend fully the nature of the alleged gearshift defect until, at the earliest, the initiation of the voluntary recall in 2016. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 597 F. Supp. 3d 1121, 1130-31, 2022 WL 1023759 (E.D. Mich. 2022) ("Certainly, there is evidence in the record demonstrating that the plaintiff was 'familiar' with the shifter through having used it, but the jury still easily could find that an ordinary driver untrained in subtleties of human factors design would not have perceived the full implications of the design problems alleged here; namely, a random but excessively high incidence of shifting errors, which the defendant's studies repeatedly had identified.").

Nevertheless, the problem remains that in individual cases, proofs also may be put forth to show that a particular buyer was in fact fully aware of the confusing nature of the shifter interface *and* the safety risks that it posed prior to buying their car, and that they nevertheless elected to accept the risk and make the purchase anyway. For example, if it could be shown that a purchaser *experienced a mis-shift and rollaway incident during a test drive*, then that would be compelling proof on which a factfinder could rely in finding for the defendant on its affirmative defense of pre-sale knowledge. That prospect underscores the problematic, individualized nature of the

defense, which must be resolved as to every purchaser of a class vehicle on the basis of a fact-specific inquiry into individualized circumstances.

"Rule 23(b)(3) [] does not require a plaintiff seeking class certification to prove that each element of his claim is susceptible to classwide proof. What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quoting Fed. Rule Civ. Proc. 23(b)(3)) (cleaned up). In this case, at this stage of the proceedings, the individualized inquiries necessary for adjudication of the defendant's affirmative defense of pre-sale knowledge will *entirely* predominate the liability phase of any ensuing trial, because that is now the only essential issue left to be resolved for a determination of liability on each warranty claim.

As federal courts readily recognize, the mere availability of individualized affirmative defenses does not categorically preclude certification of a class under Rule 23(b)(3) where other and clearly common issues are found to predominate: "'A class may be certified based on a predominant common issue' even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *In re Fam. Sols. of Ohio, Inc.*, No. 21-0303, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020)). However, the necessity for acutely individualized inquiries into purchaser knowledge will defeat predominance, where the Court determines that resolving such defenses would occupy the lion's share of the trial agenda compared with resolving any issues decided on a common class-wide basis. *E.g.*, *New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 814 (2d Cir. 2012) ("Because public information could constitute circumstantial evidence of individual purchaser knowledge, the defendants would have stronger or weaker evidence of purchaser knowledge

depending on purchase timing. Such predicted variation supported the judge's conclusion that individual knowledge inquiries would be required. Furthermore, because of the differences in purchase timing, the chosen class definition also removed the possibility that the knowledge defense could be adjudicated on a class basis using common publicly available evidence. This further tipped the balance away from common issues and toward individual ones.") (affirming denial of class certification).  Here, any prospective trial of necessity would focus on the adjudication of thousands of individualized affirmative defenses, and no class-wide economy at all could be secured by evaluation of any *prima facie* common elements, all of which now are resolved.

The motion to certify a class of Utah plaintiffs will be denied.

### III.

The plaintiff also moves for summary judgment as to liability on the proposed Utah class, contending that (1) the fact is undisputed that the defendant is a "merchant" and that it "sold" the class vehicles, (2) the proofs are unrebutted that plaintiff bought his class vehicle in Utah, which is the same proof that necessarily would sustain the same element for every member of the proposed class of Utah purchasers of class vehicles, and (3) the jury's verdict determined that the class vehicles are "defective" under Utah law.  Because a Utah class will not be certified, the Court will consider the motion as addressing Marble's individual claim.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the party moving for summary judgment also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat–Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). The plaintiff therefore "must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, [he] must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1992) (footnotes omitted).

Under Utah's enactment of the Uniform Commercial Code, a "'warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'" *Spencer v. Harley-Davidson, Inc.*, No. 16-00427, 2018 WL 3972925, at *7 (D. Utah Aug. 20, 2018) (quoting Utah Code § 70A-2-314). Under Utah law, "the elements of strict liability and breach of warranty 'are essentially the same.'" *Straub v. Fisher & Paykel Health Care*, 1999 UT 102, 990 P.2d 384, 389 (Utah 1999) (quoting *Ernest W. Hahn, Inc. v. Armco Steel*

*Co.*, 601 P.2d 152, 159 (Utah 1979)). "To establish a claim for breach of the implied warranty of merchantability, [the plaintiffs] must show that [the defendant], as [a] merchant[], sold a good which did not meet one of the standards of merchantability: (1) passes without objection; (2) is of fair average quality; (3) is fit for ordinary purposes; (4) is of even kind, quality and quantity; (5) is adequately contained, packages and labeled; or (6) conforms to promises on the packaging." *Spencer*, 2018 WL 3972925, at *7.

For the reasons discussed above, all of the *prima facie* elements of the plaintiff's implied warranty claim are sustained by a combination of the jury's verdict on the defect issue and the undisputed facts establishing other elements of the claim. However, as discussed above, on Marble's individual claim, genuine questions of fact linger which preclude adjudication of the knowledge defense as a matter of law, and the viability of that affirmative defense is sufficient to preclude judgment as a matter of law on Marble's individual claim.

The defendant's invocation of its knowledge defense is not automatically fatal to the warranty claim, but there is evidence that could lead a jury reasonably to find for the defendant on that defense, which would preclude the plaintiff's recovery. The defendant seizes on Marble's deposition testimony in which he admitted that he test drove his vehicle for around 10-15 minutes during his pre-purchase evaluation, that he found the shifter "odd" and specifically questioned the salesperson about it, and that its behavior left him feeling that he had "no idea for sure . . . of what gear it was in." Trevor Marble dep., ECF No. 883-2, PageID.40001-02. ("Q. Did you have any discussions with the salesperson that was in the vehicle with you about the shifter? A. I did. Q. What did you talk about? A. I thought that it was a little odd and he agreed and said it was a new shifter they had put in. Q. What did you think was odd about it? A. Previous cars you could feel it

go into — you had an idea of what gear it was in, whereas this one you had no idea for sure — as you were moving it like there was no feel of what gear it was in.").

Nonetheless, a jury also reasonably could conclude that even a plaintiff who was intimately familiar with the operation of the gear shift through daily use might not have been aware fully of the safety hazard inherent in its design, due to the confusing and deficient interface. The jury at the common issues trial accepted the plaintiff's confusing design theory and found as a matter of fact that the gear shifter is defective on that basis according to Utah law. It is not alleged that Marble experienced any actual mis-shift or rollaway incident during the test drive, despite admittedly finding the gear shift's behavior "odd" and expressing uncertainty about its indication of the active gear selection. A jury at trial on Marble's warranty claim could conclude that, despite noticing some oddities in the shifter, Marble lacked full awareness of its safety hazards before his purchase was completed. As the cases on point have observed, a purchaser must be aware not only of the alleged defect, but also the danger that it poses in operation. *See Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1979). Such an awareness, if gained through extensive usage of the allegedly defective product, may defeat an implied warranty claim. However, on the record presented here, a jury reasonably could conclude that Marble's awareness of the uncertain nature of the shifter's operation was not enough to put him on pre-purchase notice of the alleged safety risk, if, as the record suggests, the plaintiff's brief period of usage did not disclose any unintended movement behavior during a brief 10-15 minute test drive that preceded the purchase. Resolution of the pre-sale knowledge defense is a close call based the facts disclosed by this record, and one which a jury will have to make.

IV.

The plaintiff has failed to establish that common issues would predominate over adjudication of the individualized pre-sale knowledge affirmative defense at a prospective trial. Fact issues preclude a determination of liability in favor of either party as a matter of law.

Accordingly, it is **ORDERED** that the plaintiff's motions to certify a Utah class (ECF No. 875) and his motion for summary judgment (ECF No. 876) are **DENIED**.

It is further **ORDERED** that counsel for the parties shall appear for a status conference on **October 24, 2024 at 2:30 p.m.** to discuss a further case management schedule.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   October 10, 2024